# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| PAT MCGRATH COSMETICS LLC,[1] | Case No. 26-10772-LMI |
| Debtor. | |

## DEBTOR'S EMERGENCY MOTION FOR
## ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN
## POST-PETITION FINANCING PURSUANT TO SECTIONS 105(a), 362, 364(c) OF THE
## BANKRUPTCY CODE, AND (II) GRANTING SUPER PRIORITY CLAIMS TO THE
## DIP LENDER PURSUANT TO SECTION 364(c)(1) OF THE BANKRUPTCY CODE

### *(Emergency Hearing Requested)*

### Basis for Expedited Relief

The Debtor seeks to continue to operate its business in the ordinary course, to preserve the value of its estate, to preserve jobs, and to facilitate its orderly reorganization. Without the immediate relief requested herein, the Debtor may not be able to effectively reorganize and will be irreparably harmed. The Debtor respectfully requests that the Court conduct a hearing on this Motion on or before **Wednesday, January 28, 2026**, consistent with Local Rule 9013-1(F), as the Debtor believes that a hearing on this Motion is needed as soon as practicable in order for it to continue to operate. The Debtor respectfully request that the Court waive the provisions of Local Rule 9075-1(B), which requires an affirmative statement that a bona fide effort was made in order to resolve the issues raised in the Motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution.

The above-captioned debtor and debtor in possession (the "Debtor") by and through its undersigned counsel submits this motion (this "**Motion**") for entry of an order pursuant to sections 105(a), 361, 362, 363, 364 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq.

---

[1] The last four digits of Pat McGrath Cosmetics LLC's tax identification number are 3615 and its mailing address is 29 East 19th Street, 8th Floor, New York, NY 10003.

(the "**Bankruptcy Code**"), authorizing the Debtor to obtain secured post-petition financing from Patricia McGrath ("**Ms. McGrath**" or the "**DIP Lender**") for the purpose of funding the Debtor's immediate vital operational expenses, including payroll to be funded on or before Wednesday, January 28, 2026.  The Debtor is submitting this Motion on an expedited and emergency basis.

In further support of this Motion, the Debtor relies upon the *Declaration of Patricia McGrath in Support of the Debtor's Proposed Emergency Debtor-in-Possession Financing* attached hereto as **Exhibit A** (the "**DIP Financing Declaration**"), and respectfully states as follows:

### Jurisdiction, Venue and Statutory Predicates

1.      The United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtor confirms its consent, pursuant to Rule 7008 of the Bankruptcy Rules, to the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue in this Bankruptcy Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of Florida (the "**Local Rules**") 4001-2, 4001-3 (and the Bankruptcy Court's *Guidelines for Motions Seeking Authority to Use Cash Collateral and Motions Seeking Approval of Postpetition Financing* (the "**Guidelines**") incorporated therein), 9013-1, and 9075-1.

**Background**

4.      On January 22, 2026, the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 case (the "**Chapter 11 Case**") in the United States Bankruptcy Court for the Southern District of Florida.

5.      The Debtor is operating its business and managing its property as debtor and debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the filing of this Motion, no request has been made for the appointment of a trustee or examiner and no statutory committee has been appointed in the Chapter 11 Case.

6.      The DIP financing proposed herein is based on the Debtor's urgent need to meet its operational obligations in this early stage of the Chapter 11 Case while the Debtor continues to negotiate use of cash collateral and/or further financing.

**Summary of the Terms of the Proposed DIP Financing**

7.      The financing proposed hereby calls for unsecured debtor in possession financing from Ms. McGrath in the amount of $1,000,000.00 (the "**DIP Financing**").  The DIP Financing will be repaid as an administrative expense with an interest rate of 15%.

8.      The Debtor firmly believes that incurrence of the DIP Financing proposed herein will maximize value for the Debtor's stakeholders and represents an exercise of the Debtor's sound business judgment.  Further, the Debtor respectfully submits parties in interest will not be harmed (and will only be helped) by this financing.  The DIP Financing is completely unsecured and only entitled to repayment as a superpriority administrative expense claim.  Accordingly, the Debtor respectfully requests that the Bankruptcy Court approve the entry of the Proposed DIP Order approving the revolving credit line, and thus, enabling the smooth continuation of the Debtor's operations.

## Disclosures Under the Bankruptcy Rules, Local Rules, and Guidelines

9.     The following disclosures are provided in conformance with the requirements of

Bankruptcy Rule 4001, Local Rules 4001-2, 4001-3, 9013-1(G) and (H) and the Guidelines:

     a.  <u>Adequate Protection</u>: The incurrence of the DIP Financing is on a completely unsecured basis and accordingly does not interfere with the existing rights of lienholders.

     b.  <u>DIP Financing</u>: The Debtor seeks an order of the Bankruptcy Court approving the Debtor's provision of the DIP Financing as post-petition financing.  The DIP Financing consists of funding in the amount of $1,000,000.00 on an unsecured, superpriority administrative expense claim basis.

     c.  <u>DIP Lender</u>: The DIP Lender is Ms. Patricia McGrath, the Debtor's founder and CEO.

     d.  <u>Interest Rate</u>: Interest on the DIP Financing shall be 15% per annum.

     e.  <u>Grant of Liens</u>: Ms. McGrath shall not receive any liens in exchange for the DIP Financing.

     f.  <u>Use of DIP Financing</u>: The proceeds of the DIP Financing shall be available solely to provide funding in an amount necessary to fund the Debtor's business operations in accordance with the Budget, attached hereto as **Exhibit B**.

## Basis for Relief

**I.     The Debtor Should Be Authorized to Obtain the Postpetition Financing Contemplated Herein**

    **A.     The Debtor Need Not Provide Adequate Protection to the Prepetition Secured Lenders.**

10.     Section 363(e) of the Bankruptcy Code provides for "adequate protection" of

interests in property when a debtor uses cash collateral. Further, section 364(d)(1) of the

Bankruptcy Code provides for adequate protection of interests in property due to the imposition

"a senior or equal lien on property of the estate that is subject to a lien."

11.     The DIP Financing proposed herein does not call for the imposition of any liens

on property that is subject to a lien, and does not call for the use of any cash that is subject to a

lien (i.e., cash collateral).  The Debtor requests hereby authority to use the DIP Financing and its postpetition accounts receivable to be generated and received within the first 21 days of this Chapter 11 Case, as set forth in the Budget, pending further order of this Court and/or consensual use of cash collateral.  Accordingly, because the requirements of neither section 363(e) nor 364(d) are implicated by the relief requested in this Motion, the Debtor respectfully submits that it need not provide adequate protection to any existing prepetition secured party in connection with the relief requested in this Motion (without prejudice to the Debtor's reserved right to move this Court for permission to use cash collateral and/or secure postpetition financing secured by a lien in property of the estate).

      **B.**      **Entry Into this DIP Financing Is an Exercise of the Debtor's Sound Business Judgment.**

      12.      Section 364 of the Bankruptcy Code authorizes a debtor to obtain secured or superpriority financing under certain circumstances, provided that an agreement to obtain secured credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code. Courts grant debtors considerable deference in acting in accordance with their sound business judgment in obtaining such credit.  *See, e.g., In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re Barbara K. Enters., Inc.*, No. 08-11474, 2008 WL 2439649, at *14 (Bankr. S.D.N.Y. June 16, 2008) (explaining that courts defer to a debtor's business judgment "so long as a request for financing does not 'leverage the bankruptcy process' and unfairly cede control of the reorganization to one party in interest"); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 [of the Bankruptcy Code] is to be utilized on grounds that permit [a debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage

the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest."); *Grp. of Institutional Holdings v. Chicago Mil. St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (Bankr. D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); *In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same).

13.     In evaluating the proposed terms of the postpetition financing provided by the DIP Lender and determining whether it is within the debtor's sound business judgment, courts generally perform a qualitative analysis to review the underlying economics of the transaction, considering factors such as whether:

> (a) unencumbered credit or alternative financing without superpriority status is available to the debtor;
>
> (b) the credit transactions are necessary to preserve assets of the estate;
>
> (c) the terms of the credit agreement are fair, reasonable, and adequate;
>
> (d) the proposed financing agreement was negotiated in good faith and at arm's-length and entry thereto is an exercise of sound and reasonable business judgment and in the best interest of the debtor's estate and their creditors; and
>
> (e) the proposed financing agreement adequately protects prepetition secured creditors.

*See, e.g., In re Aqua Assoc.*, 123 B.R. 192 (Bankr. E.D. Pa. 1991) (applying the first three factors in making a determination under section 364(c)); *In re Crouse Group, Inc.*, 71 B.R. 544 (Bankr. E.D. Pa. 1987) (same); *Bland v. Farmworker Creditors*, 308 B.R. 109, 113-14 (S.D. Ga. 2003) (applying all factors in making a determination under section 364 of the Bankruptcy Code). Bankruptcy courts generally will not second-guess a debtor's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the [Bankruptcy] Code." *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-514 (Bankr. D. Utah. 1981) (noting that courts should not second guess a debtor's

business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of [the debtor's] authority under the [Bankruptcy] Code"). To determine whether the business judgment test is met, "the court 'is required to examine whether a reasonable business person would make a similar decision under similar circumstances.'" *In re Dura Auto. Sys. Inc.*, No. 06-11202 (KJC), 2007 WL 7728109, at *97 (Bankr. D. Del. Aug. 15, 2007).

14.     Courts emphasize that the business judgment rule is not an onerous standard and may be satisfied "as long as the proposed action appears to enhance the debtor's estate." *Crystalin, LLC v. Selma Props. Inc. (In re Crystalin, LLC)*, 293 B.R. 455, 463–64 (B.A.P. 8th Cir. 2003) (quoting *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 566 n.16 (8th Cir. 1997) (internal alterations and quotations omitted)); *In re Pittsburgh Sports Assocs. Holdings Co.*, 239 B.R. 75, 87 (Bankr. W.D. Pa. 1999). Courts require only that the debtors "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (citations omitted); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).

15.     The Bankruptcy Court may appropriately take into consideration non-economic benefits to the Debtor offered by a proposed postpetition facility.  For example, in *In re ION Media Networks, Inc.*, the Bankruptcy Court for the Southern District of New York held that:

> Although all parties . . . are naturally motivated to obtain financing on the best possible terms, a business decision to obtain credit from a particular lender is almost never based purely on economic terms. Relevant features of the financing must be evaluated, including noneconomic elements such as the timing and certainty of closing, the impact on creditor constituencies and the likelihood of a successful reorganization. This is particularly true in a bankruptcy setting where cooperation and established allegiances with creditor groups can be a vital part of building support for a restructuring that ultimately may lead to a confirmable reorganization plan. That

7

> which helps foster consensus may be preferable to a notionally
> better transaction that carries the risk of promoting unwanted
> conflict.

No. 09-13125 (Bankr. S.D.N.Y. July 6, 2009).

16.     This rationale applies with full force here, where the proposed DIP Financing is completely unsecured.  The DIP Financing will ultimately benefit all parties in interest due to the ability for the Debtor to remain operating, fund its vital payroll obligations, and orderly enter this Chapter 11 Case to allow time to further negotiate the use of cash collateral or the incurrence of further longer-term financing.

**C.     The Debtor Should Be Authorized to Grant a Superpriority Claim in Exchange for the DIP Financing.**

17.     The Debtor proposes to obtain DIP Financing by providing a superpriority administrative expense claim pursuant to section 364(c) of the Bankruptcy Code, which allows for, *inter alia*, incurrence of debt "with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b)" the Bankruptcy Code.

18.     The statutory requirement for obtaining postpetition credit under section 364(c) is a finding, made after notice and hearing, that a debtor is "unable to obtain unsecured credit allowable under Section 503(b)(1) of [the Bankruptcy Code]."  11 U.S.C. § 364(c).  *See In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (credit under section 364(c) of the Bankruptcy Code is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained). Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code. Specifically, courts look to whether: (a) the debtor is unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code, (i.e., by allowing a lender only an administrative claim); (b) the credit transaction is necessary to preserve the assets of the estate; and (c) the terms of the transaction are fair,

reasonable, and adequate, given the circumstances of the debtor-borrower and proposed lenders. *See In re Ames Dep't Stores*, 115 B.R. at 37–40; *see also Norris Square Civic Assoc. v. St. Mary Hosp. (In re St. Mary Hosp.)*, 86 B.R. 393, 401–02 (Bankr. E.D. Pa. 1988); *Crouse Grp.*, 71 B.R. at 549.

19.     As described above and in the DIP Financing Declaration, the terms of the proposed financing are fair, the financing itself is necessary, and given the exigency of the circumstances, other financing on these would simply be impossible to execute on and effectuate.  *See* DIP Financing Decl., ¶¶ 6–8.  Thus, the Debtor determined that the DIP Financing provided the best, if not, only, opportunity available to the Debtor under the circumstances and considering the exigencies to fund the Chapter 11 Case and provided the only path for creditor recoveries.

20.     To satisfy the requirements of section 364(c) of the Bankruptcy Code, a debtor need only demonstrate "by a good faith effort that credit was not available" to the debtor on an unsecured or administrative expense basis.  *Bray v. Shenandoah Fed. Savs. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986).  "The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Id.*; *see also Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp.*, 266 B.R. 575, 584 (S.D.N.Y. 2001) (superpriority administrative expenses authorized where debtor could not obtain credit as an administrative expense).  When few lenders are likely to be able and/or willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing."  *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom. Anchor Savs. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117 (N.D. Ga. 1989); *see also Ames Dep't Stores*, 115 B.R. at 40 (approving financing facility and holding that the debtor made reasonable efforts to satisfy the standards of section 364(c) of the Bankruptcy Code where it

approached four lending institutions, was rejected by two, and selected the most favorable of the two offers it received).

21.     In the event that a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, section 364(c) of the Bankruptcy Code provides that a court "may authorize the obtaining of credit or the incurring of debt (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or [section] 507(b) of [the Bankruptcy Code]; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien." 11 U.S.C. § 364(c). Here, the Debtor has successfully obtained unsecured credit from Ms. McGrath on the condition that she be provided, in lieu of security, a superpriority administrative expense claim.  Therefore, approving a superpriority claim to Ms. McGrath is reasonable and appropriate.

**D.     The DIP Lender Should Be Deemed a Good Faith Lender Under Section 364(e) of the Bankruptcy Code.**

22.     The terms and conditions of the DIP Financing, are fair and reasonable, and generally more favorable than debtors in bankruptcy can often expect.  Accordingly, the obligations incurred in connection with the DIP Financing should be afforded the benefits of section 364(e) of the Bankruptcy Code.

23.     Section 364(e) of the Bankruptcy Code protects a good faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal. Specifically, section 364(e) provides that:

> The reversal or modification on appeal of an authorization under this section 364 of the Bankruptcy Code to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted,

to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

24. Because "good faith" is not defined in the Bankruptcy Code, courts often look to case law under section 363(m).  7 Collier on Bankruptcy, 16th ed. ¶ 364.08, p. 37 ("Section 364(e) is consistent with section 363(m), which provides similar protection to a buyer or lessee of property of the estate in a section 363 transaction.").  To analogize to the sale context, "the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Pan Am Corp.*, No. 91 CIV. 8319 (LMM)] 1992 WL 154200, at *4 (S.D.N.Y. June 18, 1992) (*citing In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)); *accord In re Gen. Growth Props., Inc.*, 423 B.R. 716, 722 (S.D.N.Y. 2010). 61.

25. As explained in detail herein and in the DIP Financing Declaration, the proposed financing is the result of: (a) the Debtor's reasonable and informed determination that the DIP Lender would be offering the most favorable terms on which to obtain necessary postpetition financing, and (b) good faith negotiations between the Debtor and the DIP Lender, particularly considering the Debtor's extremely short timetable.

26. The Debtor submits that the terms and conditions of the proposed financing are reasonable and appropriate under the circumstances, and the proceeds of the DIP Financing will be used only for purposes that are permissible under the Bankruptcy Code. Further, no consideration is being provided to any party to the DIP Financing other than as described herein. Accordingly, the Bankruptcy Court should find that the DIP Lender is a "good faith" lender within the meaning of section 364(e) of the Bankruptcy Code and are entitled to all of the protections

afforded by that section.

### II.    Failure to Obtain Immediate Interim Access to the DIP Financing Would Cause Immediate and Irreparable Harm.

27.    Bankruptcy Rule 4001(c) provides that a final hearing on a motion to obtain credit pursuant to section 364 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion.  Upon request, however, the Bankruptcy Court may conduct a preliminary, expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

28.    The Debtor will use the DIP Financing to, among other things, fund the vital payroll that the Debtor must pay in order to continue operating and sustain the living expenses of its workforce.  Without it, the Debtor will therefore be unable to operate their business and will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest.  The Debtor's highest priority was in filing, and will be throughout the pendency of this Chapter 11 Case, maximizing creditor recovery.  In short, the Debtor's ability to administer the Chapter 11 Case through the DIP Financing is vital for the uninterrupted continuation of Debtor's business and value appreciation of the Debtor's estate.

29.    Accordingly, the Debtor request that the Bankruptcy Court hold and conduct a hearing to consider entry of the Proposed DIP Order authorizing the Debtor to receive the DIP Financing, to enable the Debtor to preserve and maximize value and, therefore, avoid immediate and irreparable harm and prejudice to its estate and all parties in interest.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, for the reasons set forth herein and in the DIP Financing Declaration, the

Debtor respectfully requests that this Bankruptcy Court (a) enter an order approving the DIP

Financing, and (b) grant such other and further relief as the Bankruptcy Court deems appropriate.

Dated: January 25, 2026
       Miami, Florida

                                        Respectfully submitted,

                                        **PACK LAW**
                                        51 Northeast 24th Street, Suite 108
                                        Miami, Florida 33137
                                        Telephone: (305) 916-4500

                                        By:  */s/ Joseph A. Pack*
                                              Joseph A. Pack
                                              Email:  joe@packlaw.com
                                              Florida Bar No. 117882
                                              Robert G. Burns (*Pro Hac Vice Pending*)
                                              Email: robert@packlaw.com
                                              Jessey J. Krehl
                                              Email:  jessey@packlaw.com
                                              Florida Bar No. 1025848

                                        *Proposed Counsel to the Debtor*
                                        *and Debtor-in-Possession*

## <u>Exhibit A</u>

**The DIP Financing Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| PAT MCGRATH COSMETICS LLC,[1] | Case No. 26-10772-LMI |
| Debtor. | |

**DECLARATION OF PATRICIA MCGRATH**
**IN SUPPORT OF THE DEBTOR'S PROPOSED**
**EMERGENCY DEBTOR-IN-POSSESSION FINANCING**

I, Patricia McGrath, pursuant to section 1746 of title 28 of the United States Code, hereby declare that the following is true and correct to the best of my knowledge, information, and belief, including the information included in the exhibit attached hereto:

1.      My name is Patricia McGrath, I am over the age of eighteen, and I am competent to testify.

2.      I am the founder and CEO of the above-captioned debtor and debtor in possession (the "**Debtor**").  I am familiar with the Debtor's assets, liabilities, and operations.

3.      The Debtor, in the ordinary course of its operations, incurs various obligations including, most notably, biweekly payroll to fund its U.S. workforce and monthly payroll to fund its international workforce.

4.      It is my view that the proposed DIP Financing will allow the Debtor to continue to operate in the ordinary course of business, meet the obligations set forth in the DIP Budget, and overall maximize the Debtor's chances of success in this Chapter 11 Case.

---

[1] The last four digits of Pat McGrath Cosmetics LLC's tax identification number are 3615 and its mailing address is 29 East 19th Street, 8th Floor, New York, NY 10003.

5.      To that end, I have, in the exercise of my reasonable business judgment, determined to provide financing to the Debtor, as set forth more fully in the Debtor's motion to which this Declaration is attached, on the best possible terms available to the Debtor.  As set forth in the Motion and as I hereby confirm, the Debtor's primary responsibility shall be to meet the obligations set forth in the DIP Budget.  The Debtor is filing contemporaneously herewith certain motions for entry of orders of this Court to allow the Debtor to pay certain prepetition claims in accordance with the DIP Budget, and I hereby affirm the factual allegations presented in such motions.

6.      I do not believe the Debtor will be able to attain any financing on terms as favorable as those to which I have agreed.  Because vital payables come due immediately, including payroll which must be funded on or before Wednesday, January 28, 2026, after diligent efforts, there is simply no other possible funding available to the Debtor.

7.      It is my belief, given my understanding of the Debtor and its operations, that if the Debtor does not receive the DIP Financing proposed in the Motion to which this Declaration is attached, the Debtor will suffer extreme hardship and its reorganization will be materially and substantially harmed.  The Debtor will be unable to operate its business without the immediate provision of the DIP Financing.

8.      Under the circumstances, I believe the DIP Financing is fair, reasonable, necessary, urgent, and overall a reasonable exercise of the Debtor's business judgment.


[*Remainder of Page Intentionally Left Blank*]

**Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct to the best of my knowledge, information, and belief.**

Dated: January 25, 2026

By:  _/s/ Patricia McGrath_____
Name: Patricia McGrath
Founder and CEO of Pat McGrath Cosmetics, LLC

**<u>Exhibit B</u>**

**Proposed Interim DIP Budget**

**Pat McGrath Cosmetics, LLC - Proposed 3 Week Cash Flow Beginning 1/26/26**

| Week | W/E | Beginning Cash | Retailer Receipts (Prepetition Receivables) | Retailer Receipts (Postpetition Receivables) | Website Receipts (Postpetition Receivables) | DIP Financing | Cash In (Excluding Cash Collateral) | Total Cash In | Employee Costs | Sales & Other Taxes | Critical Vendors (Prepetition) | Rent | Beauty Advisors/ Contractors | Shipping & Logistics | IT / ERP / SAAS | Utilities & Office Expenses | Insurance | Product | Chapter 11 Professional Fees | Total Cash Out | Net Weekly Cash Flow | Ending Cash |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week 1 | 01/30/26 | 0 | 93,449 | | 87,200 | 1,000,000 | 1,087,200 | 1,180,649 | 689,324 | | 193,410 | | | 156,600 | 64,163 | 10,422 | | | 25,000 | 1,138,918 | 41,731 | 41,731 |
| Week 2 | 02/06/26 | 41,731 | 414,324 | 75,000 | 82,840 | | 157,840 | 572,164 | 410,601 | | 125,536 | 30,000 | 35,900 | 156,600 | 64,163 | 10,422 | 30,000 | | 25,000 | 477,621 | 94,543 | 136,274 |
| Week 3 | 02/13/26 | 136,274 | 65,446 | 1,500,000 | 78,480 | | 1,578,480 | 1,643,926 | 410,601 | 40,000 | 125,536 | | | 156,600 | 69,531 | 10,422 | | | 25,000 | 837,690 | 806,235 | 942,509 |
| | | | 573,219 | 1,575,000 | 248,520 | 1,000,000 | 2,823,520 | 3,396,739 | 1,099,925 | 40,000 | 444,482 | 30,000 | 35,900 | 469,800 | 197,858 | 31,265 | 30,000 | 0 | 75,000 | 2,454,230 | | |

**<u>Exhibit C</u>**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

|  |  |
|---|---|
| In re: | Chapter 11 |
| PAT MCGRATH COSMETICS LLC,[1] | Case No. 26-10772-LMI |
| Debtor. |  |

**ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR**
**ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN**
**POSTPETITION FINANCING PURSUANT TO SECTIONS 105(a), 362, 364(c) OF THE**
**BANKRUPTCY CODE, AND (II) GRANTING SUPER PRIORITY CLAIMS TO THE**
**DIP LENDER PURSUANT TO SECTION 364(c)(1) OF THE BANKRUPTCY CODE**

This matter came before the Court for hearing on January __, 2026, upon the emergency

motion [Docket No. __] (the "**Motion**")[2] of the above-captioned debtor and debtor in possession

(the "**Debtor**") for entry of an order (this "**Order**") (i) authorizing the debtor to obtain postpetition

---

[1] The last four digits of Pat McGrath Cosmetics LLC's tax identification number are 3615 and its mailing address is 29 East 19th Street, 8th Floor, New York, NY 10003.
[2] All captioned items not otherwise defined herein shall have the meanings ascribed to them in the Motion.

financing pursuant to sections 105(a), 362, and 364(c) of the Bankruptcy Code, and (ii) granting a super priority claim to the DIP Lender (Ms. Patricia McGrath) pursuant to section 364(c)(1) of the Bankruptcy Code, all as more specifically set forth in the Motion; and upon the DIP Financing Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest; and the Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion under the circumstances was appropriate and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court on January __, 2026 (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

     **IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED** as set forth herein.

2.      The statutory predicates for the relief sought in the Motion are sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, and Local Bankruptcy Rules of the Court (the "**Local Rules**") 4001-2, 4001-3 (and the Court's *Guidelines for Motions Seeking Authority to Use Cash Collateral and Motions Seeking Approval of Postpetition Financing* (the "**Guidelines**") incorporated therein), 9013-1, and 9075-1.

3.      The Court finds that the Debtor does not have sufficient unencumbered cash

(or otherwise accessible cash) or other assets to continue to operate its business during the Chapter 11 Case or to effectuate a reorganization absent approval of the proposed DIP Financing.  The Debtor will be immediately and irreparably harmed if they are not immediately granted the authority to obtain postpetition financing from the DIP Lender in accordance with the terms of this Order to permit, among other things, payment of payroll and other necessary expenses.  The access of the Debtor to sufficient working capital and liquidity made available through the incurrence of new indebtedness for borrowed money, and other financial accommodations is vital to the preservation and maintenance of the going concern value of the Debtor and a successful reorganization of the Debtor.

4.      The Debtor asserts that it is unable or would be unable to obtain financing on more favorable terms from sources other than the DIP Lender (who is providing credit on an unsecured basis) and is unable to obtain more favorable unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtor is also unable to obtain secured credit allowable under sections 364(c)(1) of the Bankruptcy Code without granting the DIP Superpriority Claims (as defined herein) under the terms and conditions set forth in this Order.

5.      The terms of the DIP Financing proposed by the DIP Lender are fair and reasonable, and the best available under the present circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration.  The postpetition financing under the DIP Financing has been entered into in good faith by and among the Debtor and the DIP Lender; and the postpetition financing to be provided by the DIP Lender has been extended in good faith as such term is used in section 364(e) of the Bankruptcy Code.

6.      Based on the record before the Court, the terms of the use of the DIP Financing

3

have been proposed in good faith, as that term is used in section 364(e) of the Bankruptcy Code and are in the best interest of the Debtor, its estate, and its creditors, and are consistent with the Debtor's fiduciary duties.

**Financial Terms of the DIP Facility**

7.      The DIP Lender is willing to and may provide the DIP Financing subject to the terms as described in the Motion and as follows:

a.      **The DIP Financing shall be post-petition financing that consists of financing in the amount of $1,000,000.00 on an unsecured, superpriority administrative expense claim basis.**

b.      **The incurrence of the DIP Financing is on a completely unsecured basis and accordingly does not interfere with the existing rights of lienholders.**

c.      **The DIP Financing shall be used only to fund the operations of the Debtor, in accordance with the DIP Budget.**

8.      The Debtor is hereby authorized to obtain post-petition financing from Ms. McGrath in accordance with the terms of this Order and the DIP Budget, up to the principal amount of $1,000,000.00 pursuant to section 364(c) of the Bankruptcy Code.

9.      The Debtor has requested the immediate entry of this order pursuant to Bankruptcy Rule 4001, and Local Rule and 4001-3. Absent the entry of this Order, the Debtor and its estate will be immediately and irreparably harmed.

10.     In accordance with sections 364(c)(1) and 507(b) of the Bankruptcy Code, all obligations due and owing under the DIP Financing shall constitute claims (the "**DIP Superpriority Claims**") with priority in payment over any and all administrative expense of the kind specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(b), 546(c), 1113 and 1114 of the Bankruptcy Code and shall at all times be senior to the rights of the Debtor, any successor trustee to the extent permitted by law, or any other creditor in the Chapter 11 Cases, except for the secured

claims of creditors with liens on property of the Debtor's estate.  All obligations due and owing und the DIP Financing shall be enforceable against the Debtor, its estate, and any successors thereto, including without limitation, any trustee appointed in the Chapter 11 Case, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Case.

11.     The DIP Financing is not entitled to any liens or security interests; *provided, however,* that the DIP Lender Financing shall still enjoy all superpriority administrative expense treatment set forth herein.

12.     No cost or expense of administration under sections 105, 364(c)(1), 503(b), 506(c), 507(b), 726 (to the extent permitted by law), 1113, 1114 or otherwise of the Bankruptcy Code unaccounted for in the DIP Budget, shall be senior to, equal to or *pari passu* with, the DIP Superpriority Claims granted hereunder except as expressly set forth herein.

13.     Nothing herein or in the Motion shall be construed as to limit, or in any way affect, the Debtor's ability to dispute or contest the amount of or basis for any claims against the Debtor, other than the DIP Superpriority Claims.

14.     The contents of the Motion are deemed to satisfy the requirements set forth in Bankruptcy Rule and 6004.

15.     Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Debtor is not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Debtor may, in its discretion and without further delay, take any action and perform any act authorized under this Order.

16.     The Court retains jurisdiction with respect to all matters arising from or related to the interpretation, implementation or enforcement of this Order.

### 

**Submitted by:**
Joseph A. Pack, Esq.
*Proposed Counsel for the Debtor and Debtor-in-Possession*
Pack Law, P.A.
51 Northeast 24th Street, Suite 108
Miami, Florida 33137
Tel: 305-916-4500
Email: joe@packlaw.com


Attorney Joseph A. Pack, Esq. is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF pursuant to applicable rules.