# PAT MCGRATH COSMETICS LLC

## RESTRUCTURING TERM SHEET

This term sheet (together with all schedules, annexes and exhibits hereto, the "***Restructuring Term Sheet***") sets forth the principal terms of a proposed comprehensive restructuring (the "***Restructuring***" or "***Restructuring Transaction***") of the existing capital structure of Pat McGrath Cosmetics LLC (collectively, the "***Company***" or the "***Debtor***" and, upon emergence from chapter 11, the "***Reorganized Debtor***"), which will be consummate in the Company's case under chapter 11 pursuant to title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "***Bankruptcy Code***") filed on January 22, 2026  (the "***Petition Date***") in the United States Bankruptcy Court for the Southern District of Florida (the "***Chapter 11 Cases***" and such court, the "***Bankruptcy Court***") pursuant to a chapter 11 plan containing terms set forth herein.[1]

THIS RESTRUCTURING TERM SHEET DOES NOT CONSTITUTE (NOR WILL IT BE CONSTRUED AS) AN OFFER OR ACCEPTANCE WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE.  ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.  NOTHING CONTAINED IN THIS RESTRUCTURING TERM SHEET SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL THE OCCURRENCE OF THE AGREEMENT EFFECTIVE DATE ON THE TERMS DESCRIBED HEREIN, DEEMED BINDING ON ANY OF THE PARTIES TO THE RESTRUCTURING SUPPORT AGREEMENT.

THIS RESTRUCTURING TERM SHEET IS THE PRODUCT OF SETTLEMENT DISCUSSIONS AMONG THE COMPANY, PAT MCGRATH, GDA (AS DEFINED BELOW) AND THE DIP LENDER (AS DEFINED BELOW). ACCORDINGLY, THIS RESTRUCTURING TERM SHEET IS PROTECTED BY RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY OTHER APPLICABLE STATUTES OR DOCTRINES PROTECTING THE USE OR DISCLOSURE OF CONFIDENTIAL SETTLEMENT DISCUSSIONS.

THIS RESTRUCTURING TERM SHEET DOES NOT PURPORT TO SUMMARIZE ALL OF THE TERMS, CONDITIONS, REPRESENTATIONS, WARRANTIES, AND OTHER PROVISIONS WITH RESPECT TO THE TRANSACTIONS DESCRIBED HEREIN, WHICH TRANSACTIONS WILL BE SUBJECT TO THE COMPLETION OF DEFINITIVE DOCUMENTS INCORPORATING THE TERMS SET FORTH HEREIN AND THE CLOSING OF ANY TRANSACTION SHALL BE SUBJECT TO THE TERMS AND CONDITIONS SET FORTH IN SUCH DEFINITIVE DOCUMENTS AND THE APPROVAL RIGHTS OF THE PARTIES SET FORTH HEREIN AND IN SUCH DEFINITIVE DOCUMENTS, IN EACH CASE, SUBJECT TO THE TERMS HEREOF.

---

[1] Capitalized terms used but not defined herein or in **Annex 1** hereto have the meanings given to such terms in the DIP Term Sheet.

| Material Terms of the Restructuring Transaction ||
|---|---|
| **Term** | **Description** |
| **Company:** | Pat McGrath Cosmetics LLC, a New York limited liability company |
| **Claims and Interests to be Restructured:** | The Debtor's prepetition capital structure consists of:<br><br>**GDA Prepetition Claims.** Consisting of any and all claims held by GDA PMG Funding LLC ("***GDA***") as of the petition date including, but not limited to, all claims acquired from TVT Capital Source and TVTCap, all claims acquired from Settle Funding LLC and all additional amounts funded directly by GDA, in each case inclusive of all principal, interest, costs and fees accrued thereon as of and after the Petition Date, but excluding the amount rolled-up as part of the DIP Financing;<br><br>**Keyhaven Claims.** Consisting of any and all claims held by Keyhaven Blocker Inc ("***Keyhaven***") inclusive of all principal, interest, costs and fees accrued thereon as of the Petition Date;<br><br>**E Advance Services Claims.** Consisting of any and all claims held by E Advance Services LLC ("***E Advance Services***") inclusive of all principal, interest, costs and fees accrued thereon as of the Petition Date;<br><br>**Parkview Claims.** Consisting of any and all claims held by Parkview Advance LLC ("***Parkview***") inclusive of all principal, interest, costs and fees accrued thereon as of the Petition Date;<br><br>**800 Funding Claims.** Consisting of any and all claims held by 800 Funding LLC ("***800 Funding***") inclusive of all principal, interest, costs and fees accrued thereon as of the Petition Date;<br><br>**Amerifi Claims.** Consisting of any and all claims held by Amerifi Capital LLC ("***Amerifi***") inclusive of principal, interest, costs and fees accrued thereon as of the Petition Date;<br><br>**General Unsecured Claims.** Consisting of any unsecured prepetition Claim against the Debtor that is not an administrative claim, an unsecured priority claim, a GDA Prepetition Claim, a Keyhaven Claim, an E Advance Claim, a Parkview Claim, an 800 Funding Claim, an Amerifi Claim, a Critical Vendor Claim (as defined below) or an unsecured Claim otherwise subordinated or entitled to priority under the Bankruptcy Code (the "***General Unsecured Claims***"); and<br><br>**Existing Equity Interests.** Consisting of all existing equity interests in the Company. ("***Existing Equity Interests***"). |
| **DIP Financing:** | Prior to or following the Petition Date, the Debtor will enter into a credit agreement with funds managed by GDA to fund term loans (in such capacity, the "***DIP Lender***") to the Company, which will come in the form of debtor-in-possession financing (the "***DIP Facility***") consistent with the term sheet attached hereto as **Annex 2** (the "***DIP Term Sheet***") and otherwise acceptable to the DIP Lenders. The Debtor shall use the proceeds of the DIP Facility in accordance with the Approved Budget. The DIP Facility shall consist of up to $10 million in new money loans plus the roll-up of $1.00 of Prepetition GDA Secured Claims for each $1.00 of new money financing authorized under the DIP Facility. The obligations of the Company under the DIP Facility shall be referred to herein as the "***DIP Obligations***". |
| **Overview of Plan:** | The Restructuring Transactions shall be effectuated pursuant to plan of reorganization (the "***Plan***"), which shall be in form and substance acceptable to: (i) the Company; (ii) the DIP Lender; and (iii) GDA, and shall otherwise be subject to a plan of reorganization, disclosure statement and other definitive documents (collectively, the "***Definitive Documents***") acceptable to the Company and GDA. |

|  | Pursuant to the Plan, in exchange for agreeing to equitize the full outstanding amount of the DIP Facility and the Prepetition GDA Secured Claim, GDA will receive, on the Plan Effective Date (to be defined therein), preferred equity and common equity of the Reorganized Debtor as further described in this Restructuring Term Sheet.<br><br>On the Plan Effective Date, each holder of an allowed claim or allowed interest, as applicable, shall receive under the Plan the treatment described in this Restructuring Term Sheet in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's allowed claim or allowed interest, except to the extent different treatment is agreed to among the Reorganized Debtor, the GDA, and the holder of such allowed claim or allowed interest. For the avoidance of doubt, any action required to be taken by the Debtor on the Plan Effective Date pursuant to this Restructuring Term Sheet may be taken on the Plan Effective Date or as soon as is reasonably practicable thereafter in consultation with the GDA. |
|---|---|
| **Treatment of Claims and Interests under Chapter 11 Plan** ||
| **Claim** | **Proposed Treatment** |
| **Administrative Expense Claims and Priority Claims:** | Except to the extent that a holder of an allowed administrative expense claim or an allowed priority claim agrees to a less favorable treatment, each holder of an allowed administrative expense claim or an allowed priority claim will receive, in full and final satisfaction of such allowed claim, cash in an amount equal to such allowed claim on the Plan Effective Date or as soon as practicable thereafter or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. |
| **GDA DIP Obligations; GDA Prepetition Claims:** | On the Plan Effective Date or as soon as practicable thereafter, in full and final satisfaction of all DIP Obligations (as defined under the DIP Term Sheet) and the GDA Prepetition Claim, GDA shall receive:<br><br>• New Preferred (as defined below) in an amount equal to the unpaid principal, interest, fees and expenses of the DIP Obligations and the GDA Prepetition Claims (including, for the avoidance of doubt, prepetition and postpetition interest, fees and expenses accrued thereon); and<br><br>• New Common (as defined below) equal to 65% of all issued New Common on a fully diluted basis (i.e., assuming full issuance of the MIP and the other issuances of New Common contemplated by this Restructuring Term Sheet). |
| **McGrath DIP Obligations:** | On the Plan Effective Date or as soon as practicable thereafter, in full and final satisfaction of all obligations owned to McGrath under the $1,000,000 debtor-in-possession loan made by Patricia A. McGrath as approved on an interim basis by the Bankruptcy Court on or about February 2, 2026, under the *Interim Order Granting Debtor's Emergency Motion For Entry Of An Order (I) Authorizing The Debtor To Obtain Post-Petition Financing Pursuant To Sections 105(a), 362, 364(c) Of The Bankruptcy Code, And (II) Granting Super Priority Claims To The DIP Lender Pursuant To Section 364(c)(1) Of The Bankruptcy Code* (ECF No. 62) (the "***McGrath DIP***"), McGrath shall receive New Preferred in an amount equal to the unpaid principal and interest under the McGrath DIP. |
| **Keyhaven Claims:** | On the Plan Effective Date or as soon as practicable thereafter, the Keyhaven Claim shall be deemed cancelled and shall receive New Preferred in an amount equal to $500,000. |
| **E Advance Services Claims; Parkview Claims, Amerifi Claims; 800 Funding Claims:** | On the Plan Effective Date or as soon as practicable thereafter, E Advance Services, Parkview, Amerifi and 800 Funding shall each receive a cash payment equal to 1% of its applicable allowed claims in full and final satisfaction of any debt owed to E Advance, Parkview, Amerifi and 800 Funding, as applicable; provided that to the extent the aggregate of the allowed claims of E Advance, Parkview, Amerifi and 800 Funding exceeds $3,700,000, the payments shall be reduced pro rata. |

| Critical Vendor Claims: | On the Plan Effective Date, certain holders of general unsecured claims will be designated by the Debtor, with the consent of the DIP Lender in its sole discretion, as critical vendors (the "**Critical Vendors**" and the claims held by them, the "**Critical Vendor Claims**").  On the Plan Effective Date or as soon as practical thereafter, each holder of a Critical Vendor Claim shall receive such treatment as shall be determined by the Debtor and the DIP Lender in their sole discretion. |
|---|---|
| General Unsecured Claims: | On the Plan Effective Date or as soon as practicable thereafter, each holder of a General Unsecured Claim shall receive, except to the extent such holder agrees to less favorable treatment, its *pro rata* share of $250,000. |
| Existing Equity Interests: | On the Plan Effective Date, all Existing Equity Interest shall be cancelled, and holders of Existing Equity Interests shall receive, in the aggregate, 5% of the New Common, which New Common shall be distributed as determined by the Company in consultation with the DIP Lender. |

| **Other Terms Relevant to Chapter 11 Plan Implementation** | |
|---|---|
| Definitive Documents: | This Restructuring Term Sheet shall be subject to definitive documentations (the "**Definitive Documents**").  The Definitive Documents shall contain terms, conditions, representations, warranties, and covenants, each customary for the transactions described herein and consistent with the terms of this Restructuring Term Sheet in all respects.  Any documents related to the Restructuring Transactions, including any Definitive Documents, shall be subject to the consent rights and obligations set forth in Restructuring Support Agreement and the DIP Loan Documents.  Failure to reference such consent rights and obligations as it relates to any document referenced in this Restructuring Term Sheet shall not impair such rights and obligations. |
| Capital Structure of Reorganized Debtor: | GDA will form a holding company ("**Holding Company**") to own 100% of the membership interests of Reorganized Debtor. |
| | At closing, Holding Company equity shall consist of two classes, as follows: |
| | **Preferred Equity.**  Perpetual, non-participating, non-convertible preferred equity issued to. Preferred equity shall have a 3x return ("**New Preferred**").  New Preferred will be issued to GDA and McGrath as described above. |
| | **Common Equity.**  Common equity ("**New Common**") will be issued to GDA as described above, and to McGrath and MIP participants as described below. |
| Exit Loan: | Senior secured working capital financing facility from GDA or a third-party lender offering more favorable terms of up to $20 million, structured on market terms, including, but not limited to, a first lien security interest. |
| Tax Matters: | The Parties shall use commercially reasonable efforts to structure and implement the Restructuring Transactions in a tax efficient and cost-effective manner for the benefit of the Reorganized Debtor, GDA and the DIP Lenders, including with respect to NOLs.  The tax structure of the Restructuring Transactions shall be subject to the consent of GDA and the DIP Lenders.  The Debtor shall promptly take all actions as are reasonably necessary to implement such tax structure. |
| Restructuring Expenses: | Except as otherwise provided in, and subject to the notice requirements of, the DIP Orders, the Company shall pay the reasonable and documented prepetition and post-petition fees and expenses of any advisors to GDA and the DIP Lenders pursuant to the DIP Term Sheet. |

| | |
|---|---|
| **Amendments:** | This Restructuring Term Sheet may be amended only by a written agreement executed and delivered by the Company, GDA and the DIP Lender and to the extent required under the Bankruptcy Code, the approval of the Bankruptcy Court after notice and a hearing. |
| **Conditions Precedent:** | The occurrence of the Plan Effective Date shall be subject to the following conditions precedent, unless otherwise waived in accordance with the terms of the Plan: |

<table>
<tr><td>i.</td><td>The Debtor shall have neither proposed nor signified its support for an alternative plan of reorganization that is not supported by GDA and the DIP Lender and no event or condition shall have occurred which with the passage of time or the giving of notice or both would constitute a default or event of default under the DIP Facility;</td></tr>
<tr><td>ii.</td><td>The Bankruptcy Court shall have entered the DIP Orders, which shall be in full force and effect and no Event of Default or condition which, with the passage of time or giving of notice, would become an Event of Default shall have occurred and continue to exist under the DIP Loan Documents including, but not limited to, a failure to comply with the milestones set forth in the DIP Term Sheet;</td></tr>
<tr><td>iii.</td><td>The Definitive Documents shall (a) be consistent with the consent rights, terms and conditions set forth in this Restructuring Term Sheet and DIP Loan Documents, and otherwise approved by the applicable parties thereto consistent with their respective consent and approval rights set forth therein, and (b) have been executed or deemed executed and delivered by each party thereto, and any conditions precedent related thereto shall have been satisfied or waived by the applicable party or parties;</td></tr>
<tr><td>iv.</td><td>The Debtor shall have paid, in full and in cash, all reasonable and documented fees and expenses, including professional fees and expenses, GDA and the DIP Lenders, including, for the avoidance of doubt, the Restructuring Expenses;</td></tr>
<tr><td>v.</td><td>The Bankruptcy Court shall have entered the Confirmation Order and the Confirmation Order shall not have been reversed, stayed, modified, or vacated on appeal;</td></tr>
<tr><td>vi.</td><td>All actions, documents, and agreements constituting the applicable Definitive Documents, including any exhibits, schedules, amendments, modifications or supplements thereto, shall have been executed and/or effectuated, and shall be in form and substance materially consistent with and subject to the consent rights set forth in the Restructuring Support Agreement and the DIP Loan Documents;</td></tr>
<tr><td>vii.</td><td>(a) Any and all requisite governmental, regulatory, and third-party approvals and consents shall have been obtained or waived, not be subject to unfulfilled conditions, and be in full force and effect, and (b) all applicable waiting periods shall have expired or terminated, in each case under each foregoing clause of (a) and (b), without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on the Restructuring Transactions, or the financial benefits of such Restructuring Transactions to the GDA; and</td></tr>
<tr><td>viii.</td><td>No court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, preventing or prohibiting the consummation of the Restructuring Transactions, the Restructuring Term Sheet or any of the Definitive Documents contemplated thereby.</td></tr>
</table>

| | |
|---|---|
| **Milestones:** | The Debtor shall comply with the Milestones set forth in the DIP Term Sheet. |
| **Break-Up Fee** | In the event that a transaction contemplated hereby does not close on the Plan Effective Date as set forth in this Restructuring Term Sheet (except as otherwise agreed by the DIP Lender), DIP Lender shall be entitled to be paid a break-up fee of $2,500,000 (the ***Break-Up Fee***"). |
| **Unexpired Leases and Executory Contracts:** | As of and subject to the occurrence of the Plan Effective Date, and the payment of any applicable cure amount, and subject to the express written consent of GDA, all executory contracts and unexpired leases to which any of the Debtor are parties shall be deemed assumed, unless such contract or lease (i) was previously assumed or rejected by the Debtor, pursuant to a Final Order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to reject filed by the Debtor on or before the Confirmation Date, or (iv) is specifically designated by the GDAas a contract or lease to be rejected.  The treatment of any subsidiaries of the Debtor shall be in the discretion of the DIP Lender. |
| **Governance and New Organizational Documents:** | Prior to the start of the Confirmation hearing, the Debtor and Holding Company shall adopt new or revised charters, limited liability company operating agreements, or other organization documents, as applicable, acceptable to GDA and the DIP Lender, each in their sole discretion, which documents will become effective as of the Plan Effective Date.<br><br>On the Plan Effective Date, a New Board shall be appointed in accordance with the terms of the New Organizational Documents, and the identity of the New Board shall be set forth in the Plan Supplement to the extent known at the time of filing.<br><br>Certain terms concerning the corporate structure and governance of the Reorganized Debtor are described on **Annex 3** attached to this Restructuring Term Sheet **[,WHICH TERMS ARE TO BE INCLUDED IN PLAN SUPPLEMENT]** |
| **Management Incentive Plan; KERP:** | The Plan will provide for the establishment of a post-emergence management incentive plan on the Plan Effective Date (the "***MIP***").  Up to 10% of the New Common of Holding Company, on a fully diluted basis, will be reserved for issuance in connection with the MIP, with the terms of the MIP, including the vesting schedule and participants to be determined by the New Board. Pat McGrath shall not participate in the MIP.<br><br>**[FURTHER TERMS TO BE INCLUDED IN PLAN SUPPLEMENT]** |
| **Pat McGrath Equity Ownership and Employment Agreement:** | **[TO BE INCLUDED IN PLAN SUPPLEMENT]** |
| **Vesting of Assets in the Reorganized Debtor:** | On the Plan Effective Date, except as otherwise set forth in the Plan, pursuant to sections 1141(b)–(c) of the Bankruptcy Code, all assets of the Debtor, including all Retained Claims and Causes of Action, shall vest in the Reorganized Debtor, as applicable, free and clear of all liens, Claims, and encumbrances.  The Reorganized Debtor shall retain all rights to commence and pursue the Retained Claims and Causes of Action. |
| **Discharge; Releases; Debtor Releases; Consensual Releases; Exculpation; and Injunction:** | The Plan shall: (i) provide for the discharge of all Claims and liabilities that are subject to discharge to the fullest extent permitted under the Bankruptcy Code; (ii) contain customary release and exculpation provisions, including releases by the Debtor and consensual third-party releases, in form and substance reasonably acceptable to the Debtor and the released party, GDA and the DIP Lender (who shall grant reciprocal releases to the Debtor, Pat McGrath, and the other parties listed below who are receiving releases from the Debtor) to the extent such parties vote in favor of the Plan described herein and agree to provide releases to the Debtor, Pat McGrath, GDA and the DIP Lenders, [Keyhaven], Amerifi, Parkview, 800 Funding, and E Advance Services; and (iii) contain customary injunction provisions. |

**ACKNOWLEDGED AND AGREED**:


**DEBTOR**:

**PAT MCGRATH COSMETICS LLC**


By: /s/ Patricia McGrath
Name: Dame Patricia McGrath Title:
Founder


By: /s/ Patricia McGrath
Dame Patricia McGrath


**DIP LENDER**:

**GDA PMG FUNDING LLC**

By: /s/  Gabriel de  Alba
Name: Gabriel de Alba
Title: Managing Member

7

## Annex 1

| Certain Defined Terms | |
|---|---|
| **Term** | **Definition** |
| "***Bankruptcy Code***" | Means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, modified, or supplement from time to time). |
| "***Claim***" | Has the meaning ascribed to it in section 101(5) of the Bankruptcy Code. |
| "***Plan Effective Date***" | Means the date on which all conditions precedent to the occurrence of the effective date of the Plan shall have been satisfied or waived in accordance with the Plan. |
| "***Retained Claims and Causes of Action***" | Means all Claims and causes of action of the Debtor and its estate, other than any Claims or causes of action that are released under the Plan. |

## <u>Annex 2</u>

**DIP Term Sheet**

**PAT MCGRATH COSMETICS LLC**
**DEBTOR-IN-POSSESSION FINANCING**
**FIRST-PRIORITY SENIOR SECURED DIP MULTI-DRAW TERM LOAN FACILITY**

***FOR DISCUSSION PURPOSES ONLY - NOT A COMMITMENT TO LEND***

This term sheet (this "Term Sheet") shall not become binding unless and until (1) the Term Sheet is signed by the DIP Lender (defined below) and the Debtor (defined below), and (2) the Interim Order (defined below) approving the DIP Facility (defined below) contemplated by this Term Sheet has been entered by the U.S. Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") which Interim Order shall include the application of sections 364(c), 364(d) and 364(e) of the Bankruptcy Code as prescribed in this Term Sheet. Prior to satisfaction of the two conditions set forth in the immediately preceding sentence, this Term Sheet shall be non-binding, for discussion purposes only and shall not be construed as a commitment of any kind to provide the DIP Facility. This Term Sheet shall be confidential until the DIP Lender (as defined below) provides its consent for it to be disclosed.

THIS TERM SHEET IS THE PRODUCT OF SETTLEMENT DISCUSSIONS BETWEEN THE DEBTOR AND THE DIP LENDER (AS DEFINED BELOW). ACCORDINGLY, THIS TERM SHEET IS PROTECTED BY RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY OTHER APPLICABLE STATUTES OR DOCTRINES PROTECTING THE USE OR DISCLOSURE OF CONFIDENTIAL SETTLEMENT DISCUSSIONS.

This Term Sheet sets forth certain of the key terms and conditions by which GDA PMG FUNDING LLC (in its capacity as lender under the DIP Loan (as defined below), the "DIP Lender"), is willing to provide Pat McGrath Cosmetics LLC, as debtor and debtor-in-possession (the "Debtor" or the "Company" as applicable) [1][2] with a superpriority, senior secured DIP multi-draw term loan facility (the "DIP Facility") comprised of (a) New Money Loans (as defined below) in an aggregate principal amount of up to $10,000,000.00 (the maximum amount thereof, the "Commitment"), and (b) a roll-up of pre-petition indebtedness in the aggregate principal amount of up to $10,000,000.00 on a dollar-for-dollar basis for each dollar of New Money Loans authorized to be borrowed under the DIP Facility by the Bankruptcy Court.

This Term Sheet does not purport to summarize all of the terms, conditions, and other provisions with respect to the DIP Facility contemplated hereby. Unless otherwise stated herein, each material term set forth herein shall be included in a final, binding term sheet and an interim order and final order, each in form and substance satisfactory to the DIP Lender in its sole and absolute discretion (the "Interim Order" and the "Final Order", respectively, and together, the "DIP Order"), each authorizing the extension of the DIP Facility contemplated hereby.

---

[1] Pat McGrath Cosmetics LLC, as debtor and debtor-in-possession (individually, a "Debtor," and collectively, the "Debtors") in a case under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. commenced in the United States Bankruptcy Court for the Southern District of Florida (such case, the "Case", and such court, the " Bankruptcy Court").

[2] To the extent any non-debtor affiliate of the Company owns or shares any property (including, without limitation, any computer, website, domain, e-commerce channel, server, accounting or other operating system or data base) that is used in connection with the Company's business, then such affiliate shall guarantee and be jointly and severally liable in respect of, the DIP Facility and shall grant first priority liens on such respective assets, and all references to the "Company" or "Debtor" herein shall include each such non-debtor affiliate, mutatis mutandis, to the extent of the collateral described in this footnote.

| PROVISION | | TERMS |
|---|---|---|
| | | |
| **1. DIP LOANS:** | | Subject to closing conditions and reasonable documentation to be agreed upon, including, without limitation, the Bankruptcy Court's entry of the Interim Order and the Final Order (collectively, the "DIP Documentation") in form and substance satisfactory to the DIP Lender in its sole discretion, the DIP Lender, as the sole lender in connection with the DIP Facility agrees to provide the DIP Facility of up to $20 million (the "DIP Loan") as follows: <br><br> a) up to $10,000,000.00, in new cash advances (the "New Money Loans"); and <br><br> b) the "roll-up" into the DIP Facility (the "Roll-Up Loans"), of up to $10,000,000.00 (the "Roll-Up Amount") of prepetition loans (together with all principal, interest, costs and fees accrued thereon as of and after the Petition Date, the "Prepetition Loans") funded or otherwise held by GDA PMG Funding LLC ( in its capacity as lender prior to filing of the Case, the "Prepetition Lender") upon approval by the Bankruptcy Court of the Interim Order. <br><br> The New Money Loans will be made in multiple draws from time to time (though not more frequently than once per week), in each case, up to the dollar amount required for Debtor to pay its net disbursement (i.e. projected disbursements less projected receipts) as shown in the Approved Budget for the calendar week following delivery of Debtor's borrowing request (or in such other amounts acceptable to the DIP Lender in its sole and absolute discretion), subject to (w) receipt of five (5) business days' prior written notice of a borrowing request, (x) compliance with the Approved Budget as described below, (y) the absence of any Event of Default (as defined below) or any event, circumstance or condition, that with the passage of time, would become an Event of Default, and (z) satisfaction of the Conditions Precedent (as defined below) (in each case except to the extent the DIP Lender otherwise agrees in its sole and absolute discretion); provided, however, <br><br> i. prior to approval by DIP Lender of an Approved Budget, DIP Lender shall have sole and absolute discretion as to whether to make any New Money Loan(s); <br> ii. prior to the entry of the Final Order (as defined herein), the Debtor shall not be permitted to borrow New Money Loans (inclusive of amounts for the payment of Debtor's professionals and any Carve-Out) of more than |

$5,000,000.00 (the "Interim Loan Amount") in aggregate principal amount under the DIP Facility, such Interim Loan Amount to include funds sufficient to allow the Debtor to meet its payroll due on February 13, 2026 and such other amounts as may be approved by DIP Lender in its sole and absolute discretion (the "Initial Advance");

iii.    following entry of the Final Order, the Debtor may request and receive additional borrowings (or "advances") under the DIP Facility in accordance with the Approved Budget until the full $10,000,000.00 (excluding any PIK interest) in New Money Loans has been disbursed (each such advance a "Subsequent Advance");

iv.    once disbursed, New Money Loans may be repaid at any time but amounts so repaid may not be re-borrowed; and

v.    subject to Bankruptcy Court approval, upon entry of the Interim Order, the roll-up and deemed repayment of the Prepetition Loans shall automatically be deemed to occur in the amount of $10,000,000.00 shall automatically be deemed to have been rolled up into and shall become part of the DIP Facility.

Upon being drawn down, proceeds of the DIP Loans, which shall constitute the DIP Lender's Cash Collateral, will be deposited into a segregated bank account of the Debtor acceptable to the DIP Lender (each, a "DIP Account"); provided that the DIP Lender shall at all times have a perfected first priority lien thereon pursuant to the DIP Order and shall, at all times, have online access to review the status of the DIP Account, including all disbursements made therefrom, deposits, account statements and any other information that DIP Lender may request in connection therewith. So long as no Event of Default shall have occurred, amounts in the DIP Account may be used by a Debtor in accordance with the Approved Budget.

Any amounts remaining in the DIP Account at the maturity of the DIP Facility (whether by acceleration or otherwise) may be applied to reduce the DIP Obligations (as defined below) then outstanding, subject to payment in full in cash of the portion of the Carve-Out (as defined below) then incurred, plus the Post-Trigger Carve-Out Cap (as defined in the Interim Order) (solely to the extent that a Carve-Out Trigger Notice (as defined in the Interim Order) has then been delivered in accordance with Interim Order or Final Order, as applicable).

| | | |
|---|---|---|
| | | As used herein, the term "<u>DIP Obligations</u>" shall mean all principal (including, but not limited to, any interest which is capitalized and added to principal hereunder), interest, fees, costs, expenses, charges and other amounts owing to the DIP Lender in respect of the DIP Facility including, but not limited to, the outstanding balance due in respect to the New Money Loans and the Roll-Up Loans, Alternative DIP Transaction Fee, Exit Fee, and the Break-Up Fee (as defined in the Restructuring Term Sheet (as defined below)). |
| | | |
| **2. INTEREST RATE:** | | 12.5% per annum paid monthly in arrears on the last business day of each calendar month, either in cash or, at DIP Lender's sole discretion, in kind by automatically capitalizing any interest not paid in cash by adding it to the outstanding principal amount of the DIP Obligations monthly at 11:59 p.m. ET on the last calendar day of each month.<br><br>After the occurrence and during the continuance of an Event of Default, all outstanding DIP Obligations shall bear interest at an additional 7.50% per annum, which additional interest will be payable on demand. |
| | | |
| **3. CASH COLLATERAL:** | | Subject to the terms and conditions of the DIP Order and any order(s) entered regarding Cash Collateral, the Debtor shall have the right to use, solely in accordance with the Approved Budget and as otherwise permitted under the DIP Facility, any Cash Collateral in which the Prepetition Lender or any other creditors of the Debtor may have an interest; provided that for each use and/or disbursement of such funds (a) DIP Lender has approved such use and/or disbursement in writing, and (b) subsequent to such disbursement Debtor shall deliver evidence satisfactory to DIP Lender in its sole discretion that the subject disbursement was made in the manner approved by DIP Lender.<br><br>The term "<u>Cash Collateral</u>", as used in this Term Sheet, shall have the meaning as defined in section 363(a) of the Bankruptcy Code.<br><br>The Interim Order and Final Order shall include provisions authorizing the Prepetition Lender to retain any cash in its possession or control which it received prior to or after the Petition Date that are proceeds of prepetition collateral as a result of exercising its rights as a secured creditor prior to the Petition Date following the occurrence of events of default and to the extent not applied prior to the Petition Date, to apply such amounts to the outstanding balance of the Prepetition Loans, in its sole |

| | |
|---|---|
| | discretion.  The Debtor shall also acknowledge in the Final Order that prior to the Petition Date, the Prepetition Lender received certain cash through the proper exercise of its post-default rights and remedies consistent with applicable law and appropriately applied such cash to the Prepetition Loans and the Interim Order and Final Order shall confirm that such cash does not constitute property of the estate.<br><br>Debtor shall provide daily reports showing all Debtor's deposits and disbursements with the report delivered before 10:00 AM (Eastern Time). |
| | |
| **4. CASH DOMINION:** | From and after the Closing Date, Debtor will cause or direct all cash receipts and collections received by the Debtor from all sources, including, without limitation, all proceeds from the sale of goods and inventory and other DIP Collateral, collection of accounts, credit card charges, to be transferred daily to the DIP Account.  To the extent required by DIP Lender, the Debtor will work with DIP Lender to implement cash management procedures satisfactory to the DIP Lender, including, but not limited to, the establishment of customary cash management arrangements (collectively, the "<u>Cash Management Accounts</u>"), which will provide for the DIP Lender to have control of certain other deposit and securities accounts as required by DIP Lender. |
| | |
| **5. FEES:** | **Commitment Fee**: None.<br><br>**Exit Fee**: The DIP Lender shall be entitled to receive an exit fee of $3,700,000 (the "<u>Exit Fee</u>"), at the earlier to occur of the (x) Maturity Date and (y) any the date on which (i) the other DIP Obligations are paid in full in cash or (ii) some or all of the DIP Obligations are credit bid in connection with any sale.  The Exit Fee shall be fully-earned as of the Closing Date.  For the avoidance of doubt, upon the Exit Fee being fully-earned, the Exit Fee shall constitute a DIP Obligation for the purposes of this Term Sheet and the Restructuring Term Sheet and shall receive the same treatment as the other DIP Obligations if the Plan of Reorganization is confirmed and shall otherwise be due and payable in cash or, in the discretion of DIP Lender (or any entity owned by the DIP Lender (or its designee)) may be included in a credit which may be submitted by the DIP Lender (or such designee). |
| | |

| | |
|---|---|
| **6. ALTERNATIVE DIP TRANSACTION FEE:** | In the event that the Plan of Reorganization (as defined below) is not consummated, the Debtor shall be required to pay to DIP Lender (in addition the payment in full of outstanding DIP Obligations, which shall include the aggregate amount of all payments and prepayments (voluntary, mandatory, by acceleration in connection with the exercise of rights and remedies or otherwise, or otherwise) paid to DIP Lender, in cash, with respect to the principal amount of the DIP Loan (including any such payments made on account of capitalized interest)) a fixed fee in the amount of $2,500,000.00, plus the DIP Lender's reasonable and documented out-of-pocket expenses, which are described in Section 28 herein (the "Alternative DIP Transaction Fee"). <br><br> The Alternative DIP Transaction Fee shall be due and payable upon the earlier to occur of (i) the final repayment, including, without limitation, mandatory and/or optional prepayment (in connection with acceleration or otherwise), in full, of all DIP Obligations under the DIP Documentation, or (ii) the Maturity Date (other as a result of the Plan of Reorganization being confirmed by final, non-appealable order of the Bankruptcy Court). For the avoidance of doubt, the Alternative DIP Transaction Fee shall be due and payable no later than on the date of any credit bid of some or all of the Obligations submitted by the DIP Lender (or their designee, or any entity owned by the DIP Lender), thereby allowing the Alternative DIP Transaction Fee to be credit bid. |
| **7. REPAYMENT OF DIP FACILITY:** | The full outstanding balance of the DIP Obligations shall be due and payable in cash on the Maturity Date; provided, however, that the DIP Lender, in its sole discretion, may elect to equitize the DIP Loan and the Prepetition Loans pursuant to a plan of reorganization in form and substance satisfactory to it, subject to confirmation by the Bankruptcy Court. Any plan of reorganization proposed by the Debtor shall provide for either the payment in full in cash of all of the DIP Obligations and the Prepetition Loans or such other treatment as may be satisfactory to the DIP Lender and Prepetition Lender in its sole discretion, it being acknowledged that the Plan of Reorganization (as defined below) would be satisfactory to the DIP Lender. |
| **8. CREDIT BID:** | The DIP Lender may, at its sole and absolute discretion, credit bid all or any portion of the DIP Obligations (including the Alternative DIP Transaction Fee, the Exit Fee and the Break Up Fee (as defined in the Restructuring Term Sheet)) and the Prepetition Loans, in addition to any other amounts owing to the DIP Lender |

| | |
|---|---|
| | or Prepetition Lender, as part of any bid submitted in a sale of any portion or all the Debtor's assets pursuant to Section 363(k) of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under Section 1129(b)(2)(A)(iii) of the Bankruptcy Code. |
| **9. MANDATORY PREPAYMENTS:** | The following mandatory prepayments of the DIP Facility are required:<br><br>(a) <u>Asset Sales</u>:  Immediately following the receipt by Debtor, prepayments in an amount equal to 100% of the proceeds (net of out of pocket, commercially reasonable transaction-related expenses determined acceptable by the DIP Lender, amounts then incurred in respect of the Carve-Out (plus the Post-Trigger Carve-Out Cap (solely to the extent that a Carve-Out Trigger Notice has then been delivered in accordance with Interim Order or Final Order, as applicable)), and amounts of such proceeds due and payable to holders of Permitted Prior Liens (as defined below) on the assets being disposed) of the sale or other disposition of any property or assets (including inventory) of Debtor outside the ordinary course of business ("<u>Asset Sale</u>").<br><br>(b) <u>Insurance Proceeds</u>:  Immediately following the receipt by Debtor, prepayments in an amount equal to 100% of the insurance and condemnation proceeds (net of reasonable transaction-related expenses determined acceptable by DIP Lender, amounts then incurred in respect of the Carve-Out (plus the Post-Trigger Carve-Out Cap (solely to the extent that a Carve-Out Trigger Notice has then been delivered in accordance with Interim Order or Final Order, as applicable)), and amounts of such proceeds due and payable to holders of Permitted Prior Liens on lost or damaged assets) received on account of any loss of or damage to any property or assets of Debtor. |
| **10. MATURITY DATE:** | The DIP Loan along with all outstanding interest, fees and expenses accrued and unpaid thereon shall be due and payable on the earliest of: (i) April 14, 2026; (ii) the effective date of a Plan of Reorganization for the Debtor confirmed by final, non-appealable order of the Bankruptcy Court; (iii) the date of a sale of all or substantially all of the assets of the Debtor; or (iv) acceleration of the DIP Loans upon or following the occurrence of an Event of Default (the "<u>Maturity Date</u>"). |
| **11. USE OF PROCEEDS:** | The DIP Loan may only be used for working capital, operating expenses, administrative expenses, and critical vendor payments |

| | |
|---|---|
| | (if and as approved by the Bankruptcy Court) solely in accordance with the Approved Budget (as defined below). |
| | |
| **12. CLOSING DATE:** | The Initial Advance shall be made within three (3) business days of entry of the Interim Order except if needed sooner to meet the payroll due on February 13, 2026. |
| | |
| **13. SECURITY AND PRIORITY:** | The DIP Loan, including interest and fees, shall be secured by fully perfected first priority liens and security interests on all of Debtor's assets, pre-and post- petition, now or hereafter acquired, whether held directly or indirectly, subject only to any valid and perfected Permitted Prior Liens (defined below), including but not limited to, accounts, accounts receivable, books and records, cash collateral, cash and cash equivalents, chattel paper (including tangible and electronic chattel paper), commercial tort claims, contracts, contract rights, copyrights and copyright applications, creative assets, deposit accounts, documents (including negotiable documents), documents of title, domains, equipment (including, computer, servers and all accessions and additions to any equipment), general intangibles (including payment intangibles and software), goods, fixtures, insurance contracts and insurance proceeds, instruments, promissory notes, intellectual property, intellectual property licenses, leases, inventory, investment property, letter of credit rights, money, patents and patent applications, real property, securities, tax and other refunds, trade names, trademarks and trademark applications, websites, and all proceeds and supporting obligations thereof or relating thereto; all property of the estate of the Debtor wherever located within the meaning of section 541 of the Bankruptcy Code; and all books and records with respect to any of the foregoing, the computers and equipment containing said books and records, including, but not limited to, the proceeds from any recovery for the benefit of the Debtor's estates made on or on account of the avoiding powers outlined in Chapter 5 of the Bankruptcy Code (the "<u>Avoidance Actions</u>"), but such Avoidance Actions themselves shall not be subject to any lien (collectively, the " <u>DIP Collateral</u>").<br><br>Such liens shall be deemed automatically perfected without the need to make filings or record any documentation under applicable non-bankruptcy law, provided, however, DIP Lender shall have the right to make any such filings or record any such instruments if it elects to do so in its sole discretion.<br><br>The DIP Loan and other liabilities and obligations of Debtor to DIP Lender under the DIP Loan (including, without limitation, any advances for legal fees and expenses) shall be: |

(i)  Pursuant to section 364(c)(1) of the Bankruptcy Code, entitled to superpriority administrative expense claim status in the Case over any and all administrative expenses, whether heretofore or hereafter incurred, of the kind specified in, among other sections, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, 1114 and any other provision of the Bankruptcy Code, including, but not limited to, priority over the $1,000,000.00 debtor-in-possession loan made by Patricia A. McGrath (the "McGrath DIP") as approved on an interim basis by the Bankruptcy Court on or about February 2, 2026, under the *Interim Order Granting Debtor's Emergency Motion For Entry Of An Order (I) Authorizing The Debtor To Obtain Post-Petition Financing Pursuant To Sections 105(a), 362, 364(c) Of The Bankruptcy Code, And (II) Granting Super Priority Claims To The DIP Lender Pursuant To Section 364(c)(1) Of The Bankruptcy Code* (ECF No. 62) (the "McGrath Interim DIP Order");

(ii)  Pursuant to section 364(d) of the Bankruptcy Code, secured by valid, perfected, first-priority, priming and senior security interests and liens in and on the DIP Collateral, not subject to subordination or any other liens; and all existing liens, rights and interests in the DIP Collateral shall be primed and made subject to and subordinate to the perfected first priority senior liens to be granted to DIP Lender, for the benefit of DIP Lender, which senior priming lien in favor of the DIP Lender shall also prime any liens including without limitation adequate protection liens granted after the commencement of the Case;

(iii)  Pursuant to section 364(c)(3) of the Bankruptcy Code, be secured by valid junior perfected security interests in and liens on all property of Debtor that is subject to: (a) non-avoidable, valid and perfected liens in existence as of the Petition Date, or (b) non-avoidable valid liens in existence as of the Petition Date that are subsequently perfected as permitted by section 546(b) of the Bankruptcy Code, which in each case had priority over the liens securing the Prepetition Loans under applicable state law as of the Petition Date (such liens described in (a) and (b) above, collectively, the "Permitted Prior Liens"); and

<table>
<tr>
<td></td>
<td>(iv) Pursuant to section 364(c)(2) of the Bankruptcy Code, secured by valid, perfected, first-priority security interests and liens not subject to subordination in and on all DIP Collateral that is not otherwise subject to Permitted Prior Liens that are not subject to non-avoidable, valid and perfected liens.

In no event shall DIP Lender be subject to the equitable doctrine of marshalling or any similar doctrine with respect to the DIP Collateral. DIP Lender shall be entitled to all the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception of section 552(b) shall not apply to DIP Lender with respect to proceeds, products, offspring, or profits of any of the DIP Collateral. The DIP Collateral and the DIP Loans shall not be subject to surcharge by the Debtor, a subsequently appointed chapter 11 or chapter 7 trustee or any other party in interest pursuant to Bankruptcy Code 506(c), such surcharge rights being irrevocably waived.</td>
</tr>
<tr>
<td>**14. CONDITIONS PRECEDENT TO THE INITIAL ADVANCE:**</td>
<td>The DIP Lender shall have no obligation to make any DIP Loan unless and until the following conditions are deemed to have been satisfied in full by DIP Lender in its sole and absolute discretion (collectively, the "Conditions Precedent"):

a) The Bankruptcy Court shall have entered an Interim Order approving the DIP Loan on an interim basis, in form and substance satisfactory to DIP Lender in its sole and absolute discretion, which order shall be in full force and effect and shall not have been reversed, vacated or stayed and shall not have been amended, supplemented or otherwise modified without the prior written consent of DIP Lender (which consent may be withheld in its sole discretion), which Interim Order shall among other things (i) authorize and approve the DIP Loan on an interim basis and the transactions contemplated thereby, including, without limitation, the granting of the super-priority status, security interests and liens, and the payment of all fees referred to herein; and (ii) provide for enforcement of DIP Lender's rights and remedies with respect to the DIP Loan on terms acceptable to DIP Lender, including without limitation a provision allowing DIP Lender the right to request an expedited hearing (on at least five business days' prior written notice) on a motion for relief from stay to enforce such rights and remedies;</td>
</tr>
</table>

b) The Debtor and DIP Lender shall have agreed upon an Approved Budget;

c) All motions and other documents to be filed with and submitted to the Bankruptcy Court in connection with the DIP Loan shall be in form and substance satisfactory to DIP Lender in its reasonable discretion, and said orders shall not be subject to any stay or injunction or otherwise subject to reversal on appeal as to any funded portion of the DIP Loans;

d) The DIP Documents or a Bankruptcy Court order shall incorporate cash management provisions that are satisfactory to the  DIP Lender, in its sole and absolute discretion;

e) The Debtor shall provide accounting back up for detailing the amounts required to fund the payroll due on February 15, 2026, satisfactory DIP Lender in its sole and absolute discretion;

f) Debtor shall have continued (i) the critical vendors motion filed as ECF 5 and (ii) the utilities motion filed as ECF 7, in each case, until Debtor and DIP Lender have reached a mutually satisfactory agreement as to the relief sought therein;

g) The Debtor shall have executed the Restructuring Term Sheet with the DIP Lender and Prepetition Lender attached hereto as <u>Exhibit A</u> (the "<u>Restructuring Term Sheet</u>"), which Restructuring Term Sheet contemplates the Debtor's agreement to prosecute a plan of reorganization consistent with such Restructuring Term Sheet, which Restructuring Term Sheet and plan shall be in form and substance and satisfactory to DIP Lender its sole and absolute discretion (the "<u>Plan of Reorganization</u>");

h) The Debtor shall have appointed a Chief Restructuring Officer, pursuant to terms approved by DIP Lender in its sole and absolute discretion (the "<u>CRO</u>") (the DIP Lender acknowledging that an employee of Paladin Management, LLC approved by the DIP Lender shall be acceptable to it), which CRO shall have, until as other provided under the Plan of Reorganization, the sole individual authority to (i) represent and bind the Debtor, and (ii) authorize any and all disbursements by Debtor;

<table>
<tr><td></td><td>

i)   An appointment of a Chapter 11 trustee or the conversion to Chapter 7 ("<u>MAC</u>") has not occurred; and

j)   An Event of Default or event which with the passage of time or the giving of notice would constitute an Event of Default shall not have occurred.

The DIP Lender may waive any of the conditions precedent at any time or from time to time, including, without limitation, in respect of the DIP Loans advanced (or deemed advanced) to repay or create reserves for the repayment of the Prepetition Loans.

</td></tr>
<tr><td>

**15. CONDITIONS PRECEDENT TO SUBSEQUENT ADVANCES:**

</td><td>

On the funding date of each Subsequent Advance, the following additional conditions precedent shall have been satisfied or waived by DIP Lender:

a)   All conditions precedent to the Initial Advance shall be satisfied;

b)   There shall exist no Event of Default;

c)   The Debtor shall have submitted a borrowing request in form and substance acceptable to the DIP Lender specifying the amount to be borrowed under the DIP Facility no later than five (5) business days prior to the proposed borrowing date; provided that any such borrowing request other than one in respect to the payroll due on or about February 15, 2026, shall be for a minimum of $250,000.00 (and in $50,000.00 increments if such request is for greater than the minimum amount);

d)   With respect to the time period after entry of the Interim Order, the DIP Lender shall have received a copy of, or a certificate as to coverage under, the insurance policies in accordance with requirements that are customary for loan documents of this type and shall name the DIP Lender, on behalf of the DIP Lender, as additional insured or loss payee (as applicable), in form acceptable to DIP Lender;

e)   The Debtor has complied with all DIP Milestones (as defined below) that were scheduled to occur prior to the date of such Subsequent Advance;

f)   The representations and warranties of Debtor in the DIP Documentation shall be true and correct in all material respects;

</td></tr>
</table>

|  |  |
|---|---|
|  | g) Subject to Bankruptcy Court approval as may be required, all fees and expenses (including, without limitation, reasonable fees and expenses of counsel) of DIP Lender invoiced on or before the date of such advance have been paid; |
|  | h) The making of such DIP Loan shall not violate any requirement of applicable law and shall not be enjoined, temporarily, preliminarily or permanently; |
|  | i) The Interim Order and, following its entry, the Final Order shall be in full force and effect and shall not have been reversed, vacated or stayed and shall not have been amended, supplemented or otherwise modified without the prior written consent of DIP Lender (which consent may be withheld in its sole discretion); |
|  | j) Debtor shall have operated in accordance with the Approved Budget prior to such advance, except for deviations which do not exceed Permitted Variances; |
|  | k) All first day orders that are filed in the Chapter 11 Cases entered by the Bankruptcy Court shall be reasonably acceptable to DIP Lender; and |
|  | l) No Event of Default has occurred and is continuing or would be reasonably expected to result after giving effect to any requested DIP Loan. |
|  | In addition, the Debtor shall be in compliance in all material respects with all the terms and provisions set forth herein and in the other DIP Documentation, and, at the time of and immediately after giving effect to such DIP Loan and the application of the proceeds thereof, no Event of Default shall have occurred and be continuing on such date or would be reasonably expected to result after giving effect to any requested DIP Loan. |
|  | The DIP Lender may waive any of the conditions precedent at any time or from time to time, including, without limitation, in respect of the DIP Loans advanced (or deemed advanced) to repay or create reserves for the repayment of the Prepetition Loans. |
| **16. CARVE-OUT:** | The DIP Loan shall provide for a carve-out for (i) the unpaid fees and interest due and payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee pursuant to 28 U.S.C. |

<table>
<tr><td></td><td>§ 1930; (ii) the fees and expenses of a Chapter 7 or Chapter 11 trustee if one is appointed in the Cases, not to exceed $25,000.00; and (iii) the payment of all (a) allowed and (b) then accrued but unpaid (i.e. work-in progress amounts due and owing) but not yet subject to a fee application or allowance, for professional fees incurred by Debtor prior to the earlier to occur of the Maturity Date or the occurrence of an Event of Default hereunder (the "<u>Carve-Out Trigger Date</u>"), subject in each case to the Approved Budget, and allowance by the Bankruptcy Court (the "<u>Pre-Carve-Out Trigger Amount</u>"), and (ii) professional fees and expenses of the Debtor's professionals incurred in the Case after the Maturity Date in an amount not to exceed $50,000.00 in the aggregate (the "<u>Post-Trigger Carve-Out Cap</u>"; and, in the aggregate with clauses (i),(ii),(iii) and (iv) the "<u>Carve-Out</u>").</td></tr>
<tr><td></td><td></td></tr>
<tr><td><strong>17. ADEQUATE PROTECTION:</strong></td><td>No adequate protection shall be provided to any prepetition creditor, except on terms acceptable to DIP Lender in its sole and absolute discretion. The Prepetition Lender shall be entitled to the following adequate protection:

a) Acknowledgement of  the amount of prepetition indebtedness in the DIP Orders  as an allowed , duly perfected senior  secured claim, subject only to the DIP Loans and any Permitted Prior Liens;

b) Superpriority administrative expense claims, junior only to the Carve-Out and the superpriority claim granted hereunder in respect to the DIP Obligations;

c) Replacement liens in all assets of the Debtor (subject only to the Carve-Out, Permitted Prior Liens, and the liens securing the DIP Loan),  which replacement liens shall be automatically perfected without  the necessity of additional filings or actions; and

d) Interest shall continue to accrue on, be added to and constitute part of the Prepetition Loans for purposes of this DIP Term Sheet (and the GDA Prepetition Claims (as defined in the Restructuring Term Sheet)) but shall not be payable in cash prior to the Maturity Date, and such accrued post-petition interest shall be entitled to the same treatment as the Prepetition Loans.

Additionally, pursuant to the DIP Orders, as adequate protection for any diminution in the value of its collateral during the Case, to the extent it is determined by final, non-appealable order of the</td></tr>
</table>

Page 14

| | |
|---|---|
| | Bankruptcy Court to have an allowed secured claim, Keyhaven PMG Blocker, Inc. ("Keyhaven" and the "Keyhaven Loans") shall be granted junior replacement liens (the "Keyhaven Junior Replacement Liens") in the DIP Collateral, subject to (i) the Carve-Out, (ii) any Permitted Prior Liens, (iii) the Prepetition Liens (as defined below), and (iv) the liens securing the DIP Loan. The Keyhaven Junior Replacement Liens shall be deemed to be automatically perfected without necessity of additional filings or actions, provided, however, that such Keyhaven Junior Replacement Liens and Keyhaven's prepetition loans and any other claims shall be subject to the subordination and other provisions of that certain Limited Consent and First Amendment to Secured Promissory Note dated as of April, 29, 2025, by and among the Debtor, Keyhaven and Prepetition Lender, which agreement shall remain in full force and effect and continue to govern as between Keyhaven, on the one hand, and the Prepetition Lender, on the other hand; provided, further, however, that the limitation on subordination provided thereunder shall not apply to the amount of the DIP Loans entitled to priority hereunder and under the DIP Orders. |
| | |
| **18. STIPULATIONS:** | The Debtor shall stipulate in each DIP Order as follows: <br><br> a) The Prepetition Loans in the aggregate of amount $37,425,180.94 are each valid, binding, and enforceable in accordance with their respective terms. <br><br> b) The Prepetition Lender's prepetition liens (collectively, the "Prepetition Liens") are valid, binding, perfected and enforceable liens against the property described in the prepetition security documents (collectively, the "Prepetition Collateral"), senior to all other prepetition liens and claims other than any Permitted Prior Liens. <br><br> c) The Debtor does not have any claims or counterclaims against DIP Lender affecting the validity, payment, or enforceability of the prepetition liens or prepetition claims, including, without limitation or, to the extent such claims or counterclaims exist, Debtor releases such claims or counterclaims. |
| | |
| **19. DEBTOR PROFESSIONALS:** | The DIP Lender shall not object to the proposed retention of the Debtor's professionals on February 13, 2026, including, as applicable, (i) Pack Law, as restructuring counsel; (ii) Gordian |

| | |
|---|---|
| | Group, LLC, as investment bank and financial advisor; and (iii) Paladin Management Group, LLC, which shall provide the CRO (and such other personnel approved by DIP Lender in its sole and absolute discretion).<br><br>The DIP Lender agrees that the Carve-Outs that apply to the foregoing professionals are as follows, in the aggregate: (i) Pack Law, $1,000,000.00; (ii) Gordian Group, LLC ("Gordian"), (A) if the Plan of Reorganization (or an alternative plan that is otherwise supported by the DIP Lender in its sole discretion) is consummated, a flat fee of $1,950,000 (inclusive of success fees, monthly payments of $75,000, and all other amounts (except for reasonable expenses) paid under the Gordian engagement letter), (B) in the event the DIP Obligations and Prepetition Loans are repaid in full in cash, the terms otherwise contemplated in the Gordian engagement letter, and (C) otherwise, monthly payments of $75,000 per month for up to three (3) months; and (iii) Paladin Management Group, LLC, $500,000.<br><br>The DIP Lender shall not object to the proposed retention of the professional listed in the immediately preceding paragraph, but any additional professionals that are proposed to be retained in the Case shall be subject to pre-approval by DIP Lender in its sole and absolute discretion. |
| **20. EVENTS OF DEFAULT:** | The DIP Loan shall benefit from customary and otherwise appropriate events of default (each an "Event of Default"), including, without limitation, the following:<br><br>a) Unless extended by DIP Lender in DIP Lender's sole discretion, if a Final Order shall not have been entered by March 13, 2026, that is satisfactory to the DIP Lender in its sole discretion and which shall contain, among other things: (i) findings regarding the good faith of DIP Lender; (ii) the protections of Bankruptcy Code section 364(e); (iii) a requirement to comply with the DIP Milestones; and (iii) restrictions on the entry of any future order of the Bankruptcy Court dismissing or otherwise disposing of the Case unless and until the DIP Loan is repaid, in cash, in full;<br><br>b) Any failure to comply with the DIP Milestones (defined below) as of the date required;<br><br>c) Filing of any motion by Debtor seeking to obtain credit or incur indebtedness, or the taking of any other action |

by or on behalf of Debtor to obtain any credit or incurrence of indebtedness, that is: (x) secured by a security interest, mortgage or other lien on all or any portion of the DIP Collateral, or (y) entitled to administrative priority status which is equal or senior to claims of the DIP Lender (other than the Carve-Out) described in this Term Sheet unless the full outstanding amount of the DIP Obligations are to be repaid in cash from the proceeds of such indebtedness;

d) Institution of any judicial proceeding by Debtor seeking to challenge the validity of any portion of the DIP Documentation, the DIP Obligations, any of the obligations under the Prepetition Loans or the applicability or enforceability of same or which seeks to void, avoid, limit, subordinate or otherwise adversely affect any security interest created by or in relation to the DIP Documentation;

e) Failure of any condition precedent identified herein;

f) Failure of Debtor to timely comply with any DIP Milestones or the failure of the Debtor to incorporate the DIP Milestones into any bidding procedures motion;

g) The failure of Debtor to comply with reporting requirements as specified in the DIP Documentation, including, without limitation, the failure to provide to DIP Lender on a daily basis reports or other requested information;

h) Entry of an order dismissing the Case or converting the Case to a case under Chapter 7 of the Bankruptcy Code;

i) The failure of Debtor to (i) pay when due any principal (whether by scheduled maturity, acceleration, demand or otherwise), or (ii) pay within three (3) days of the due date thereof any interest, fee, indemnity or other amount payable under the DIP Loan when due (whether by scheduled maturity, acceleration, demand or otherwise);

j) The Debtors' support for, filing of pleadings seeking or the entry of an order of the Bankruptcy Court confirming a plan of reorganization in the Case or

approving a transaction pursuant to which a sale or other liquidation of all or substantially all of the assets of Debtor is contemplated (a "Sale Transaction"), which is not supported by the DIP Lender or which does not (i) contain a provision for the payment in full in cash of all of the DIP Obligations on or before the effective date of such plan or such Sale Transaction; or (ii) provide for such alternative treatment that may be satisfactory to the DIP Lender and Prepetition Lender in their sole discretion, it being agreed that the treatment described in the Restructuring Term Sheet would be satisfactory to the DIP Lender and Prepetition Lender;

k) The entry of an order by the Bankruptcy Court dismissing the Case that does not contain a provision for the payment in full in cash of the DIP Loan and Prepetition Loan upon entry thereof;

l) The entry by the Bankruptcy Court or an appellate court of an order with respect to the Case that (i) revokes, reverses, stays, modifies, supplements or amends the Interim Order and/or Final Order, except as consented to by DIP Lender in its sole and absolute discretion; (ii) permits any administrative expense or any claim (now existing or hereafter arising, of any kind or nature whatsoever) to have administrative priority equal or superior to the priority of DIP Lender, not in accordance with the terms of this Term Sheet and the Interim Order and/or Final Order; or (iii) grants or permits the grant of a lien on any DIP Collateral, not in accordance with the terms of this Term Sheet and the Interim Order and/or Final Order;

m) Except as otherwise agreed by DIP Lender, the entry of an order by the Bankruptcy Court that is not stayed pending appeal granting relief from the automatic stay to any creditor of Debtor with respect to any claim asserted to exceed $100,000.00 in the aggregate (other than workers' compensation claims that are fully covered by insurance in the ordinary course of business) or permitting foreclosure on any material asset of Debtor;

n) Any attempt by Debtor or a party acting on behalf of the Debtor's bankruptcy estates to challenge invalidate,

reduce or otherwise impair the indebtedness, liens or security interests of DIP Lender or Prepetition Lender;

o) Any attempt by Debtor, without the explicit consent of DIP Lender, to (i) reconstitute its board(s) of directors; (ii) remove any retained Chief Restructuring Officer (or similar Financial Advisory Firm) or their acceptable replacement(s), including the CRO, or (iii) retain or hire any advisor or third-party consultant not contemplated in the Approved Budget;

p) The commencement by motion or otherwise of any sale of any material assets of Debtor or any subsidiaries of Debtor, excluding sales of inventory made in the ordinary course of business, at any time during the Case, unless such sale either (i) provides for all net sale proceeds to be paid first to satisfy the full outstanding balance of the DIP Loan and Prepetition Loan; or (ii) is conducted on terms and with procedures that have been approved in advance by DIP Lender in its sole and absolute discretion;

q) Any disruption of the business operations of Debtor that has a material adverse effect after the date hereof, which, for the avoidance of doubt, shall include the termination of any contract with a supplier or material customer and/or a material reduction in the number of stores selling products of the Debtor;

r) The appointment of an interim or permanent trustee in the Case or the appointment of a receiver or an examiner in the Case with expanded powers to operate or manage the financial affairs, the business, or reorganization of Debtor;

s) The payment of, or application for authority to pay, any pre-petition claim without the DIP Lender's prior written consent (including by email) or unless otherwise permitted under the Approved Budget;

t) The allowance of any claim or claims under Section 506(c) of the Bankruptcy Code or otherwise against DIP Lender, their claims or the DIP Collateral (other than with respect to the payment of the Carve-Out);

| | | |
|---|---|---|
| | u) | The entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code to allow any creditor to foreclose upon or enforce a lien or other interest in any DIP Collateral with an aggregate value in excess of $100,000.00; and/or |
| | v) | The Debtor proposes or supports, directly or indirectly, any plan of reorganization or sale or entry of any confirmation order or sale order that is not supported by the DIP Lender or conditioned upon the indefeasible payment in full in cash, upon the consummation of such plan of reorganization or such Sale, of all DIP Obligations and the Prepetition Loans. |
| **21. Remedies Upon Occurrence of an Event of Default:** | | Immediately upon the occurrence and during the continuance of any Event of Default (following the expiration of any applicable grace period), DIP Lender may, subject to the terms of the DIP Order and upon written notice to counsel for the Debtor, the Office of the United States Trustee (subject to the provisions of the immediately following paragraph with respect to any enforcement action by the DIP Lender against any DIP Collateral): (i) (a) declare all or any portion of the DIP Obligations to be immediately due and payable; (b) declare the termination, reduction or restriction of any further commitment to extend credit to the Debtor, to the extent any such commitment remains; (c) terminate the DIP Facility and the DIP Documentation as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Obligations, the DIP Liens (as defined in the Interim Order), DIP Super-Priority Claims (as defined in the Interim Order) or the other DIP Protections (as defined in the Interim Order); (ii) declare a termination, reduction, or restriction on the ability of the Debtor to use any Cash Collateral; and/or (iii) subject to the next paragraph, exercise all default-related rights and remedies, without further order of or application or motion to the Bankruptcy Court, and without restriction or restraint by any stay under Sections 362 or 105 of the Bankruptcy Code or otherwise.<br><br>In addition, upon the occurrence of any Event of Default (following the expiration of any applicable grace period), and subject to the terms of the DIP Order and following the giving of five (5) business days' prior written notice to counsel for the Debtor, and the Office of the United States Trustee, the DIP Lender shall have relief from the automatic stay to foreclose on all or any portion of the DIP Collateral, collect accounts receivable and apply |

| | |
|---|---|
| | the proceeds thereof to the DIP Obligations (subject to payment in full in cash of the Carve-Out), occupy the Debtor's premises to sell or otherwise dispose of the DIP Collateral or otherwise exercise remedies against the DIP Collateral permitted by applicable non-bankruptcy law.  During such five (5) business day notice period, the Debtor and the Office of the United States Trustee shall be entitled to any emergency hearing with the Bankruptcy Court for the sole purpose of contesting whether an Event of Default has occurred and is continuing.  Unless during such period the Bankruptcy Court determines that an Event of Default has not occurred or is not continuing, then (i) the automatic stay, as to the DIP Lender, shall be automatically terminated at the end of such notice period, without further notice, hearing or order, (ii) neither Section 105 nor any other provision of the Bankruptcy Code shall be utilized to preclude or restrict the DIP Lender from exercising its default-related rights and remedies, and (iii) the Debtor shall cooperate with the DIP Lender to effect an orderly liquidation of its DIP Collateral on terms and conditions acceptable to the DIP Lender in its sole and absolute discretion. <br><br> Without limiting the foregoing, upon the request of the DIP Lender following the occurrence and during the continuance of any Event(s) of Default, if so directed by the DIP Lender, the Debtor shall use commercially reasonable efforts to sell all or such portion of the DIP Collateral as the DIP Lender shall specify and on such terms and conditions and pursuant to such bidding procedures as are acceptable to the DIP Lender in its sole and absolute discretion, and remit the proceeds therefrom to the DIP Lender for application to the DIP Obligations (subject to payment in full in cash of the Carve-Out), and in connection with the foregoing, the Debtor shall file and use commercially reasonable efforts to pursue one or more motions under Section 363 of the Bankruptcy Code, in form and substance satisfactory to the DIP Lender, for the entry of order(s) of the Bankruptcy Court (in form and substance satisfactory to the DIP Lender) approving bidding procedures (acceptable to the DIP Lender in its sole and absolute discretion) governing each such sale of DIP Collateral and approving each such sale of DIP Collateral that has been approved by the DIP Lender in its sole and absolute discretion. |
| **22. REPRESENTATIONS AND WARRANTIES:** | The Debtor represents and warrants to DIP Lender that the representations and warranties listed in **Exhibit B** attached hereto are true and correct. |
| | |

| | |
|---|---|
| **23. AFFIRMATIVE AND NEGATIVE COVENANTS:** | The Debtor shall comply with the affirmative and negative covenants provided in Section 6(a) and Section 6(b) of the GDA Loan Agreement (as defined in the Interim Order), which covenants shall be deemed incorporated herein and to apply to the DIP Loans. Further, Debtor shall provide DIP Lender with copies of all records, reports, or information and other materials reasonably requested from time to time by DIP Lender in connection with its monitoring or review of the Approved Budget. In addition, Debtor shall cooperate with and permit representatives of DIP Lender to (i) have access to the DIP Collateral, Debtor's books and records, Debtor's bank accounts; and (ii) perform daily reviews of the Debtor's activities with designated employees, managers and/or representatives of the Debtor. |
| **24. CONSENTS:** | Any amendments, waivers and modifications to the terms of the DIP Loan and/or to the DIP Documentation will require consent of DIP Lender. No waiver of any of the provisions of this Term Sheet shall be deemed or constitute a waiver of any other provision of this Term Sheet, whether or not similar, nor shall any waiver be deemed a continuing waiver. |
| **25. BUDGET COVENANTS:** | As soon as reasonably practicable, Debtor shall submit to DIP Lender a proposed budget, which budget shall be subject to DIP Lender's approval in its sole and absolute discretion, and which budget may be amended from time to time with the prior written consent of the DIP Lender (as it may be so be approved and subsequently amended, the "Approved Budget").

The Approved Budget shall at all times reflect a 4-week cash flow commencing on February 13, 2026, containing line items of sufficient detail to reflect Debtor's projected receipts and disbursements for each week for such period, with updates to be made each week by Thursday of each week for the succeeding 4-week period, which updated budget shall become the Approved Budget if approved by the DIP Lender (the "Cash Flow Statement").

Together with each Cash Flow Statement, the Debtor shall provide DIP Lender with a report reflecting the actual disbursements for each one-week period ending the Saturday preceding each date on which the Cash Flow Statement is to be delivered and showing the dollar and percentage variances of actual disbursements from those reflected in the Approved Budget.

The Debtor shall not permit any of (i) the aggregate disbursements for any one-week period in the Approved Budget, (ii) the |

| | |
|---|---|
| | cumulative disbursements for each period from the Petition Date through the last day of any such period; or (iii) the disbursements for any individual line item in the Approved Budget less in each case those disbursements during such one-week period within any particular category which were originally scheduled to be, but were not, incurred within such category before the commencement of such one-week period, to exceed the respective amounts set forth in the Approved Budget for such one-week period or such cumulative period by more than 10% ("Permitted Variance"); provided that the foregoing shall not apply or be deemed to apply to professional fees, provided further that all professional fees shall at all times be subject to, and, in any event, shall not exceed the amounts provided in, the Approved Budget for the applicable period.  In addition, the Debtor shall not permit gross receipts for any one-week period in the Approved Budget, and for the cumulative period from the Petition Date through the last day of any month to be less than the respective amounts set forth in the Approved Budget for such one-week period or such cumulative period by more than 10%. |
| | The Debtor shall not, without the prior written consent of the DIP Lender, with respect to the applicable disbursement or agreement, make any disbursement or any series of related disbursements in excess of the amounts set forth in the Approved Budget, plus Permitted Variances. In addition, regardless of whether any of the following is reflected in the Approved Budget, the Debtor shall not, without the prior written consent of the DIP Lender, enter into, negotiate or otherwise engage in any discussions with any party regarding (i) any settlement agreements with any supplier, creditor or retailer of the Debtor, or (ii) any contracts or other contracts outside the ordinary course of the Debtor's business. |
| | Debtor shall provide DIP Lender with copies of all non-privileged reports, information and other materials requested from time to time by DIP Lender. |
| | In addition, Debtor shall cooperate with and permit representatives of DIP Lender to have access to the DIP Collateral, non-privileged records, management personnel and other employees of the Debtor, and non-privileged meetings. The Debtor shall make itself available to and cooperate reasonably with DIP Lender and their reasonable information requests. |
| **26. Inspection Rights:** | The DIP Lender and its financial advisors, consultants and other professionals and representatives shall (i) have full and complete access to and shall be entitled to visit and inspect, any of the |

|  |  | facilities or any assets owned or used in connection with the Debtor's business, any of the computer, accounting or operational systems owned or used in connection with the Debtor's business, and any of the books and records relating to the Debtor's business wherever located, and (ii) shall be entitled to discuss and/or review any matter relating to the Debtor's business affairs (including, without limitation, all contracts to which Debtor is a party), operations or the sale process with the Debtor, their respective officers, directors, employees and advisors and other professionals, as often as may be reasonably requested.  To the extent any affiliate of Debtor has any facilities or assets or any computer, server, accounting or operational systems used in connection with the Debtor's business or any books and records relating to the Debtor's business, the DIP Lender shall (i) have full and complete access to and shall be entitled to visit and inspect, any such facilities (both at Debtor's headquarters and/or any off-site locations) or assets of such affiliate or any such computer, accounting or operational systems of such affiliate or any such books and records of such affiliate and (ii) shall be entitled to discuss and review any matter relating to the Debtor's business affairs, operations or the sale process with such affiliate, its officers, directors, employees and advisors and other professionals, as often as may be reasonably requested.  In addition, the DIP Lender and its financial advisors, consultants and other professionals and representatives shall be entitled to communicate directly with any and all vendors, customers, creditors or other parties in interest with respect to any matter involving the Debtor, relating to the Debtor's business affairs, operations or the sale process.<br><br>Subject to attorney-client privilege and attorney work product, the Debtor and its Board of Directors shall cooperate, and shall cause the Debtor's officers, employees, advisors and other professionals to cooperate, with the DIP Lender in connection with the exercise of their access and informational rights as set forth in the immediately preceding paragraph. |

| 27. Limitations on Use of DIP Loans and Cash Collateral: | None of the DIP Loans, Cash Collateral, DIP Collateral or Carve-Out may be used for any of the following purposes:<br><br>(a) object to or contest the validity or enforceability of the Interim Order or Final Order or any obligations outstanding under the DIP Documentation;<br><br>(b) seek to modify any of the rights granted under the Interim Order, Final Order or any other DIP Documentation to the DIP Lender;<br><br>(c) make any payment in settlement or satisfaction of any prepetition or administrative claim, unless in compliance with the Approved Budget;<br><br>(d) object to, contest, delay, prevent or interfere with in any way the exercise of rights and remedies by the DIP Lender with respect to the DIP Collateral or the Prepetition Lender in respect to the collateral securing the Prepetition Loans (the "Prepetition Collateral") once an Event of Default has occurred (except that Debtor may contest or dispute whether an Event of Default has occurred and the Debtor shall be entitled to any notice provisions provided in any Interim Order or Final Order);<br><br>(e) object to or contest the validity, enforceability, priority or amount of the Prepetition Loans or the liens securing the Prepetition Collateral; or<br><br>(f) for any other disbursement or payment made by Debtor that is not approved by DIP Lender (to the extent not approved in the Approved Budget). |
| 28. EXPENSES: | Debtor shall pay, pursuant to the DIP Orders, on a current basis, all prepetition and postpetition fees and expenses of the DIP Lender and Prepetition Lender, including, without limitation, (i) reasonable out-of-pocket costs and expenses of DIP Lender and Prepetition Lender (including, without limitation, all reasonable fees, expenses and disbursements of outside counsels Brown Rudnick LLP, Stearns Weaver Miller, Development Specialists, Inc., and/or any other consultants and/or advisors) in connection with the diligencing, negotiation, preparation, execution and delivery of this Term Sheet and the DIP Documentation, the funding of all drawings under the DIP Loan, the administration of the DIP Loan, and any amendment or waiver of any provision of the DIP Documentation; (ii) the diligencing, negotiation, documentation, consummation, administration or any other aspect of the DIP Facility and the DIP Documentation, including, without |

limitation, internal administrative, consulting and monitoring fees; (iii) the diligencing, negotiation, documentation, consummation, administration or any other aspect of any reorganization and/or sale process in the Chapter 11 Cases, (iv) reasonable costs and expenses of DIP Lender and Prepetition Lender (including, without limitation, reasonable fees, expenses and disbursements of aforementioned counsel and consultants to DIP Lender and Prepetition Lender) in connection with the enforcement or protection of any of their rights and remedies under the DIP Loan or Prepetition Loan, and (v) reasonable costs and expenses of DIP Lender and Prepetition Lender (including, without limitation, all reasonable fees, expenses and disbursements of aforementioned outside counsel, consultants and/or advisors) in connection with the enforcement to date of DIP Lender's or Prepetition Lender's rights and remedies arising out of the Prepetition loans owing by Debtors and/or its affiliates to the Prepetition Lender. Such payments are to be reimbursed on a current basis by the Debtor, first from the proceeds of DIP Loans and thereafter from the Debtor's assets and shall in any event constitute part of the DIP Obligations.

All such costs and expenses shall be paid once per two-week period without any requirement to submit fee applications to the Bankruptcy Court; provided that prior to payment of such costs and expenses each relevant professional has provided copies of its fee and expense statements to the Debtor, U.S. Trustee, and any appointed Official Committee of Unsecured Creditors. The U.S. Trustee and/or Official Committee of Unsecured Creditors may object to the reasonableness of the fees, costs and expenses included in any such professional fee invoice, provided that, any such objection shall be forever waived and barred unless (i) it is filed with this Court and served on counsel to the parties seeking reimbursement no later than ten (10) days after the objecting parties receiving such applicable professional fee invoice, and (ii) it describes with particularity the items and categories of fees, costs and expenses that are subject to the objection and it provides for a specific basis for the objection to each category of fees, costs and expenses; provided, however, further that the Debtor shall pay all amounts that are not subject of any objection within ten (10) days of the objection deadline. Any hearing on an objection to any payment of any fees, costs and expenses of such professionals shall be limited to the reasonableness of the particular items or categories of fees, costs, and expenses which are the subject of such objection.

| | | For the avoidance of doubt, all such fees and expenses described in the immediately preceding sentence shall be reimbursed without regard to the amounts set forth in the Approved Budget with respect thereto and shall constitute DIP Obligations. |
| --- | --- | --- |
| **29. DIP Milestones:** | | The DIP Orders shall provide that the Debtor will implement their Chapter 11 Cases in accordance with the milestones as reflected in <u>Exhibit C</u> attached hereto (the "<u>DIP Milestones</u>").<br><br>The Debtor may extend a DIP Milestone only with the express written consent of the DIP Lender. |
| **30. OTHER TERMS:** | | **Governing Law.**  State of New York, except as governed by the Bankruptcy Code.<br><br>**Stay Waiver.**  Any applicable stay (including under Bankruptcy Rule 6004) shall be waived and such waiver shall be immediately effective upon entry of the Interim Order.<br><br>**Other Customary Terms**.  Other terms and conditions customary for post-petition financing of this type.<br><br>**Binding.**  The terms of any Interim Order and Final Order shall be binding on the Debtor and any successors of any of the Debtor, including any chapter 7 or 11 trustee.<br><br>**Ordinary Course Sales of Inventory**. For the purposes of this Term Sheet and the Prepetition Loan Documents (as defined in the Interim Order), any reference to Debtor's sale of inventory in the ordinary course of business shall mean sales by the Debtor of inventory at a price no greater than a 20% discount on the established retail value of such inventory and made solely to retailers approved by the DIP Lender in writing.<br><br>**Amendment and Waiver.**   No waiver, modification or amendment of the terms of this Term Sheet shall be valid unless such waiver, modification or amendment is in writing and has been signed by the Debtor and the DIP Lender. |

[Signature page to follow]

**ACKNOWLEDGED AND AGREED**:


**DEBTOR**:

**PAT MCGRATH COSMETICS LLC**


By: /s/ Patricia McGrath
Name: Dame Patricia McGrath
Title: Founder


By: /s/ Patricia McGrath
Dame Patricia McGrath




**DIP LENDER**:

**GDA PMG FUNDING LLC**


By: /s/ Gabriel de Alba
Name: Gabriel de Alba
Title: Managing Member

## Exhibit B

### Representations and Warranties

The Debtor represents and warrants to DIP Lender that: (a) the undersigned signatory is duly authorized to request the DIP Loan and to bind Debtor to this Agreement. (b) Debtor is duly organized as a corporate or limited liability company, validly existing and in good standing under the laws of the State of New York and is fully authorized to enter into this Agreement and to perform Debtor's obligations hereunder, and this Agreement constitutes Debtor's legal, valid, and binding obligation; (c) all information provided by Debtor in connection with the DIP Loan, including all information related to Debtor's business, the DIP Collateral, financials, and any invoice(s), is true and correct, (d) to the best of Debtor's knowledge, there is no fact or circumstance that could adversely affect Debtor's business, assets or financial condition, Debtor's ability to perform Debtor's obligations under this Agreement, or the accuracy and completeness of Debtors representations and warranties, that has not been disclosed in writing, (e) subject to approval of the Bankruptcy Court, this Term Sheet and the performance of Debtor's obligations hereunder do not violate: (i) any applicable law, regulation, or order from any governmental agency; (ii) any charter, bylaws, or other organizational documents of the Debtor; or (iii) any indenture, agreement, or other instrument binding upon the Debtor, (f) Debtor has legal title to the DIP Collateral and is authorized to pledge the DIP Collateral to DIP Lender, (g) subject to approval of the Bankruptcy Court, all DIP Collateral is and will be free and clear of any and all liens, charges, attachments, or security interests, defenses, disputes, offsets, counterclaims, or rights of return or cancellation (except hereunder, and any other as disclosed to DIP Lender by Debtor prior to funding), (h) except as disclosed in writing to DIP Lender, Debtor has not transferred, assigned, pledged or granted a security interest, and there are no financing statements now or soon to be on file in any public office relating to any DIP Collateral in which Debtor is named or has signed as the debtor, and will not do so during the term of this Agreement without prior written consent from DIP Lender, (l) the goods and services Debtor has sold or subsequently sells complies and will comply with all applicable laws, regulations, contracts and commercial standards applicable thereto, (m) to the extent DIP Lender disburses funds directly to a creditor, unless otherwise disclosed to DIP Lender in writing, Debtor is not, has not been and will not be, subject to any dispute alleging fraudulent conduct on Debtor's part with creditor or any other third party; (n) to the extent DIP Lender disburses funds directly to a creditor, Debtor does not, and will not, dispute the validity of any invoice or any part of the balance of the invoice, and agrees that Debtor owes the creditor any related disbursement amount(s); and (p) other than the Case, there is no action, suit, proceeding or investigation pending or, to Debtor's knowledge, threatened against or affecting Debtor or Dame Patricia McGrath or any of Debtor's or Dame Patricia McGrath assets which, if determined adversely, could have a material adverse effect on Debtor's financial condition, business or Debtor's ability to perform Debtor's obligations under this Agreement. If any such action, suit, proceeding or investigation commences or is threatened, Debtor shall promptly, but no later than five (5) Business Days, notify DIP Lender in writing.

Each request by Debtor for an advance: (i) shall constitute an affirmation by Debtor that the foregoing representations and warranties remain true and correct as of the date of such request and, unless DIP Lender is notified to the contrary prior to the disbursement of the requested Advance, will be so on the date of such Advance, and (ii) shall constitute the representation and warranty of Debtor that the information set forth in each such request is true and correct and omits no material fact known to Debtor necessary to make the same not misleading, except as disclosed in Debtor's filings with the Bankruptcy Court.

**Exhibit C**

**DIP Milestones**

(a)     No later than two (2) business days following the hearing on February 13, 2026, the Bankruptcy Court shall have entered the Interim Order;

(b)     As soon as reasonably possible after entry of the Interim Order but not later than February 27, 2026, the Debtor shall have filed a plan of reorganization and a disclosure statement related thereto, together with a motion for conditional approval of the disclosure statement and a motion to approve the Plan of Reorganization, in form and substance acceptable to the DIP Lender in its sole and absolute discretion;

(c)     No later than March 13, 2026, the Bankruptcy Court shall have entered the Final Order;

(d)     On or before April 14, 2026, the Bankruptcy Court shall have entered the Confirmation Order approving the Plan of Reorganization, in form and substance acceptable to the DIP Lender in its sole and absolute discretion; and

(e)     On or before April 15, 2026, the Plan of Reorganization shall have been substantially consummated and become effective.