**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

PAT MCGRATH COSMETICS LLC,[1]

Debtor.

Chapter 11

Case No. 26-10772-LMI

**FIRST AMENDED**
**PLAN OF REORGANIZATION**
**OF PAT MCGRATH COSMETICS LLC**
**PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

# PACK LAW
4649 Ponce de Leon Blvd., Suite 405
Coral Gables, Florida 33146

Joseph A. Pack
Email: joe@packlaw.com
Florida Bar No. 117882
Robert G. Burns
Email: robert@packlaw.com
(*Admitted Pro Hac Vice*)
Jessey J. Krehl
Email: jessey@packlaw.com
Florida Bar No. 1025848

*Counsel to the Debtor and Debtor-in-Possession*

Dated: March 10, 2026

---

[1] The last four digits of Pat McGrath Cosmetics LLC's tax identification number are 3615 and its mailing address is 29 East 19th Street, 8th Floor, New York, NY 10003.

**TABLE OF CONTENTS**

**Page**

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF
TIME, GOVERNING LAW, AND OTHER REFERENCES...............................1

    A.    Defined Terms .................................................................................................. 1

    B.    Rules of Interpretation ................................................................................... 10

    C.    Computation of Time...................................................................................... 10

    D.    Governing Law ............................................................................................... 11

    E.    Reference to Monetary Figures........................................................................ 11

    F.    Reference to the Debtor or the Reorganized Debtor........................................ 11

    G.    Controlling Document .................................................................................... 11

ARTICLE II ADMINISTRATIVE PROFESSIONAL AND PRIORITY TAX CLAIMS ...........11

    A.    Administrative Expense Claims....................................................................... 11

    B.    Professional Claims ........................................................................................ 12

    C.    GDA DIP Claims ............................................................................................ 12

    D.    McGrath DIP Claims ...................................................................................... 13

    E.    Priority Tax Claims......................................................................................... 13

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .......13

    A.    Classification of Claims and Interests.............................................................. 13

    B.    Treatment of Claims and Interests .................................................................. 14

        1.    Class 1 – Other Secured Claims...............................................................14

        2.    Class 2 – Priority Non-Tax Claims...........................................................14

        3.    Class 3 – GDA Prepetition Claims ..........................................................15

        4.    Class 4 – Keyhaven Claims ....................................................................15

        5.    Class 5 – Merchant Cash Advance Claims ...............................................16

        6.    Class 6 – General Unsecured Claims........................................................16

        7.    Class 7 – Intercompany Claims ...............................................................16

        8.    Class 8 – Existing Equity Interests ..........................................................17

        9.    Class 9 – Section 510(b) Claims...............................................................17

    C.    Special Provision Governing Unimpaired Claims............................................. 17

    D.    Elimination of Vacant Classes ........................................................................ 18

    E.    Subordinated Claims....................................................................................... 18

ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN...........................................18

    A.    General Settlement of Claims and Interests...................................................... 18

    B.    Sources of Consideration for Plan Distributions .............................................. 18

    C.    Corporate Existence ....................................................................................... 19

D.  Vesting of Assets in the Reorganized Debtor ........................................................ 19

E.  Cancellation of Existing Indebtedness and Securities ......................................... 20

F.  Effectuating Documents; Further Transactions ................................................... 20

G.  Section 1146(a) Exemption.................................................................................. 20

H.  Managers and Officers......................................................................................... 21

I.  Employee and Retiree Benefits............................................................................ 21

J.  Preservation of Rights of Action......................................................................... 21

K.  Restructuring Transactions .................................................................................. 22

    1.  Establishment of the Liquidating Trust........................................................23

    2.  Issuance of the New Equity .........................................................................23

    3.  Power to Engage in the Restructuring Transaction......................................24

L.  The Liquidating Trust .......................................................................................... 24

    1.  Establishment of the Liquidating Trust........................................................24

    2.  Certain Tax Matters .....................................................................................25

    3.  The Liquidating Trust Assets.......................................................................25

    4.  The Liquidating Trust Beneficial Interests .................................................26

M.  Non-Reporting Company and Exemption from Registration Requirements ........ 26

N.  New Organizational Documents .......................................................................... 26

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ...........................................................................................................................27

A.  Assumption of Executory Contracts and Unexpired Leases................................ 27

B.  Indemnification .................................................................................................... 27

C.  Cure of Defaults and Objections to Cure and Assumption................................. 28

D.  Contracts and Leases Entered Into After the Petition Date ................................ 29

E.  Insurance Policies ................................................................................................ 29

F.  Compensation and Benefits ................................................................................. 29

G.  Nonoccurrence of Effective Date........................................................................ 29

H.  Reservation of Rights........................................................................................... 30

ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS....................................................30

A.  Distributions on Account of Claims and Interests Allowed as of the Effective
Date ...................................................................................................................... 30

B.  Rights and Powers of Distribution Agent ............................................................ 30

    1.  Powers of the Distribution Agent ................................................................30

    2.  Expenses Incurred On or After the Effective Date .....................................30

C.  Special Rules for Distributions to Holders of Disputed Claims and Interests ...... 31

D.  Delivery of Distributions ..................................................................................... 31

    1.  Record Date for Distributions to Holders of Non-Publicly Traded
Securities......................................................................................................31

|     | 2. | Distribution Process | 31 |
|     | 3. | Compliance Matters | 32 |
|     | 4. | Undeliverable and Unclaimed Distributions | 32 |
| E. |     | Claims Paid or Payable by Third Parties | 33 |
|     | 1. | Claims Paid by Third Parties | 33 |
|     | 2. | Claims Payable by Insurance Carriers | 33 |
|     | 3. | Applicability of Insurance Policies | 33 |
| F. |     | Setoffs | 34 |
| G. |     | Allocation Between Principal and Accrued Interest | 34 |

**ARTICLE VII PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS** ... 34

| A. | Disputed Claims Process | 34 |
| B. | Claims Administration Responsibilities | 34 |
| C. | Adjustment to Claims Without Objection | 35 |
| D. | Single Satisfaction of Claims | 35 |
| E. | Offer of Judgment | **Error! Bookmark not defined.** |
| F. | Amendments to Claims or Interests | 35 |
| G. | Interest | 35 |
| H. | Disallowance of Claims and Interests | 35 |

**ARTICLE VIII SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ... 36

| A. | Discharge of Claims and Termination of Interests | 36 |
| B. | Releases by the Debtor | 36 |
| C. | Releases by Holders of Claims and Interests | 37 |
| D. | Injunction | 37 |
| E. | Exculpation | 38 |
| F. | Protection Against Discriminatory Treatment | 38 |
| G. | Recoupment | 39 |
| H. | Document Retention | 39 |
| I. | Reimbursement or Contribution | 39 |
| J. | Release of Liens | 39 |

**ARTICLE IX CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE** ... 39

| A. | Conditions Precedent to the Effective Date | 39 |
| B. | Waiver of Conditions Precedent | 41 |
| C. | Effect of Non-Occurrence of Conditions to Consummation | 41 |
| D. | Substantial Consummation of the Plan | 41 |

**ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ... 42

A. Modification of Plan ................................................................................................. 42

B. Other Amendments .................................................................................................. 42

C. Effect of Confirmation on Modifications ............................................................... 42

D. Revocation or Withdrawal of Plan.......................................................................... 42

ARTICLE XI RETENTION OF JURISDICTION ......................................................................42

ARTICLE XII MISCELLANEOUS PROVISIONS ...................................................................44

A. Immediate Binding Effect........................................................................................ 44

B. Additional Documents ............................................................................................. 44

C. Payment of Statutory Fees ...................................................................................... 45

D. Reservation of Rights............................................................................................... 45

E. Successors and Assigns............................................................................................ 45

F. Service of Documents .............................................................................................. 45

G. Term of Injunctions or Stays................................................................................... 46

H. Entire Agreement ..................................................................................................... 46

I. Governing Law ......................................................................................................... 46

J. Time .......................................................................................................................... 47

K. Section 1125(e) Good Faith Compliance................................................................ 47

L. Plan Supplement Exhibits ....................................................................................... 47

M. Non-Severability ...................................................................................................... 47

N. Closing of Chapter 11 Case ..................................................................................... 47

O. Waiver or Estoppel .................................................................................................. 47

**Introduction**

Pat McGrath Cosmetics LLC, as debtor and debtor in possession, proposes this plan of reorganization pursuant section 1121(a) of the Bankruptcy Code.  Capitalized terms used herein shall have the meanings set forth in Article I.A below.

The Plan proposes the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code.  The Debtor seeks to consummate the Restructuring Transactions (defined below) on the Effective Date of the Plan.  The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made herein to the Disclosure Statement for a discussion of the Debtor's history, business, property and operations, projections, risk factors, a summary and analysis of this Plan, the Restructuring Transactions, and certain related matters.

**ARTICLE I**
**DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME,**
**GOVERNING LAW, AND OTHER REFERENCES**

**A.      Defined Terms**

1.      "*Administrative Expense Claim*" means any claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(2) of the Bankruptcy Code, including the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Debtor's Estate and operating the Debtor's business, including wages, salaries, or commissions for services rendered after the Petition Date and through the Effective Date, claims under section 503(b)(9) of the Bankruptcy Code, reasonable and documented claims of Professionals approved for payment by the Debtor's Estate to the extent allowed under Sections 330 or 503 of the Bankruptcy Code, all fees and charges assessed against the Debtor's Estate under section 1930 of chapter 123 of title 28 of the United States Code, and all Claims that are entitled to be treated as Administrative Expense Claims and that are Allowed pursuant to a Final Order of the Bankruptcy Court subject to reasonableness.

2.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

3.      "*Allowed*" means, with reference to any Claim or Interest, a Claim or Interest (a) arising on or before the Effective Date as to which (i) no objection to allowance or priority, and no request for estimation or other challenge, including, pursuant to section 502 of the Bankruptcy Code or otherwise, has been interposed and not withdrawn before March 9, 2026, or (ii) any objection or dispute has been determined in favor of the holder of the Claim or Interest by a Final Order, (b) that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtor or the Reorganized Debtor, (c) as to which the liability of the Debtor or the Reorganized Debtor, as applicable, and the amount thereof is determined by a Final Order of a court of competent jurisdiction, or (d) expressly allowed hereunder; *provided*, that notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to (and shall not exceed) all limitations or maximum amounts permitted as set forth in the Bankruptcy Code, including sections 502, 503 or 510 of the Bankruptcy Code, to the extent applicable, and (y) the Reorganized Debtor shall retain all claims and defenses with respect

to all Allowed Claims, including, but not limited to, any Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan.

4.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

5.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Florida or such other court having jurisdiction over the Chapter 11 Case.

6.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated by the United States Supreme Court pursuant to 28 U.S.C. § 2075, as amended from time to time and as applicable to the Chapter 11 Case, and the general, local, and chamber rules of the Bankruptcy Court.

7.      "*Business Day*" means any day other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or day on which commercial banks in New York are required or authorized by law to remain closed.

8.      "*Cash*" means legal tender of the United States of America and equivalents thereof.

9.      "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise.  Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

10.     "*Chapter 11 Case*" means the Debtor's chapter 11 case filed in the Bankruptcy Court on the Petition Date.

11.     "*Claim*" means any "claim," as such term is defined in section 101(5) of the Bankruptcy Code, against the Debtor.

12.     "*Claim Register*" means the official register of Claims against the Debtor.

13.     "*Class*" means a category of holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

14.     "*Confirmation*" means the ruling by the Bankruptcy Court confirming the Plan or the entry of the Confirmation Order on the docket of the Chapter 11 Case.

15.    "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

16.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtor seek entry of the Confirmation Order, as such hearing may be continued from time to time.

17.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

18.    "*Consummation*" means the occurrence of the Effective Date after the satisfaction or waiver of the conditions precedent thereto as provided hereunder.

19.    "*Cure*" means a Claim (unless waived or modified by the applicable counterparty) for cure of a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor pursuant to section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code and subject to rights and remedies, including rights of setoff, counterclaim, or recoupment and claims for breaches of contract and/or duties imposed by law, as applicable.

20.    "*Debtor*" means the above-captioned debtor and debtor in possession.

21.    "*DIP Claims*" means the GDA DIP Claims and the McGrath DIP Claims.

22.    "*DIP Lender*" means GDA in its capacity as Holder of the GDA DIP Claims.

23.    "*DIP Motion*" means the *Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 362, 364, 503(b) and 507(a), Fed. R. Bankr. P. 2002, 4001, 6003 and 9014 and Rule 2002-1(a) and 4001-1 of the Local Bankruptcy Rules (I) Authorizing the Debtor to Obtain Post-Petition Secured Debtor-in-Possession Financing; (II) Granting Liens and Providing for Superpriority Administrative Expense Status; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* [Dkt. No. 72].

24.    "*DIP Orders*" means the Interim DIP Order, the Final DIP Order, and the McGrath DIP Orders.

25.    "*DIP Term Sheet*" means the term sheet attached as <u>Exhibit B</u> to the Interim DIP Order.

26.    "*Disclosure Statement*" means the disclosure statement filed in the Chapter 11 Case on the date of submission hereof.

27.    "*Disputed*" means, with respect to any Claim or Interest, a Claim or Interest that is not yet Allowed, including (a) any Proof of Claim that, on its face, is contingent or unliquidated; (b) any Proof of Claim or request for payment of an Administrative Expense Claim filed after the Effective Date or the deadline for filing Proofs of Claim based on the Debtor's rejection of Executory Contracts or Unexpired Leases, as applicable, and (c) any Claim that is subject to an

objection, dispute, or a motion to estimate, in each case that has not been withdrawn, resolved, or ruled on by a Final Order of the Bankruptcy Court.

28.    "*Distribution Agent*" means, as applicable, the Reorganized Debtor or any Entity the Reorganized Debtor select to make or to facilitate distributions in accordance with the Plan.

29.    "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtor or the Reorganized Debtor, on or after the Effective Date, upon which the Distribution Agent shall make distributions to holders of Allowed Claims and/or Interests entitled to receive distributions under the Plan.

30.    "*Distribution Record Date*" means the Confirmation Date.

31.    "*Effective Date*" means the date that is one Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in Article IX of the Plan have been satisfied or waived in accordance with Article IX of the Plan.

32.    "*Entity*" means any "entity," as such term is defined in section 101(15) of the Bankruptcy Code.

33.    "*Equity Interest*" means any Interest in the Debtor

34.    "*Equity Security*" has the meaning set forth in section 101(16) of the Bankruptcy Code.

35.    "*Estate*" means the estate of the Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

36.    "*Exculpated Parties*" means each of (a) the Debtor, (b) all professional Persons and Entities retained and employed pursuant to section 327 of the Bankruptcy Code in this Chapter 11 Case, (c) Gary Lembo and Paladin Management Group, LLC, (d) Gordian Group, LLC, and (e) GDA and its affiliates.

37.    "*Executory Contract*" means a contract or lease to which a Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

38.    "*Exit Facility*" or "*Exit Loan*" means the senior secured working capital financing facility from GDA or a third-party lender offering more favorable terms of up to $20 million, structured on market terms, including, but not limited to, a first lien security interest.

39.    "*Exit Facility Documents*" means any and all loan agreements, financing statements, security agreements, and other instruments of whatever kind or nature executed or delivered in connection with the Exit Facility.

40.    "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022 closing the Chapter 11 Case.

41.    "*Final DIP Order*" any Final Order granting the DIP Motion.

4

42. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

43. "*GDA*" means GDA PMG Funding LLC.

44. "*GDA DIP Claims*" means the Claim of GDA against the Debtor in connection with the DIP Obligations, as defined and set forth in the DIP Orders.

45. "*GDA Prepetition Claims*" means the Secured Claims of GDA as of the Petition Date, as set forth and modified by the DIP Orders, which claims, after giving effect to the roll-up of $10,000,000.00 of the GDA Prepetition Claims into a component of the GDA DIP Claims pursuant to the Interim DIP Order and Final DIP Order, totaled $27,425,180.94 as of the Petition Date exclusive of interest, costs and fees accruing from and after such date.

46. "*General Unsecured Claim*" means any Claim against the Debtor as of the Petition Date, other than an Administrative Expense Claim, a Priority Non-Tax Claim, a Priority Tax Claim, an Other Secured Claim, a GDA Prepetition Claim, a Keyhaven Claim, a Merchant Cash Advance Claim, an Intercompany Claim, and a Section 510(b) Claim.

47. "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

48. "*Impaired*" is used to describe a Claim or an Interest that is not Unimpaired.

49. "*Indemnification Provisions*" means the Reorganized Debtor's indemnification provisions contained in its or its holding company's New Equity Documents and/or New Organizational Documents.

50. "*Intercompany Claims*" means a Claim held by any Debtor against any subsidiary of the Debtor and any claim of any such subsidiary against the Debtor.

51. "*Interest*" means any common stock, limited liability company interest, Equity Security, equity, ownership, profit, interest, unit, or share in the Debtor, including all options, warrants, rights, or other securities or agreements to obtain such an interest or share in the Debtor), whether or not arising under or in connection with any employment agreement and whether or not certificated, transferrable, preferred, common, voting, or denominated "stock" or a similar security.

52. "*Interim DIP Order*" means the *Interim Order Pursuant to 11 U.S.C. §§ 105, 362, 364, 503(b) and 507(a), Fed. R. Bankr. P. 2002, 4001, 6003 and 9014 and Rule 2002-1(a) and 4001-1 of the Local Bankruptcy Rules (I) Authorizing the Debtor to Obtain Post-Petition Secured Debtor-in-Possession Financing; (II) Granting Liens and Providing for Superpriority*

5

*Administrative Expense Status; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* [Dkt. No. 83].

53.    "*Keyhaven*" means Keyhaven PMG Blocker, Inc.

54.    "*Keyhaven Claims*" means the Allowed Claims of Keyhaven.

55.    "*Liability Schedule*" is defined in Section IV.C hereof.

55.    "*Lien*" means a "lien" as such term is defined in section 101(37) of the Bankruptcy Code.

56.    "*Liquidating Trust*" means the trust established pursuant to Article IV.L of the Plan.

57.    "*Liquidating Trust Agreement*" means the Plan Transaction Document to be included in the Plan Supplement that establishes and governs the Liquidating Trust.

58.    "*Liquidating Trust Assets*" as defined in Article IV.L of the Plan.

59.    "*Liquidating Trustee*" means the trustee of the Liquidating Trust under the terms of the Liquidating Trust Agreement.

60.    "*New Common Equity*" means the means a single class of common equity interests in the Reorganized Debtor to be authorized, issued, or reserved on the Effective Date pursuant to the Plan, in accordance with the terms and conditions set forth in the Restructuring Term Sheet, and as provided in the Disclosure Statement.

61.    "*McGrath*" mean Dame Patricia McGrath.

62.    "*McGrath DIP Claims*" mean the Claim of McGrath against the Debtor in connection with the DIP Obligations, as defined and set forth in the McGrath DIP Orders.

63.    "*McGrath DIP Motion*" mean the *Debtor's Emergency Motion for Entry of an Order (I) Authorizing the Debtor to Obtain Post-Petition Financing Pursuant to Sections 105(a), 362, 364(c) of the Bankruptcy Code, and (II) Granting Super Priority Claims to the DIP Lender Pursuant to Section 364(c)(1) of the Bankruptcy Code* [Dkt. No. 4].

64.    "*McGrath DIP Orders*" mean (a) the *Interim Order Granting Debtor's Emergency Motion for Entry of an Order (I) Authorizing the Debtor to Obtain Postpetition Financing Pursuant to Sections 105(a), 362, 364(c) of the Bankruptcy Code, (II) Granting Super Priority Claims to the DIP Lender Pursuant to Section 364(c)(1) of the Bankruptcy Code, and (IV) Setting Final Hearing* [Dkt. No. 62]; and (b) any Final Order granting the McGrath DIP Motion.

65.    "*Merchant Cash Advance Claims*" mean the Claims against the Debtor of each of (a) 800 Funding LLC, (b) Amerifi Capital LLC, (c) E Advance Services LLC, (d) Parkview Advance LLC, and with respect to each of the foregoing (a) through (d), (e) any successor or assign thereof.

6

66.    *"MIP"* means the management incentive plan providing for the issuance of up to 10% of the New Common Equity to certain key employees of the Reorganized Debtor on terms and conditions to be determined by the Board of Directors of the Reorganized Debtor.

67.    "*New Equity*" or "*New Equity Interests*" means the New Preferred Equity and the New Common Equity.

68.    "*New Equity Documents*" or "*New Organizational Documents*" means, without limitation, any operating agreement, organizational documents, evidence of equity interests (including certificates or other mutually agreed evidence of equity interests to be issued on the Effective Date), or other governance documents for the Reorganized Debtor which any party receiving New Equity Interests under the Plan may reasonably request.  Substantially final forms of such documents shall be filed with the Bankruptcy Court as part of the Plan Supplement

69.    "*New Preferred Equity*" means the means the class or classes of preferred equity interests, with a three-times return, in the Reorganized Debtor to be authorized, issued, or reserved on the Effective Date pursuant to the Plan, in accordance with the terms and conditions set forth in the Restructuring Term Sheet, and as provided in the Disclosure Statement.

70.    "*Other Secured Claim*" means any Secured Claim other than a GDA Prepetition Claim or Keyhaven Claim.

71.    "*Petition Date*" means the date on which the Chapter 11 Case were commenced.

72.    "*Plan*" means this chapter 11 plan, including the Plan Supplement and all exhibits, supplements, appendices, and schedules, as applicable.

73.    "*Plan Supplement*" means the Plan Transaction Documents and any other documents to be filed, if at all, in a supplement to the Plan in advance of the Confirmation Hearing no later than such date as may be approved by the Bankruptcy Court on notice to parties in interest that includes the necessary documentation to effectuate the Plan. All Plan Supplement documents shall be subject to the approval of GDA.

74.    "*Plan Transaction Documents*" means all definitive documents and agreements to which the Debtor will be a party as contemplated by the Plan, including: (a) the Plan; (b) any documentation or agreements related to item (a) set forth above; (c) the Confirmation Order and pleadings in support of entry thereof; (d) any filings seeking to assume or to assume and assign any Executory Contract or Unexpired Lease; (e) any document filed by the Debtor to implement any of the foregoing and the Restructuring Transactions (including, but not limited to, the Exit Facility Documents, the Liquidating Trust Agreement, the New Equity Documents and the New Organizational Documents and the New Equity Documents, the Liability Schedule and a schedule of Retained Causes of Action); and (f) each other document that will comprise the Plan Supplement. The form and substance of each document comprising the Plan Transaction Documents shall be in form and substance acceptable to the Debtor and GDA.

75.    "*Priority Non-Tax Claim*" means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim or Priority Tax Claim.

76.    "*Priority Tax Claim*" means any Claim of a Governmental Unit entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

77.    "*Professional*" means any Entity: (a) employed in the Chapter 11 Case pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

78.    "*Professional Claim*" means any Claim by a Professional for Professional Fees.

79.    "*Professional Fees*" means the accrued, contingent, and/or unpaid compensation for services rendered (including hourly, transaction, and success fees), and reimbursement for expenses incurred, by Professionals, that: (a) are awardable and allowable pursuant to sections 327, 328, 329, 330, 331, 503(b), and/or 1103 of the Bankruptcy Code or otherwise rendered allowable prior to the Confirmation Date; (b) have not been denied by the Bankruptcy Court by Final Order; (c) have not been previously paid (regardless of whether a fee application has been filed for any such amount); and (d) remain outstanding after applying any retainer that has been provided to such Professional.

80.    "*Professional Fee Amount*" means the aggregate amount of Professional Claims and other unpaid fees and expenses Professionals estimate they have incurred as set forth in a final fee application filed in accordance with any deadline fixed by the Bankruptcy Court.

81.    "*Proof of Claim*" means a proof of Claim filed against a Debtor in the Chapter 11 Case.

82.    "*Reinstated*," or "*Reinstatement*" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the holder to demand or receive payment of such Claim prior to the stated maturity of such Claim from and after the occurrence of a default.

83.    "*Released Party*" means, collectively, each of the following in their respective capacities as such: (a) Pat McGrath and any persons or Entities retained pursuant to sections 327 and 363 of the Bankruptcy Code; and (b) with respect to each of the foregoing Persons and Entities in clause (a), such Person's or Entity's predecessors, successors and assigns, subsidiaries, Affiliates, and all of their respective current and former officers, managers, directors, principals, direct and indirect shareholders, direct and indirect members, advisors, consultants, and employees.  Notwithstanding anything contained herein or in Plan documents, the Released Parties shall not include any person or entity listed in the Schedule of Retained Causes of Action to be included in the Plan Supplement or any affiliate thereof.

84.    "*Releasing Party*" means, collectively, each of the following in their respective capacities as such: (a) the Debtor and the Reorganized Debtor; (b) with respect to each of the foregoing Entities in clause (a), such Entities' predecessors, successors and assigns, and all of their respective current and former officers, managers, directors, principals, direct and indirect members, employees, management companies, agents and other professionals, and such persons'

8

respective heirs, executors, estates, servants and nominees; (c) each Holder of a Claim entitled to vote on the Plan that votes to accept the Plan; (d) each Holder of an Interest, whether or not entitled to vote on the Plan, who does not affirmatively opt out of the releases provided by the Plan on the applicable opt-out form provided to such Holder; and (e) without limiting the foregoing, each Holder of a Claim or Interest who is entitled to vote on the Plan and abstains from voting on the Plan or votes to reject the Plan (or is deemed to pursuant to the terms hereof) and who does not affirmatively opt out of the releases provided by the Plan on the applicable Ballot indicating that they opt not to grant the releases provided in the Plan.

85.     "*Reorganized Debtor*" means the Debtor, or any successor or assigns thereto, by merger, consolidation, or otherwise, on or after the Effective Date, including any transferee, assign, or successor of the Reorganized Debtor created to issue the New Equity as determined by the Debtor prior to the Effective Date.

86.     "*Restructuring Term Sheet*" means the *Restructuring Term Sheet* attached as Exhibit A to the DIP Term Sheet and Exhibit C to the Disclosure Statement.

87.     "*Restructuring Transaction*" means any transaction and any actions as may be necessary or appropriate to effect a restructuring of the Debtor's and the Reorganized Debtor's respective businesses or their corporate and capital structure on the terms set forth in this Plan and the Restructuring Term Sheet or which GDA and the Debtor otherwise deem necessary or appropriate.

88.     *"Retained Causes of Action"* shall have the meaning set forth in Section IV.J hereof.

89.     "*Section 510(b) Claim*" means any Claim subject to subordination arising from: (a) rescission of a purchase or sale of a security of the Debtor or an Affiliate of the Debtor; (b) purchase or sale of such a security; or (c) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

90.     "*Secured Claim*" means any Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order to the extent of the value of the creditor's interest in the Estate's interest in such property as determined pursuant to section 506(a) of the Bankruptcy Code, or (b) subject to setoff pursuant to section 553 of the Bankruptcy Code to the extent of the amount subject to setoff.

91.     "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, or any similar federal, state, or local law.

92.     "*Security*" has the meaning set forth in section 2(a)(1) of the Securities Act.

93.     "*Unclaimed Distribution*" means any distribution under the Plan on account of an Allowed Claim or Allowed Interest to a holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Reorganized Debtor of an intent to accept a particular distribution; (c) responded to the Debtor's

9

or Reorganized Debtor's requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

94.    "*Unimpaired*" is used to describe a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

## B.    Rules of Interpretation

For purposes of the Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (i) references to docket numbers of documents filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (j) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (k) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (l) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" and (m) any immaterial effectuating provisions may be interpreted by the Debtor or the Reorganized Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

## C.    Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may or shall occur pursuant to the Plan is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

**D.      Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Florida, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate governance matters relating to the Debtor or the Reorganized Debtor, as applicable, shall be governed by the laws of the state of incorporation or formation of the Debtor or Reorganized Debtor, as applicable.

**E.      Reference to Monetary Figures**

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

**F.      Reference to the Debtor or the Reorganized Debtor**

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtor or to the Reorganized Debtor mean the Debtor and the Reorganized Debtor, as applicable, to the extent the context requires.

**G.      Controlling Document**

In the event of an inconsistency between the Plan and the Confirmation Order, the terms of the Confirmation Order shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the Plan shall control.

**ARTICLE II**
**ADMINISTRATIVE PROFESSIONAL AND PRIORITY TAX CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

**A.      Administrative Expense Claims**

On the Effective Date or as soon thereafter as such Allowed Administrative Expense Claims are Allowed and become due and payable according to their terms, unless otherwise agreed to by the holder of an Allowed Administrative Expense Claim and the Debtor or the Reorganized Debtor, as applicable, each holder of an Allowed Administrative Expense Claim (other than holders of Professional Claims, DIP Claims, and Priority Tax Claims) will receive in full and final satisfaction, settlement, release, and discharge of, and, in exchange for, such holder's Administrative Expense Claim (i) an amount of Cash equal to the unpaid amount of such Allowed Administrative Expense Claim, or (ii) receive treatment as is consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

11

**B.     Professional Claims**

All Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b), or section 1103 of the Bankruptcy Code for services rendered before the Effective Date (including any compensation requested by any Professional or any other Entity for making a substantial contribution in the Chapter 11 Case) shall file and serve final requests for payment of Professional Claims no later than the date that is fixed by the Bankruptcy Court, before the date of the Confirmation Hearing, for the filing of such final requests for payment.  Each such final request for payment shall include an estimate of anticipated Professional Fee Claims through and included the Effective Date.  Objections to any Professional Claim must be filed and served on the Debtor and the applicable Professional before the day that is 2 Business Days before the Confirmation Hearing.  The unpaid amount of any Professional fee claims shall be paid promptly after the Court enters an order approving a final fee application in respect to such claims; provided, however, that the aggregate amount paid to any such Professional shall not exceed the total amount of fees listed for such Professional in the DIP Orders.

From and after the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**C.     GDA DIP Claims**

The Debtor estimates that, as of the Plan Effective Date and after giving effect to the $10,000,000.00 DIP Roll-Up (as defined in the DIP Orders), the outstanding amount of the GDA DIP Claims shall total approximately $20,000,000.00 in principal exclusive of interest, fees, and expenses.  Holders of GDA DIP Claims are not entitled to vote on the Plan on account of the GDA DIP Claims; *provided, however*, that shall be without prejudice to the rights of GDA to vote with respect to its GDA Prepetition Claim.  Pursuant to the Plan and the Restructuring Term Sheet, on the Plan Effective Date or as soon as practicable thereafter, in full and final satisfaction of all DIP Obligations (as defined under the DIP Term Sheet) and the GDA Prepetition Senior Secured Claim, GDA shall receive:

- New Preferred Equity in an amount equal to the unpaid principal, interest, fees and expenses of the DIP Obligations and the GDA Prepetition Claims (including, for the avoidance of doubt, prepetition and postpetition interest, fees and expenses accrued thereon);

- New Common Equity equal to 65% of all issued New Common Equity on a fully diluted basis (i.e., assuming full issuance of the MIP and the other issuances of New Common Equity contemplated by the Restructuring Term Sheet and the Plan); and

- All Class A Beneficial Interests in the Liquidating Trust.

12

**D.      McGrath DIP Claims**

On the Effective Date or as soon as practicable thereafter, in full and final satisfaction of all obligations owed to McGrath on account of the McGrath DIP Claims, as set forth in the McGrath DIP Motion and McGrath DIP Order, McGrath shall receive New Preferred Equity in an amount equal to the unpaid principal and accrued interest of the McGrath DIP Claims.

**E.      Priority Tax Claims**

On the Effective Date, except to the extent that a holder of an Allowed Priority Tax Claim and the Debtor or the Reorganized Debtor, as applicable, agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall receive Class B Beneficial Interests in the Liquidating Trust entitling it to receive payment in full as a first priority distribution from the 20% of the Net Proceeds (as defined in Section IV.L(3) below) of Liquidating Trust Assets allocated to Class B and Class C Beneficial Interests, pro rata with any other Allowed Priority Tax Claims and Allowed Non-Tax Priority Claims, but senior to any distribution on the Class C Beneficial Interests, or such other treatment as may be consistent with Bankruptcy Code Section 1129(a)(9) or consented to by such holder and the Reorganized Debtor.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**A.      Classification of Claims and Interests**

Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

Below is a chart assigning each Class a number for purposes of identifying each separate Class.

| Class | Designation | Impairment Status | Entitled to Vote |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | No (Deemed to Accept) |
| 2 | Priority Non-Tax Claims | Unimpaired | No (Deemed to Accept) |
| 3 | GDA Prepetition Claims | Impaired | Yes |
| 4 | Keyhaven Claims | Impaired | Yes |
| 5 | Merchant Cash Advance Claims | Impaired | Yes |
| 6 | General Unsecured Claims | Impaired | Yes |
| 7 | Intercompany Claims | Impaired | No (Deemed to Reject) |
| 8 | Existing Equity Interests | Impaired | No (Deemed to Reject) |
| 9 | Section 510(b) Claims | Impaired | No (Deemed to Reject) |

13

**B.**     **Treatment of Claims and Interests**

Each holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by: (a) the Debtor; and (b) the holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1.     Class 1 – Other Secured Claims

   a.     *Classification*: Class 1 consists of any Other Secured Claims against the Debtor.

   b.     *Treatment*: Each holder of an Allowed Other Secured Claim, as determined by the Debtor or the Reorganized Debtor, as applicable, shall receive:

   (i)     Reinstatement of its Allowed Other Secured Claim;

   (ii)    payment in full in Cash in an amount equal to its Allowed Other Secured Claim, including postpetition interest, if any, on such Allowed Other Secured Claim required to be paid pursuant to section 506 of the Bankruptcy Code, as determined by a Final Order of the Bankruptcy Court;

   (iii)   the collateral securing its Allowed Other Secured Claim free and clear of Liens, claims, and encumbrances, if and only if such collateral, as of the day prior to the Effective Date, was property of the Estate; or

   (iv)    such other treatment agreed to by the holder of such Allowed Other Secured Claim and the Debtor or the Reorganized Debtor.

   c.     *Voting*: Class 1 is Unimpaired under the Plan.  Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan.

2.     Class 2 – Priority Non-Tax Claims

   a.     *Classification*: Class 2 consists of any Priority Non-Tax Claims against the Debtor.

   b.     *Treatment*: Each Holder of an Allowed Priority Non-Tax Claim, as determined by the Debtor or the Reorganized Debtor, as applicable, shall receive:

(i)      Reinstatement of its Allowed Priority Non-Tax Claim;

(ii)     Payment in full as a first priority from the Liquidating Trust Assets through its Class B Beneficial Interests in the Liquidating Trust, pro rata with any Allowed Priority Tax Claims, or such other treatment as may be consistent with the Bankruptcy Code; or

(iii)    such other treatment on account of such Allowed Priority Non-Tax Claim as determined by the Debtor or the Reorganized Debtor, as applicable, as agreed to in writing by such holder of such Allowed Priority Non-Tax Claim.

c.    *Voting*: Class 2 is Unimpaired under the Plan.  Holders of Allowed Priority Non-Tax Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan.

3.    Class 3 – GDA Prepetition Claims

a.    *Classification*: Class 3 consists of the Allowed GDA Prepetition Claims against the Debtor.

b.    *Treatment*: On the Plan Effective Date or as soon as practicable thereafter, in full and final satisfaction of all DIP Obligations (as defined under the DIP Term Sheet) and the GDA Prepetition Senior Secured Claim, GDA shall receive:

- New Preferred Equity in an amount equal to the unpaid principal, interest, fees and expenses of the DIP Obligations and the GDA Prepetition Claims (including, for the avoidance of doubt, prepetition and postpetition interest, fees and expenses accrued thereon);

- New Common Equity equal to 65% of all issued New Common Equity on a fully diluted basis (i.e., assuming full issuance of the MIP and the other issuances of New Common Equity contemplated by this Restructuring Term Sheet); and

- All Class A Beneficial Interests in the Liquidating Trust.

c.    *Voting*: Class 3 is Impaired under the Plan.  GDA, as Holder of the Allowed GDA Prepetition Claims, is entitled to vote to accept or reject the Plan.

4.    Class 4 – Keyhaven Claims

a.    *Classification*: Class 4 consists of the Allowed Keyhaven Claims against the Debtor.

15

b. *Treatment*: Each Holder of an Allowed Keyhaven Claim shall receive, in full and final satisfaction of all such Allowed Keyhaven Claims, its pro rata share of New Preferred Equity in the amount of $500,000.00.

c. *Voting*: Class 4 is Impaired under the Plan. Holders of Allowed Keyhaven Claims are entitled to vote to accept or reject the Plan.

5. Class 5 – Merchant Cash Advance Claims

a. *Classification*: Class 5 consists of the Merchant Cash Advance Claims against the Debtor, comprised of the E Advance Services Claims, Parkview Claims, Amerifi Claims, and 800 Funding Claims.

b. *Treatment*: On the Effective Date or as soon as practicable thereafter, each Holder of an Allowed Merchant Cash Advance Claim shall receive Cash in an amount equal to 1% of its Allowed Merchant Cash Claim; *provided, however,* that if the aggregate amount of Allowed Merchant Cash Advance Claims exceed $3,700,000.00, each Holder of an Allowed Merchant Cash Advance Claim shall have its Distribution reduced Pro Rata such that the total Distribution to Holders of Allowed Merchant Cash Advance Claims shall not exceed $37,000.00 in the aggregate.

c. *Voting*: Class 5 is Impaired under the Plan. Holders of Allowed Merchant Cash Advance Claims are entitled to vote to accept or reject the Plan.

6. Class 6 – General Unsecured Claims

a. *Classification*: Class 6 consists of the Allowed General Unsecured Claims against the Debtor.

b. *Treatment*: On the Effective Date, or as soon as practicable thereafter, each Holder of an Allowed General Unsecured Claim (other than a Critical Vendor Claim) shall receive its pro rata share of Class C Beneficial Interests in the Liquidating Trust, which interests shall be junior in payment priority to the rights of any Holder of an Allowed Priority Tax Claim and Allowed Priority Non-Tax Claim to receive distributions from the Liquidating Trust Assets up to the full amount of their allowed claim unless the Holder of such Allowed General Unsecured Claim and the Reorganized Debtor mutually agree to alternative treatment.

c. *Voting*: Class 6 is Impaired under the Plan. Each Holder of an Allowed General Unsecured Claims is entitled to vote to accept or reject the Plan.

7. Class 7 – Intercompany Claims

a. *Classification*: Class 7 consists of all Intercompany Claims.

16

b.    *Treatment*: At the option of the Reorganized Debtor, Class 7 Intercompany Claims will either be (a) Reinstated, or (b) canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each Holder of a Class 7 Intercompany Claim will not receive any distribution on account of such Class 7 Intercompany Claim.

c.    *Voting*: Class 7 is Impaired. Each Holder of a Class 8 Intercompany Claim is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan.

8.    Class 8 – Existing Equity Interests

a.    *Classification*: Class 8 consists of all Interests in the Debtor.

b.    *Treatment*: All Class 8 Existing Equity Interests will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each Holder of a Class 8 Existing Equity Interest will not receive any distribution on account of such Class 8 Existing Equity Interest. Notwithstanding the foregoing, GDA has agreed in its sole and exclusive discretion to provide from its New Common Equity, in the aggregate, a gift of 5% of the New Common Equity to the Holders of Class 8 Existing Equity, which New Common Equity shall be distributed as determined by the Reorganized Debtor in consultation with GDA.

c.    *Voting*: Class 8 is Impaired. Each Holder of a Class 8 Existing Equity Interest is entitled to vote to accept or reject the Plan.

9.    Class 9 – Section 510(b) Claims

a.    *Classification*: Class 9 consists of any Section 510(b) Claims against the Debtor.

b.    *Treatment*: Each Allowed Section 510(b) Claim shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each Holder of a Class 9 Claim will not receive any distribution on account of such Class 9 Claim.  The Debtor is not aware of any valid Section 510(b) Claims and believe that no such Section 510(b) Claims exist.

c.    *Voting*: Class 9 is Impaired. Each Holder of a Class 9 Section 510(b) Claim is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan.

**C.    Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, and with respect to the Claims of GDA and the terms of the DIP Orders, the DIP Term Sheet, and the Restructuring Term Sheet, nothing under

17

the Plan shall affect the Debtor's or the Reorganized Debtor's rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

**D.      Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of determining acceptance of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**E.      Subordinated Claims**

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtor reserves the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.      General Settlement of Claims and Interests**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and is within the range of reasonableness. Subject to Article VI of the Plan, all distributions made to holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

**B.      Sources of Consideration for Plan Distributions**

As further described in Section IV.L below, the Restructuring Transactions under the Plan contemplate, among other things, (i) the issuance of the New Preferred Equity and the New Common  Equity by the Reorganized Debtor; (ii) the provision of the Exit Loan; (iii) the transfer of the Liquidating Trust Assets to the Liquidating Trust;(iv) the New Equity Documents and the New Organizational Documents and (v) the execution and delivery of such other documents and instruments and the taking of such other actions as are contemplated by the Restructuring Term Sheet or which GDA and the Debtor may determine to be necessary or appropriate  . The

Reorganized Debtor shall issue the New Preferred Equity and the New Common Equity to the parties entitled to receive them under the Plan on or before the Plan Effective Date and shall also cause the Liquidating Trust Assets to be vested in the Liquidating Trust on or before such date.

Cash distributions under the Plan shall be made pursuant to the Exit Loan and, as applicable, Cash generated by the Reorganized Debtor in the ordinary course of its reorganized business.

(a)    The Debtor shall fund cash distributions under this Plan with: (1) Cash on hand, including Cash from operations; and (2) the proceeds of the Exit Loan. Cash payments to be made pursuant to this Plan will be made by the Debtor or the Reorganized Debtor.

(b)    From and after the Effective Date, subject to any applicable limitations set forth in any post-Effective Date agreement (including, without limitation, the Exit Facility Documents and the New Organizational Documents), the Reorganized Debtor shall have the right and authority without further order of the Bankruptcy Court to raise additional capital and obtain additional financing as the Reorganized Debtor's board (or other applicable governing body) deems appropriate.

## C.    Corporate Existence

Except as otherwise provided in the Plan (including, for the avoidance of doubt, the Restructuring Transactions), the Debtor shall continue to exist after the Effective Date as a separate legal entity from the Reorganized Debtor, with all the powers of such entity, pursuant to the applicable law in the jurisdiction in which the Debtor was already incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other formation documents) in effect prior to the Effective Date. For the avoidance of doubt, the Reorganized Debtor shall not be deemed to be a successor to the Debtor or its alter ego or to have liability for any known or unknown Claims against the Debtor except as expressly provided in this Plan or the Confirmation Order. GDA may require that the Confirmation Order include a schedule of any and all Claims and/or other liabilities (the "Liability Schedule").

## D.    Vesting of Assets in the Reorganized Debtor

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan (including the Plan Supplement) or the Confirmation Order, on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property (including all interests, rights, and privileges related thereto) in the Debtor's Estate, all Retained Causes of Action, and any property acquired by any of the Debtor pursuant to the Plan, including Interests held by the Debtor in any non-Debtor Affiliates, shall vest in the Reorganized Debtor or the Liquidating Trust as provided hereunder, free and clear of all Liens, Claims, charges, encumbrances, or other interests, unless expressly provided otherwise by the Plan or the Confirmation Order, subject to and in accordance with the Plan. **In order to effectuate the vesting of all of the assets and property in the Debtor's Estate in the Reorganized Debtor and the Liquidating Trust free and clear of all Liens, Claims, charges, encumbrances, or other interests, the Plan shall be deemed to constitute a sale and transfer of such assets to the Reorganized Debtor or the Liquidating Trust as provided hereunder pursuant to**

19

**Bankruptcy Code Section 363(b) and (f) in exchange for GDA's and the other creditors and holders of Equity Interests agreement to compromise and exchange their Claims and Interests for the consideration they will receive under the Plan. On and after the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.**

### E.    Cancellation of Existing Indebtedness and Securities

Except as otherwise expressly provided in the Plan, the Confirmation Order, or agreement, instrument, or other document entered into in connection with or pursuant to the Plan, on the Effective Date, (1) all notes, bonds, indentures, certificates, securities, shares, equity securities, purchase rights, options, warrants, convertible securities or instruments, credit agreements, collateral agreements, subordination agreements, intercreditor agreements, or other instruments or documents directly or indirectly evidencing, creating, or relating to any indebtedness or obligations of, or ownership interest in, the Debtor, or giving rise to any Claims against or Interests in the Debtor or to any rights or obligations relating to any Claims against or Interests in the Debtor (except with respect to such agreements, certificates, notes, or other instruments or documents evidencing indebtedness or obligation of, or ownership interest in, the Debtor that is specifically reinstated, amended and restated, or entered into pursuant to the Plan), including, without limitation, the various prepetition documents in connection with or related to the GDA Prepetition Claims, the Keyhaven Claims, and the Merchant Cash Advance Claims, shall be canceled without any need for a holder of any such claim or interest or the Debtor to take any further action with respect thereto, and the duties and obligations of all parties thereto, including the Debtor or the Reorganized Debtor, as applicable, shall be deemed satisfied in full, canceled, released, discharged, and of no further force or effect.

### F.    Effectuating Documents; Further Transactions

On and after the Effective Date, the Reorganized Debtor, and the officers and members of the boards of directors and/or managers thereof, as applicable, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and to consummate the Restructuring Transactions, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

### G.    Section 1146(a) Exemption

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from the Debtor to the Reorganized Debtor or to any other person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, Equity Security, or other Interest in the Debtor or the Reorganized Debtor; (b) the Restructuring Transaction; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional

20

indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## H.    Managers and Officers

The managers and officers of the Reorganized Debtor shall be set forth in the Plan Supplement(s).  In accordance with section 1129(a)(5) of the Bankruptcy Code, any person proposed to serve as an officer of the Reorganized Debtor shall be disclosed at or before the Confirmation Hearing.

## I.    Employee and Retiree Benefits

Except as otherwise provided herein, on and after the Effective Date, and, without limiting any authority provided to the Reorganized Debtor under the Debtor's formation and constituent documents, the Reorganized Debtor, in its discretion, may: (a) amend, adopt, assume, and/or honor in the ordinary course of business, any and all contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for, among other things, compensation, employment, severance and bonuses, including any incentive plans (including any assumed incentive plans) and contracts, health care benefits, disability benefits, deferred compensation benefits, savings, severance benefits, bonuses, severance, retirement benefits, welfare benefits, workers' compensation insurance, and accidental death and dismemberment insurance for the directors, officers, and employees of the Debtor who served in such capacity prior to or after the Effective Date.

## J.    Preservation of Rights of Action

In accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Trust shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, and the Liquidating Trust's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the following: (a) the Causes of Action released by the Debtor pursuant to the releases and exculpations contained in the Plan, which shall be deemed released and waived by

21

the Debtor and Reorganized Debtor as of the Effective Date (but not before), except for Causes of Action brought as counterclaims or defenses to claims asserted against the Reorganized Debtor and its Affiliates; ; and (b) all Causes of Action released, waived or deemed satisfied pursuant to the DIP Orders (the "Retained Causes of Action").

The Liquidating Trust may pursue the Retained Causes of Action, as appropriate, in accordance with the best interests of the Liquidating Trust as determined by the Liquidating Trustee, in consultation and with the consent of GDA. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Liquidating Trust will not pursue any and all available Causes of Action against it. The Debtor expressly reserves all rights to vest any and all Retained Causes of Action in Liquidation Trust and to have the Liquidating Trust prosecute any and all Retained Causes of Action against any Entity, except as otherwise expressly provided herein.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, the DIP Orders, or by a Bankruptcy Court order, the Debtor expressly reserves all Causes of Action, for later adjudication by the Liquidating Trust, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Liquidating Trust reserves and shall retain the Retained Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Case or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Retained Causes of Action that the Debtor may hold against any Entity shall vest in the Liquidating Trust. The Liquidating Trust shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Retained Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

The Liquidating Trust expressly reserves all rights to prosecute any and all Retained Causes of Action against any Entity, in consultation and with the consent of GDA. The Liquidating Trust may pursue such Retained Causes of Action, as it deems appropriate, in accordance with the best interests of the Liquidating Trust, in its discretion as determined by the Liquidating Trustee in consultation and with the consent of GDA. For the avoidance of doubt, notwithstanding that the Liquidating Trust Assets shall include the Retained Causes of Action, the Liquidating Trust shall be required to obtain the consent of GDA, as majority Holder of the New Equity, before it initiates, files, prosecutes, enforces, abandons, settles, compromises, releases, withdraws, otherwise liquidates, or litigates to judgment any such Retained Causes of Action or to decline to do any of the foregoing without the consent or approval of any other party or further notice to or action, order, or approval of the Bankruptcy Court.

K.    **Restructuring Transactions**

On or before the Effective Date, the Debtor or the Reorganized Debtor, shall consummate the Restructuring Transactions and shall enter into and shall take any actions as may be necessary

22

or appropriate to effect the Restructuring Transactions which GDA and the Debtor determine are necessary or desirable to effect the Plan which Restructuring Transactions may include, without limitation, (i) the amendment and restatement of the Debtor's Limited Liability Agreement and other corporate documents pursuant to the New Equity Documents and the New Organizational Documents; (ii) the formation of a new holding company for the Debtor; (iii) the issuance of the New Preferred Equity and New Common Equity as contemplated by the Plan, (iv) the entry into the Exit Loan and the execution and delivery of the Exit Loan Documents,; (v) the adoption of a MIP by the board of the Reorganized Debtor reserving up to 10% of the New Common Equity for issuance to key employees, the terms of which plan shall be determined by the board of the Reorganized Debtor; (vi) the entry into an amended or new employment agreement between the Reorganized Debtor and Pat McGrath; and (vii) the execution and delivery of any other instruments, agreements or documents which they may deem necessary or desirable.   The Confirmation Order shall authorize and approve all of the foregoing actions and the Restructuring Transactions and any other actions which may be necessary or appropriate to effectuate the transactions contemplated by the Plan.  The Plan Supplement shall include proposed forms of any documents which GDA and the Debtor determine are necessary or appropriate to effect the Restructuring Transaction, consistent with the Restructuring Term Sheet. Restructuring Transactions may include the transfer of assets from Pat McGrath Ltd., Pat McGrath (Shanghai) Cosmetics Co., Ltd., or any other subsidiary or affiliate, to GDA or the Reorganized Debtor, in the discretion of GDA and the Debtor and the assignment and contribution to the Reorganized Debtor of the agreements related to the arrangements with the Streeters and all other similar existing arrangements and collaborations other than the agreement with LVMH. All of the documents, instruments and agreements shall be consistent with the Restructuring Term Sheet.

1. Establishment of the Liquidating Trust

On the Effective Date, as set forth herein, the Liquidating Trust shall be established in accordance with the terms of the Liquidating Trust Agreement and this Plan.

2. Issuance of the New Equity

On the Effective Date, or as soon as practicable thereafter, the Reorganized Debtor shall issue the New Equity in accordance with the provisions of the Plan. All Holders of New Preferred Equity and New Common Equity shall be deemed to be a party to, and bound by, the Limited Liability Company Agreement of the Reorganized Debtor or its holding company and the other applicable New Organizational Documents and New Equity Documents, in accordance with their terms, without the requirement to execute a signature page thereto.

All of the New Common Equity and New Preferred Equity issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.  Each distribution and issuance of New Common Equity and New Preferred Equity under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the New Organizational Documents and other instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance. For the avoidance of doubt, the acceptance of New Common Equity by any Holder of any Claim or Interest or any other Entity shall be deemed as such Holder's or Entity's agreement to the applicable New Organizational Documents and New Equity Documents,

23

as may be amended or modified from time to time following the Effective Date in accordance with their terms.

       3.      Power to Engage in the Restructuring Transaction

On or after the Confirmation Date, or as soon as reasonably practicable thereafter, the Debtor may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution or other certificates or documentation for other transactions as described in clause (a), pursuant to applicable state law; and (d) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Restructuring Transactions.

Each of the matters provided for by the Plan or corporate or related actions to be taken by or required of the Reorganized Debtor, whether taken prior to or as of the Effective Date, shall be deemed authorized and approved in all respects without the need for any further action and without any further action by the Debtor or the Reorganized Debtor, as applicable.  Such actions may include, among others, the following: (a) the adoption and filing of amended organizational documents, if any; (b) issuance of the New Equity Interests; and (c) the assumption of Executory Contracts or Unexpired Leases.

**L.     The Liquidating Trust**

       1.      Establishment of the Liquidating Trust

On the Effective Date, the Liquidating Trust shall be established.  The proposed form of the Liquidating Trust Agreement shall be included in the Plan Supplement.  The Liquidating Trust shall be established to liquidate the Liquidating Trust Assets and make distributions in accordance with the Plan, Confirmation Order, and  the Liquidating Trust Agreement, and in accordance with Treasury Regulations Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. The Liquidating Trust shall be structured to qualify as a "liquidating trust" within the meaning of Treasury Regulations section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, and thus, as a "grantor trust" within the meaning of Sections 671 through 679 of the Tax Code. Accordingly, the Liquidating Trust Beneficiaries shall be treated for U.S. federal income tax purposes (i) as direct recipients of undivided interests in the Liquidating Trust Assets (other than to the extent the Liquidating Trust Assets are allocable to Disputed Claims) and as having immediately contributed such assets to the Liquidating Trust, and (ii) thereafter, as the grantors and deemed owners of the Liquidating Trust and thus, the direct

owners of an undivided interest in the Liquidating Trust Assets (other than such Liquidating Trust Assets that are allocable to Disputed Claims). The identity of the Liquidating Trustee shall be included in the Plan Supplement. GDA has agreed to provide $50,000.00 per year to the Liquidating Trust for up to 3 years to fund expenses of such Liquidating Trust.

      2.      Certain Tax Matters

The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a). The Liquidating Trust's items of taxable income, gain, loss, deduction, and/or credit (other than such items is respect of any assets allocable to, or retained on account of, Disputed Claims) will be allocated to each holder by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all its assets (valued at their book value, and, if applicable, other than assets allocable to Disputed Claims) to the Liquidating Trust Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidating Trust Assets.

As soon as possible after the Effective Date, the Liquidating Trustee shall make a good faith valuation of the Liquidating Trust Assets and such valuation shall be used consistently by all parties for all U.S. federal income tax purposes.

The Liquidating Trustee may request an expedited determination of taxes under Section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the Liquidating Trust for all taxable periods through the dissolution thereof. Nothing in Article V.C of the Plan shall be deemed to expand or contract the jurisdiction of the Bankruptcy Court under section 505 of the Bankruptcy Code.

The Liquidating Trustee (1) may timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulations Section 1.468B-9, and (2) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes. If a "Disputed Ownership Fund" election is made, all parties (including the Liquidating Trustee and the holders of Liquidating Trust Beneficial Interests) shall report for U.S. federal, state, and local income tax purposes consistently with the foregoing.

The Liquidating Trustee shall file all income tax returns with respect to any income attributable to a "disputed ownership fund" and shall pay the U.S. federal, state, and local income taxes attributable to such disputed ownership fund based on the items of income, deduction, credit, or loss allocable thereto.

      3.      The Liquidating Trust Assets

The Liquidating Trust Assets which shall be vested in the Liquidating Trust on the Plan Effective Date shall consist of (i) $250,000.00 in cash which the Reorganized Debtor shall transfer to the Liquidating Trust on the Plan Effective Date; and (ii) the Retained Causes of Action.

4.    The Liquidating Trust Beneficial Interests

The Liquidating Trust Agreement shall provide for the issuance of Class A Beneficial Interests to GDA, Class B Beneficial Interests to the Holders of Allowed Priority Tax Claims and Priority Non-Tax Claims, and Class C Beneficial Interests to the holders of Allowed General Unsecured Claims.  Subject to the provisions hereof and of the Liquidating Trust Agreement, Class A Beneficial Interests shall be entitled to receive 80% of the "Net Proceeds" (as defined below) of any cash recoveries derived through the prosecution, settlement or other liquidation of the Retained Causes of Action, and Class B and Class C Beneficial Interests shall be entitled to receive the remaining 20% of such Net Proceeds.  "Net Proceeds" shall mean the amount of cash recovered through the prosecution, settlement or other liquidation of the Retained Causes of Action minus any fees, costs and expenses (including, but not limited to, attorney's fees) incurred by the Liquidating Trust and/or Reorganized Debtor in connection with the Retained Causes of Action. The Class B Beneficial Interests shall be senior in payment priority to the Class C Beneficial Interests, meaning that the holders of Class C Beneficial Interests shall not be entitled to receive a distribution from the Liquidating Trust Assets until all Allowed Priority Tax Claims and Priority Non-Tax Claims have been paid in full.

**M.    Non-Reporting Company and Exemption from Registration Requirements**

Following the Effective Date and in accordance with the Securities Act and any other applicable securities laws, the Reorganized Debtor shall be a non-SEC reporting company.

Pursuant to section 1145 of the Bankruptcy Code, the issuance of the New Equity, as contemplated by the Plan, is exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of Securities.  The New Equity issued by the Reorganized Debtor pursuant to section 1145 of the Bankruptcy Code (a) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) are freely tradable and transferable by any initial recipient thereof that (i) is not an "affiliate" of the Reorganized Debtor as defined in Rule 144(a)(1) under the Securities Act, (ii) has not been such an "affiliate" within ninety (90) calendar days of such transfer, (iii) has not acquired the Securities from an "affiliate" within one year of such transfer, and (iv) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

Any transfer agent shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether the New Equity is exempt from registration and/or eligible for book-entry delivery, settlement, and depository services.

Notwithstanding anything to the contrary in the Plan, no person may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the New Equity is exempt from registration and/or eligible for book-entry delivery, settlement, and depository services.

**N.    New Organizational Documents**

On or before the Effective Date, the Reorganized Debtor or its holding company and the Holders of the New Equity shall enter into the New Equity Documents and the New Organizational

Documents. The New Equity Documents and the New Organizational Documents shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each holder of the New Equity shall be bound thereby, in each case without the need for execution by any party thereto.

The Reorganized Debtor and its holding company shall enter into such agreements and amend their corporate governance documents to the extent necessary to implement the terms and provisions of the Plan. Pursuant to section 1123(a)(6) of the Bankruptcy Code, the organizational documents of the Reorganized Debtor or its holding company will prohibit the issuance of non-voting equity securities. After the Effective Date, the Reorganized Debtor or its holding company may amend and restate its organizational documents, and the Reorganized Debtor may file its certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the laws of the respective states, provinces, or countries of incorporation and the organizational documents of the Reorganized Debtor.

The New Equity Documents and the New Organizational Documents shall be part of the Plan Supplement(s).

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Assumption of Executory Contracts and Unexpired Leases

Each Executory Contract and Unexpired Lease that has otherwise not been assumed (by an exhibit to the Plan Supplement or by separate motion) shall be deemed rejected, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code. The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions and assignments.

Except as otherwise provided herein or agreed to by the Debtor and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

### B.    Indemnification

The New Organizational Documents and the New Equity Documents will provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to the Reorganized Debtor's directors, officers, employees, and agents to the fullest extent permitted by law and at least to the same extent as the organizational documents of the Debtor as in effect as of the Petition Date, against any claims or Causes of Action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and the Reorganized Debtor will not amend and/or restate its governance documents

27

before or after the Effective Date to terminate or adversely affect any of the Reorganized Debtor's obligations to provide such indemnification rights or its directors', managers', officers', employees', or agents' indemnification rights.

**C.      Cure of Defaults and Objections to Cure and Assumption**

The Debtor or the Reorganized Debtor, as applicable, shall pay Cures, if any, on the Effective Date or as soon as reasonably practicable thereafter.  Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the amounts paid or proposed to be paid by the Debtor or the Reorganized Debtor to a counterparty must be filed and served on the Reorganized Debtor on or before 30 days after the Effective Date.  If such Cure dispute is not resolved within 7 days of the Reorganized Debtor's receipt of such Cure dispute, the counterparty to the applicable assumed Executory Contract or Unexpired Lease shall timely file an objection with the Bankruptcy Court within 7 days.  **Any such request and/or objection that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Reorganized Debtor, without the need for any objection by the Reorganized Debtor or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.**  Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtor or the Reorganized Debtor of the Allowed Cure; *provided*, *however*, that nothing herein shall prevent the Reorganized Debtor from paying any Cure despite the failure of the relevant counterparty to file such request for payment of such Cure.  The Reorganized Debtor also may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court.  In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be filed with the Bankruptcy Court on or before 30 days after the Effective Date.  Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtor's or Reorganized Debtor's, as applicable, first scheduled omnibus hearing for which such objection is timely filed.  **Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.**

If there is any dispute regarding any Cure, the ability of the Reorganized Debtor to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtor or the Reorganized Debtor, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  **Any and all Proofs of Claim (but, for the avoidance of doubt, not including Cures) based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Case, including pursuant to the Confirmation Order, shall be deemed disallowed as of the Effective**

**Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.**

In no event shall any holder of Claims be entitled to set off any such Claim against any claim, right, or Cause of Action of the Debtor or Reorganized Debtor (as applicable), unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

**D.      Contracts and Leases Entered Into After the Petition Date**

Contracts and leases entered into after the Petition Date by the Debtor and any Executory Contracts and Unexpired Leases assumed by the Debtor may be performed by the Reorganized Debtor in the ordinary course of business.

**E.      Insurance Policies**

Each of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan.  Unless otherwise provided in the Plan, on the Effective Date, the Debtor shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims.

Without limitation of the generality of the foregoing, all insurance policies of the Debtor, including, but not limited to, director's and officer's liability policies, may in the sole discretion of GDA either be (i) assumed by the Reorganized Debtor on or before the Plan Effective Date, notwithstanding any limitations or prohibitions on such assignment in the applicable policy or (ii) replaced with new policies and rejected.

**F.      Compensation and Benefits**

The Reorganized Debtor may adopt employment and severance policies, workers' compensation programs, and all compensation and benefit plans, policies, and programs of the Debtor applicable to its employees, officers, and directors, including  health care plans, disability plans, severance benefit plans, and incentive plans; provided, however, that the Debtor's obligations under any  plans, policies, and programs, in effect prior to the Effective Date shall be deemed rejected pursuant to section 365(a) of the Bankruptcy Code unless, prior to the Effective Date, the Reorganized Debtor, with the consent of GDA, in its sole discretion, determines that any such obligation shall be assumed and survive Confirmation of the Plan, and not be discharged in accordance with section 1141 of the Bankruptcy Code.  Any defaults existing under any of such plans, policies, and programs shall be cured promptly after they become known by the Reorganized Debtor.

**G.      Nonoccurrence of Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired

Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

### H.    Reservation of Rights

Nothing contained in the Plan or the Plan Supplement(s) shall constitute an admission by the Debtor or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtor have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or the Reorganized Debtor, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

### ARTICLE VI
### PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Distributions on Account of Claims and Interests Allowed as of the Effective Date

Except as otherwise provided herein, or in a Final Order, or as otherwise agreed to by the Debtor or the Reorganized Debtor (as the case may be) and the holder of the applicable Claim or Interest, on the first Distribution Date, the Distribution Agent shall make initial distributions under the Plan on account of Claims and Interests Allowed as of the Distribution Record Date, subject to the Reorganized Debtor's right to object to Claims and Interests; *provided*, *however*, that (1) Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case or assumed by the Debtor prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (2) Allowed Priority Tax Claims shall be paid in accordance with Article II.E of the Plan.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtor and the holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

### B.    Rights and Powers of Distribution Agent

1.    Powers of the Distribution Agent

The Distribution Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

2.    Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Distribution Agent on or after the Effective Date (including taxes)

and any reasonable compensation and expense reimbursement claims made by the Distribution Agent shall be paid in Cash by the Reorganized Debtor.

## C.  Special Rules for Distributions to Holders of Disputed Claims and Interests

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties: (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim or Interest until all such disputes in connection with such Disputed Claim or Interest have been resolved by settlement or Final Order; and (b) any Entity that holds both an Allowed Claim or Interest and a Disputed Claim or Interest shall not receive any distribution on the Allowed Claim or Interest unless and until all objections to the Disputed Claim or Interest have been resolved by settlement or Final Order or the Claims or Interests have been Allowed or expunged.  Any dividends or other distributions arising from property distributed to holders of Allowed Claims or Interests, as applicable, in a Class and paid to such holders under the Plan shall also be paid, in the applicable amounts, to any holder of a Disputed Claim or Interest, as applicable, in such Class that becomes an Allowed Claim or Interest after the date or dates that such dividends or other distributions were earlier paid to holders of Allowed Claims or Interests in such Class.

## D.  Delivery of Distributions

### 1.  Record Date for Distributions to Holders of Non-Publicly Traded Securities

On the Distribution Record Date, the Claims Register shall be closed and the Distribution Agent shall be authorized and entitled to recognize only those record holders, if any, listed on the Claims Register as of the close of business on the Distribution Record Date.  Notwithstanding the foregoing, if a Claim or Interest is transferred and the Debtor has been notified in writing of such transfer less than 10 days before the Effective Date, the Distribution Agent shall make distributions to the transferee (rather than the transferor) only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

### 2.  Distribution Process

The Distribution Agent shall make or facilitate all distributions required under the Plan.  Except as otherwise provided herein, and notwithstanding any authority to the contrary, distributions to holders of Allowed Claims, including Claims that become Allowed after the Effective Date, shall be made to holders of record as of the Distribution Record Date by the Distribution Agent, as appropriate: (1) to the address of such holder as set forth in the books and records of the Debtor (or if the Debtor has been notified in writing, on or before the date that is ten (10) days before the Effective Date, of a change of address, to the changed address); (2) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, if no address exists in the Debtor's books and records, no Proof of Claim has been filed and the Distribution Agent has not received a written notice of a change of address on or before the date that is ten (10) days before the Effective Date; or (3) on any counsel that has appeared in the Chapter 11 Case on the holder's behalf.  The Debtor, the Reorganized Debtor, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan.

31

3.      Compliance Matters

In connection with the Plan, to the extent applicable, the Reorganized Debtor, the Distribution Agent, and any other distributing party shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtor, the Distribution Agent, and any other distributing party shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtor reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

In the case of any distribution that is subject to withholding, the distributing party may request a holder of an Allowed Claim to complete and return a Form W-8 or W-9, as applicable to each such holder, and any other applicable forms. The distributing party shall have the right not to make a distribution until its withholding obligation is satisfied pursuant to the preceding sentences. If an intended recipient of a non-Cash distribution is required to provide or has agreed to provide the withholding agent with the Cash necessary to satisfy the withholding tax pursuant to this section and such person fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to the Reorganized Debtor and any Claim in respect of such distribution shall be discharged and forever barred from assertion against the Reorganized Debtor or its property. Any amounts withheld pursuant to the Plan shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution.

4.      Undeliverable and Unclaimed Distributions

a.      *Undeliverable Distributions*. If any distribution to a holder of an Allowed Claim or Interest is returned to the Distribution Agent as undeliverable, no further distributions shall be made to such holder unless and until the Distribution Agent is notified in writing of such holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such holder on the next Distribution Date.   Undeliverable distributions shall remain in the possession of the Reorganized Debtor until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtor or is cancelled pursuant to Article VI.D.4 of the Plan, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

b.      *Reversion*. Any distribution under the Plan that is an Unclaimed Distribution for a period of 6 months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the Reorganized Debtor. Upon such revesting, the Claim or Interest of any holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary.

**E.      Claims Paid or Payable by Third Parties**

1.      Claims Paid by Third Parties

A Claim shall be reduced in full, and such Claim shall be disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtor or the Reorganized Debtor. To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtor or the Reorganized Debtor on account of such Claim, such holder shall repay, return, or deliver any distribution held by or transferred to the holder to the Reorganized Debtor to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

2.      Claims Payable by Insurance Carriers

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      Applicability of Insurance Policies

Except as otherwise provided herein, distributions to holders of Allowed Claims shall be in accordance with the provisions of an applicable insurance policy. Except as otherwise expressly provided herein and the DIP Orders, DIP Term Sheet, and Restructuring Term Sheet, nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**F.      Setoffs**

Except as otherwise expressly provided for herein, the Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that the Debtor or Reorganized Debtor, as applicable, may hold against the holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Reorganized Debtor of any such claims, rights, and Causes of Action that the Reorganized Debtor may possess against such holder.  In no event shall any holder of Claims be entitled to set off any such Claim against any claim, right, or Cause of Action of the Debtor or Reorganized Debtor (as applicable), unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

**G.      Allocation Between Principal and Accrued Interest**

Except as otherwise provided herein, the aggregate consideration paid to holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, on such Allowed Claim accrued through the Effective Date.

**ARTICLE VII**
**PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS**

**A.      Disputed Claims Process**

Except as otherwise provided herein, if a party files a Proof of Claim and the Debtor or the Reorganized Debtor, as applicable, does not determine, and without the need for notice to or action, order, or approval of the Bankruptcy Court, that the Claim subject to such Proof of Claim is Allowed, such Claim shall be Disputed unless Allowed or disallowed by a Final Order or as otherwise set forth in this Article VII of the Plan.  For the avoidance of doubt, there is no requirement to file a Proof of Claim (or move the Bankruptcy Court for allowance) to be an Allowed Claim under the Plan.

**B.      Claims Administration Responsibilities**

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtor shall have the sole authority: (1) to file, withdraw, or litigate to judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  For the avoidance of doubt, except

34

as otherwise provided herein or in the DIP Orders, DIP Term Sheet, or Restructuring Term Sheet, from and after the Effective Date, the Reorganized Debtor shall have and retain any and all rights and defenses the Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to the Plan.

### C.    Adjustment to Claims Without Objection

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtor without the Reorganized Debtor having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

### D.    Single Satisfaction of Claims

Holders of Allowed Claims may assert such Claims against the Debtor, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against the Debtor based upon the full Allowed amount of such Claims. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100 percent of the underlying Allowed Claim plus applicable interest, if any.

### E.    Amendments to Claims or Interests

On or after the Effective Date, except as provided herein, a Claim or Interest may not be filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtor, and, to the extent such prior authorization is not received, any such new or amended Claim or Interest filed shall be deemed Disallowed in full and expunged without any further action.

### F.    Interest

Unless (a) otherwise specifically provided for herein or by order of the Bankruptcy Court, or (b) necessary to render a Claim Unimpaired as determined by a Final Order, postpetition interest shall not accrue or be paid on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.

### G.    Disallowance of Claims and Interests

All Claims and Interests of any Entity from which property is sought by the Debtor under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtor or the Reorganized Debtor allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Debtor or the Reorganized Debtor, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

35

## ARTICLE VIII
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

**A.      Discharge of Claims and Termination of Interests**

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created, adopted, or approved pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in exchange for and in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtor prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

**B.      Releases by the Debtor**

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party, Dame Pat McGrath, GDA, in its capacities as the DIP Lender and Prepetition Lender and in its corporate capacity, and Keyhaven is deemed released and discharged by the Debtor, the Reorganized Debtor, its Estate, and their Releasing Parties from any and all Causes of Action, including any derivative claims, which have been or may be asserted on behalf of the Debtor, that the Debtor, the Reorganized Debtor, or its Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, the Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including management, ownership, or operation thereof), the Debtor's in- or out-of-court restructuring efforts, the Chapter 11 Case, the Disclosure Statement, the Plan, the DIP Term Sheet, the Restructuring Term Sheet, the Restructuring Transactions, release, or other Plan Transaction Document, agreement, or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other

36

occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission constituted actual fraud or gross negligence.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement(s)) reinstated with respect to, or executed to implement, the Plan.

**C.      Releases by Holders of Claims and Interests**

**Notwithstanding anything contained in this Plan to the contrary, and in all respects subject to the DIP Orders and the Restructuring Term Sheet, as of the Effective Date, for good and valuable consideration, each Releasing Party is deemed to have released and discharged each Released Party, Dame Pat McGrath, GDA, in its capacities both as the Prepetition Lender and the DIP Lender, and Keyhaven from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtor, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including management, ownership, or operation thereof), the Debtor's in- or out-of-court restructuring efforts, the Chapter 11 Case the Disclosure Statement, the Plan, or the Restructuring Transaction, contract, instrument, release, or other Plan Transaction Document, agreement, or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission constituted actual fraud or gross negligence.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any Person or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) Reinstated with respect to, or executed to implement the Plan.  For the avoidance of doubt, nothing in this Plan shall release, waive or otherwise limit the rights of all Persons and Entities who have held, hold, or may hold direct, independent Claims against any non-Debtor party without such Person or Entity's consent or deemed consent as provided for in the Plan, Disclosure Statement, any Ballot to vote on the Plan, or order of the Bankruptcy Court.**

**D.      Injunction**

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims**

or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan. *Provided, however,* and for the avoidance of doubt, nothing in the Plan shall in any way hinder, delay, or affect the rights GDA and the DIP Lender to enforce its rights under any of the documents issued in connection with the Plan, to the extent not inconsistent with the Plan.

**E.   Exculpation**

The Exculpated Parties shall neither have, nor incur any liability to any Entity for any postpetition act taken or omitted to be taken in good faith in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Consummation of the Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor; *provided, however,* that the foregoing "Exculpation" shall have no effect on the liability of any Entity that results from any such act or omission constituted gross negligence or willful misconduct; *provided, further,* that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan; *provided, further,* that the Debtor, the Reorganized Debtor, GDA, and the DIP Lender shall not be exculpated from such party's obligations under the Plan, the DIP Orders, or any related documents or orders of the Bankruptcy Court. Notwithstanding anything herein to the contrary, nothing in the Plan or the Confirmation Order shall release, eliminate, exculpate, discharge or limit the rights and remedies that any Holder of a Claim or Interest may have against any non-Debtor person or entity for any act, omission, matter or thing that occurred prior to the Petition Date.

**F.   Protection Against Discriminatory Treatment**

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against the Reorganized Debtor, or any Entity with which the Reorganized Debtor has been or is associated, solely because the Reorganized Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but

before the Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Case.

### G.      Recoupment

In no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtor or the Reorganized Debtor, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

### H.      Document Retention

On and after the Effective Date, the Reorganized Debtor may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtor.

### I.      Reimbursement or Contribution

If the Bankruptcy Court allows or disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant holder of a Claim has filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

### J.      Release of Liens

Except (a) with respect to the Liens securing the Exit Loan, or (b) as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be deemed fully released and discharged pursuant to the Plan and the Confirmation Order, and the Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Debtor or the Reorganized Debtor, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

### ARTICLE IX
### CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

### A.      Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Article IX.B of the Plan:

39

1.      The Debtor shall have neither proposed nor signified its support for an alternative plan of reorganization that is not supported by GDA and the DIP Lender and no event or condition shall have occurred which with the passage of time or the giving of notice or both would constitute a default or event of default under the DIP Facility;

2.      The Bankruptcy Court shall have entered the DIP Orders, which shall be in full force and effect and no Event of Default or condition which, with the passage of time or giving of notice, would become an Event of Default shall have occurred and continue to exist under the DIP Loan Documents including, but not limited to, a failure to comply with the milestones set forth in the DIP Term Sheet;

3.      The Plan Transaction Documents shall (a) be consistent with the consent rights, terms and conditions set forth in the Restructuring Term Sheet and DIP Loan Documents, and/or otherwise approved by the applicable parties thereto consistent with their respective consent and approval rights set forth therein, and (b) have been executed or deemed executed and delivered by each party thereto, and any conditions precedent related thereto shall have been satisfied or waived by the applicable party or parties;

4.      The following documents shall be in full force and effect substantially contemporaneous with the consummation of the Restructuring Transactions, and shall not be stayed, modified, revised, or vacated, or subject to any pending appeal, and shall not have been terminated prior to the Effective Date: (a) the New Organizational Documents; (b) the Exit Facility Documents; (c) such other motions, orders, agreements, and documentation necessary or desirable to consummate and document the transactions contemplated by the Plan and the Restructuring Term Sheet; (d) to the extent not included in the foregoing, all financing documents needed to effectuate the Restructuring Transactions; and (e) all other material customary documents delivered in connection with transactions of this type (including, without limitation, any and all other documents implementing, achieving, contemplated by or relating to the Restructuring Transactions);

5.      The Debtor shall have paid, in full and in cash, all reasonable and documented fees and expenses, including professional fees and expenses, GDA and the DIP Lender, including, for the avoidance of doubt, the Restructuring Expenses;

6.      The Bankruptcy Court shall have entered the Confirmation Order, confirming the Plan, in form and substance acceptable to the Debtor and acceptable to GDA, and the Confirmation Order shall not have been reversed, stayed, modified, or vacated on appeal;

7.      (a) Any and all requisite governmental, regulatory, and third-party approvals and consents shall have been obtained or waived, not be subject to unfulfilled conditions, and be in full force and effect, and (b) all applicable waiting periods shall have expired or terminated, in each case under each foregoing clause of (a) and (b), without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on the Restructuring Transactions, or the financial benefits of such Restructuring Transactions to the GDA;

8.      Each of (a) the Exit Facility and (b) New Equity Interests shall have been issued or completed, as applicable, and any funding required thereunder shall have occurred substantially contemporaneously with consummation of the Restructuring Transactions, in each case, in accordance with the Plan, and the documents and agreements governing the same;

9.      The final version of the Plan Supplement, and all of the schedules, documents, and exhibits contained therein shall have been filed in a manner consistent in all material respects with the Plan and shall be in form and substance acceptable to GDA and the Debtor;

10.     All actions, documents, and agreements constituting the applicable Plan Transaction Documents, including any exhibits, schedules, amendments, modifications or supplements thereto, shall have been executed and/or effectuated;

11.     The Debtor's actions and/or operations prior to the Effective Date shall not have interfered with or impaired the Debtor's business, as determined by GDA, and immediately prior to and/or on the Effective Date all actions and operations relating to the Debtor's business after the Effective Date shall have been taken by the Debtor in consultation and with the consent of GDA (including, without limitation, rejection of Executory Contracts and related actions); and

12.     No court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, preventing or prohibiting the consummation of the Restructuring Transactions, the Restructuring Term Sheet or any of the Plan Transaction Documents contemplated thereby.

## B.     Waiver of Conditions Precedent

The Debtor may waive any of the conditions to the Effective Date set forth in Article IX.A of the Plan, with the consent of the GDA, at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

## C.     Effect of Non-Occurrence of Conditions to Consummation

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtor or any other Entity.

## D.     Substantial Consummation of the Plan

Substantial consummation of this Plan under section 1101(2) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

## ARTICLE X
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

**A.      Modification of Plan**

Effective as of the date hereof, (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan before the entry of the Confirmation Order consistent with the terms set forth herein; and (b) after the entry of the Confirmation Order, the Debtor or the Reorganized Debtor, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, to remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein; provided, however, that the Debtor shall provide prior written notice to and obtain the consent of GDA prior to any such amendment.

**B.      Other Amendments**

The Debtor may make appropriate technical adjustments and modifications to the Plan or the Plan Supplement(s) prior to the Effective Date without further order or approval of the Bankruptcy Court provided, however, that the Debtor shall provide prior written notice to and obtain the consent of GDA prior to any such amendment.

**C.      Effect of Confirmation on Modifications**

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or solicitation under Bankruptcy Rule 3019.

**D.      Revocation or Withdrawal of Plan**

Subject to the Restructuring Term Sheet, the Debtor reserves the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans.  If the Debtor withdraws the Plan, or if the Confirmation Date or the Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action, (2) prejudice in any manner the rights of the Debtor or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.  For the avoidance of doubt, in the event the Debtor revokes or withdraws the Plan, GDA shall become entitled to receive the Break-Up Fee and Alternative Transaction Fee defined in the Restructuring Term Sheet and the DIP Term Sheet.

## ARTICLE XI
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or

42

related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests, including with respect to the amount necessary to Reinstate any and all Claims under section 1124 of the Bankruptcy Code;

2. decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4. ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5. adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

6. enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Case and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

7. enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8. grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9. issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

10. hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Case, including:

(a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VI of the Plan; (b) with respect to the releases, injunctions, and other provisions contained in Article X of the Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan; (d) related to section 1141 of the Bankruptcy Code; or (e) without limiting the foregoing, any suits, adversary proceedings, Retained Causes of Action, or Causes of Action by the Debtor or the Reorganized Debtor;

11.    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.    consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

13.    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

14.    enter an order or Final Decree concluding or closing the Chapter 11 Case;

15.    enforce all orders previously entered by the Bankruptcy Court;

16.    hear any of the Retained Causes of Action which the Reorganized Debtor or the Liquidating Trust may elect to file in the Bankruptcy Court; and

17.    hear any other matter not inconsistent with the Bankruptcy Code.

### ARTICLE XII
### MISCELLANEOUS PROVISIONS

**A.    Immediate Binding Effect**

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

**B.    Additional Documents**

On or before the Effective Date, the Debtor, with the consent of GDA, may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtor or the

Reorganized Debtor, as applicable, and all holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**C.      Payment of Statutory Fees**

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid by the Debtor or the Reorganized Debtor for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or a Final Decree is issued, whichever occurs first.

**D.      Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

**E.      Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**F.      Service of Documents**

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtor shall be served on via delivery and electronic mail to:

| | |
|---|---|
| **The Debtor or Reorganized Debtor** | **Pat McGrath Cosmetics LLC**<br>29 East 19th Street<br>8th Floor<br>New York, NY 10003<br>Attn.: Gary Lembo |
| **Counsel to the Debtor or Reorganized Debtor** | **Pack Law**<br>51 NE 24th Street<br>Suite 108<br>Miami, FL 33137<br>Attn.: Joseph Pack, Esq. and Jessey Krehl, Esq.<br>Email: joe@packlaw.com; jessey@packlaw.com |
| **United States Trustee** | **Office of the United States Trustee**<br>**for the Southern District of Florida** |

51 SW First Avenue
Room 1204
Miami, FL 33130
Attn.: Daniel L. Gold, Esq.
Email: Dan.L.Gold@usdoj.gov

**Counsel to GDA**                    **Brown Rudnick LLP**
7 Times Square
New York, NY 10036
Attn.: Jeffrey L. Jonas, Esq. and
        Elizabeth C. Castano, Esq.
Email: jjonas@brownrudnick.com
        ecastano@brownrudnick.com

**Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.**
150 West Flagler Street
Miami, FL 33130
Attn.: Patricia A. Redmond, Esq.
Email: predmond@stearnsweaver.com

Notice shall be given to the above parties and their successors. Any Person may change the address to which notices are to be sent for purposes of the Plan by sending written notice pursuant to this provision to the Debtor.

## G.    Term of Injunctions or Stays

**Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

## H.    Entire Agreement

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## I.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Florida, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control);

46

provided, however, that corporate governance matters relating to the Debtor or the Reorganized Debtor, as applicable, shall be governed by the laws of the state of incorporation or formation of the Debtor or Reorganized Debtor, as applicable.

### J.    Time

Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by the Plan, unless otherwise set forth herein or provided by the Bankruptcy Court.

### K.    Section 1125(e) Good Faith Compliance

The Debtor and its Related Persons shall be deemed to have acted in good faith under Section 1125(e) of the Bankruptcy Code.

### L.    Plan Supplement Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtor's counsel at the address above or by downloading such exhibits and documents from the Bankruptcy Court's website, available via the Bankruptcy Court's CM/ECF system.  Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.

### M.    Non-Severability

The provisions of the Plan (including its release, injunction, exculpation, and compromise provisions) are mutually dependent and non-severable.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtor, consistent with the terms set forth herein; and (c) nonseverable and mutually dependent.

### N.    Closing of Chapter 11 Case

The Reorganized Debtor shall, promptly after the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

### O.    Waiver or Estoppel

Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

Dated: March 10, 2026

Respectfully submitted,

**Pat McGrath Cosmetics LLC**

By: */s/ Gary Lembo*

Name:   Gary Lembo
Title:    Chief Restructuring Officer