**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

PAT MCGRATH COSMETICS LLC,[1]

          Debtor.

Chapter 11

Case No. 26-10772-LMI

**REPLY IN OPPOSITION TO UNITED STATES TRUSTEE'S OBJECTION**
**TO CONFIRMATION OF FIRST AMENDED PLAN OF REORGANIZATION**
**AND FINAL APPROVAL OF FIRST AMENDED DISCLOSURE STATEMENT**

The above-captioned debtor and debtor-in-possession (the "**Debtor**"), by and through its undersigned counsel, submits this reply (this "**Reply**") in opposition to the *United States Trustee's Objection to Confirmation of First Amended Plan of Reorganization and Final Approval of First Amended Disclosure Statement* [Dkt. No. 204] (the "**OUST Objection**") in supplement to the *Debtor's Memorandum of Law in Support of an Order Approving the Debtor's Disclosure Statement for, and Confirming, First Amended Plan of Reorganization of Pat McGrath Cosmetics LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 205] (the "**Confirmation Brief**"). In support of this Reply, the Debtor respectfully states as follows:

**Preliminary Statement**

In his write-up on his 3-3-3 Rule,[2] Judge Williamson attributed to Chief Justice Roberts the quote "I've yet to put down a brief and say, 'I wish that were longer.'" The Debtor's Confirmation Brief is extensive and sets out in Section II.D.2 the Debtor's case in chief with

---

[1] The last four digits of Pat McGrath Cosmetics LLC's tax identification number are 3615 and its mailing address is 29 East 19th Street, 8th Floor, New York, NY 10003.

[2] *"The 3-3-3 Rule"*, Williamson, J. (Bankr. M.D. Fla.), available at https://www.flmb.uscourts.gov/judges/tampa/williamson/3-3-3_rule.pdf.

respect to the consensual nature of the Holder Release and in Section II.L the Debtor's case in chief with respect to the "gift" in the Plan and the absolute priority rule. The purpose of this Reply is to address certain specific matters raised in the OUST Objection, and taking lead from Judge Williamson and Chief Justice Roberts, the goal is to remain brief. The Debtor raises seven points in rebuttal.

<b><u>Reply</u></b>

1.      *First*, the OUST Objection misstates *Purdue*. Contrary to the OUST Objection, the holding of *Purdue* was narrow, as the Supreme Court itself acknowledged: "Confining ourselves to the question presented, **we hold only** that the bankruptcy code **does not authorize a release** and injunction that . . . effectively seeks to discharge claims against a nondebtor **without the consent of affected claimants**."[3] The OUST Objection argues that the definition of "Released Parties" includes a litany of parties that "as a class, **facially** violates *Purdue*," and "[n]o one can reasonably argue otherwise."[4] These statements make no sense. *Purdue*, as the Supreme Court made clear, turned on the **consent** of the parties affected, not the identities of the non-debtor parties released. Indeed, to the contrary, the Holder Release states unambiguously: "**For the avoidance of doubt, nothing in this Plan shall release. . . Claims against any non-Debtor party without such Person or Entity's consent or deemed consent . . . .**" Accordingly, to the extent *Purdue* "facially" applies, it facially supports the Holder Release.

2.      *Second*, the OUST Objection complains that "[t]he speed with which this case has moved is artificial" and "[t]he filing milestones and shortened timelines for proposing and confirming a plan have been driven solely by the demands of GDA."[5] Regardless of what

---

[3] *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 227 (2024).
[4] OUST Objection at ¶¶ 9, 23. (emphasis added).
[5] *Id.* at ¶ 19.

"drove" the speed and timeline, they are anything but artificial—they are so-ordered by this Court,[6] and are accordingly no more or less artificial than any other final, non-appealable order of this Court.  Moreover, as set forth in the motions requesting such court-ordered timelines, the pace of this Chapter 11 Case reflects legitimate concerns about the Debtor's liquidity and the impact delay could have on its value.

3.      *Third*, the OUST Objection argues that state contract law rather than federal bankruptcy law governs the question of consent in the context of releases in a chapter 11 plan. This is primarily addressed in Section II.D.2 of the Confirmation Brief.  To respond to the OUST Objection's *Erie* and *Butner* analysis, it correctly notes that (in general) state law applies "[e]xcept in matters governed by the Federal Constitution or by acts of Congress,"[7] but it fails to grapple with the fact that this Chapter 11 Case, arising under Title 11 of the United States Code, passed pursuant to the Bankruptcy Clause of Article I of that very Federal Constitution, **is** one of the very matters of federal concern in which the United States' laws interpose themselves, to the preclusion of underlying state law.  *In re Container Store Grp., Inc.*[8] provides the most detailed post-*Purdue* analysis of this issue.  There, the court correctly noted:

> A state rule of decision defining consent for third-party releases in a reorganization plan would also materially undermine federal interests. There is a "strong federal interest," *In re Omni Video, Inc.*, 60 F.3d at 232, in applying a "uniform federal rule," *Semtek*, 531 U.S. at 508, to judgments that terminate cases arising under Congress's "uniform Laws on the subject of Bankruptcies," U.S. CONST. art. 1, § 8, cl. 4.

---

[6] *See Final Order Pursuant to 11 U.S.C. §§ 105, 362, 364, 503(b) and 507(a), FED. R. BANKR. P. 2002, 4001, 6003 and 9014 and Rule 2002-1(a) and 4001-1 of the Local Bankruptcy Rules (I) Authorizing the Debtor to Obtain Post-Petition Secured Debtor-In-Posession Financing; (II) Granting Liens and Providing for Superpriority Administrative Expense Status; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Dkt. No. 131] (ordering that the Debtor comply with the Milestones (as defined therein)); *see also Order Conditionally Approving Disclosure Statement and Setting Hearing on Final Approval of Disclosure Statement and Confirmation of Plan* [Dkt. No. 132] (ordering the confirmation timeline).

[7] OUST Objection at ¶ 30 (quoting *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

[8] *Epstein v. Container Store Grp. Inc. (In re Container Store Grp., Inc.)*, 676 B.R. 356 (S.D. Tex. 2026).

It also noted that "the Fifth Circuit has applied federal law's 'general rules' of contract to a 'bankruptcy plan' because it 'represents a kind of consent decree.'"[9]  A review of the underlying cited authorities reveals that the ultimate source of this proposition is *In re Stratford of Texas, Inc.*, 635 F.2d 365, 368 (5th Cir. 1981), which is binding in the Eleventh Circuit.[10]  Because the treatment in *Container Store* is well reasoned and based on the same underlying legal tradition and binding law, this Court should follow it.

4.      *Fourth*, the OUST Objection in paragraph 32 provides a string cite of cases, all invoking non-Florida law, that disfavor the opt out model of consent approved by federal law. At the risk of violating the very 3-3-3 Rule with which the Debtor opened this Reply, the Debtor responds with its own string cite of post-*Purdue* cases which upheld opt outs as consent, to wit:

   i.    *In re Roman Catholic Diocese of Syracuse, N.Y.*, 667 B.R. 628, 632–33 (Bankr. N.D.N.Y. 2024) (recognizing that an opt-out structure can establish consent where claimants are given clear notice, explaining that the plan "propose[s] an opt-out mechanism, whereby failure to affirmatively opt-out . . . is deemed consent," and approving that approach where creditors are "clearly and squarely told if you fail to act your rights will be affected" and given notice that they "need to do something or else");

   ii.   *In re Robertshaw US Holding Corp.*, 662 B.R. 300, 323 (Bankr. S.D. Tex. 2024) ("There is nothing improper with an opt-out feature for consensual third-party releases in a chapter 11 plan. . . . Hundreds of chapter 11 cases have been confirmed in this District with consensual third-party releases with an opt-out, [and] Purdue did not change the law in this Circuit.");

   iii.  *In re LaVie Care Ctrs., LLC*, 2024 Bankr. LEXIS 2900, at *36–37 (Bankr. N.D. Ga. Dec. 5, 2024) (holding that an opt-out structure can be consensual where creditors are given clear notice and an opportunity to act, explaining "if a creditor gets materials in a bankruptcy case, and the materials say if you do not take an action, you will be bound by the consensual release, you must do something. You cannot simply ignore it. If you do, you may be 'deemed' to consent to the release. Or you may have waived those rights.");

   iv.   *In re Spirit Airlines, Inc.*, 668 B.R. 689, 714–15 (Bankr. S.D.N.Y. 2024) (approving opt-out third-party releases as consensual where creditors receive notice and an opportunity to decline, explaining that "courts in this Circuit have routinely allowed consensual releases using an opt-out mechanism" and finding

---

[9] *Id.* at 39 (quoting *In re Tex. Com. Energy*, 607 F.3d 153, 158 (5th Cir. 2010)).

[10] The Eleventh Circuit has adopted as binding precedent all cases decided by the former Fifth Circuit prior to the close of business on September 30, 1981.  *See Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

consent where creditors were given the benefits of the plan and failed to opt out);

v.  *Mercy Health Network, Inc. v. Mercy Hosp.*, 671 B.R. 499, 512 (N.D. Iowa 2025) (finding that the post-*Purdue* releases in question were "consensual because they contained a valid opt-out provision and because the voting class did not object to it");

vi.  *Epstein v. Container Store Grp., Inc. (In re Container Store Grp., Inc.)*, 676 B.R. 356 (S.D. Tex. 2026) (holding that third-party releases may bind creditors who fail to opt out, where the plan defined "Releasing Parties" to include those who do not "opt out of" the releases or who do not "timely object to the third-party releases," and concluding that "[t]here is no Code inconsistency in modifying the relationship between claimants and nondebtors when claimants consent"); and

vii.  *In re Lutheran Home & Servs. for the Aged, Inc.*, 2026 Bankr. LEXIS 541, at *47– 50 (Bankr. N.D. Ill. Mar. 4, 2026) (approving third-party releases as consistent with governing federal law where creditors were given clear notice and an opportunity to opt out, acknowledging failure to opt out as consent).

5.  *Fifth*, much of the remainder of the OUST Objection is spent dealing with the Restatement of Contracts (the law of no state) and the law of the State of New York (not the law of the Plan).  Conspicuously absent from the OUST Objection, however, is any counter to the conclusion in *Stein Mart*,[11] discussed extensively in the Confirmation Brief, that "the releases contained in the Proposed Plan are consensual because the Opt-Out Form meets the elements of acceptance under Florida law."[12]  While the OUST Objection was filed before the Confirmation Brief, *Stein Mart* was clearly in mind in drafting the OUST Objection, because it cites *Stein Mart* for the proposition that the Debtor bears the burden on each element in favor of confirmation.[13]  Indeed, **on the very page** that the OUST Objection cites, the *Stein Mart* court pointed out that the first issue to be discussed was the U.S. Trustee's argument in that case that an opt-out release is not consensual.  The Court there did not rule in favor of the U.S. Trustee, and it should not here for the reasons explained in the Confirmation Brief.

---

[11] *In re Stein Mart, Inc.*, 629 B.R. 516 (Bankr. M.D. Fla. 2021).
[12] *Id.* at 523.
[13] OUST Objection at ¶ 22 (citing *Stein Mart*, 629 B.R. at 522).

6.      *Sixth*, the Debtor does not request that the Court create a *de facto* class action, and does not suggest the power to approve consensual releases of third parties stems from some unguided class action power.  While the Confirmation Brief analogizes to class actions for the very narrow issue of what numerosity makes joinder of all parties impracticable,[14] its argument does not sound in class action.

7.      *Seventh and Finally*, the OUST Objection argues that even those parties who voted in favor of the Plan cannot be found to have taken the requisite affirmative action to assent to a consensual release.[15]  This argument demonstrates how very circumscribed and impractical the OUST Objection's view of consent is.  It argues that "[v]oting for a plan does not reflect the unambiguous assent that should be required to find consent to a release,"[16] but at least with respect to the Plan at issue here, as set forth in the Confirmation Brief, the Solicitation Packages and Ballots were so clear that the idea that there would have been doubt in the mind of "yes" votes as to whether they were consenting to the Holder Release strains credulity.  The OUST Objection's view of what is required to make a release consensual is strenuous and unworkable, further giving credence to the superior federal bankruptcy law view of consent for which the Debtor argues in the Confirmation Brief.  The OUST Objection also ignores the fact that many creditors who voted on or abstained from voting on the Plan did indeed opt out of the release, indicating that those who did not made a conscious and informed choice to consent.

8.      Content that the remaining arguments raised in the OUST Objection are addressed in the Confirmation Brief and in the interest of brevity, the Debtor respectfully requests the Court OVERRULE the OUST Objection.

---

[14] Confirmation Brief at ¶ 60.
[15] OUST Objection at ¶¶ 63–67.
[16] *Id.* at 64.

**WHEREFORE**, the Debtor respectfully requests the Court enter an order (i) overruling the OUST Objection, (ii) approving the Disclosure Statement on a final basis, (iii) confirming the Plan, and (iv) granting such further relief as the Court deems just and proper.

Dated: April 10, 2026

Respectfully submitted,

**PACK LAW**
4649 Ponce de Leon Blvd., Suite 405
Coral Gables, Florida 33146
Telephone: (305) 916-4500

By:   /s/ Jessey J. Krehl
      Joseph A. Pack
      Email: joe@packlaw.com
      Florida Bar No. 117882
      Robert G. Burns (*Admitted Pro Hac Vice*)
      Email: robert@packlaw.com
      Jessey J. Krehl
      Email: jessey@packlaw.com
      Florida Bar No. 1025848

*Counsel to the Debtor and Debtor-in-Possession*

**Certificate of Service**

I HEREBY CERTIFY that I caused a true and correct copy of the foregoing materials to be served on the date hereof via CM/ECF on all parties entitled to receive electronic service thereby, including the Office of the United States Trustee.

By:   /s/ Jessey J. Krehl
      Jessey J. Krehl
      Email: jessey@packlaw.com
      Florida Bar No. 1025848