**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

PAT MCGRATH COSMETICS LLC,[1]

Debtor.

Chapter 11

Case No. 26-10772-LMI

**DEBTOR'S *EXPEDITED***
**MOTION TO MODIFY PLAN OF REORGANIZATION**

**(Request for Expedited Consideration)**

**(The Debtor respectfully requests an expedited hearing on this Motion on**
**April 15, 2026 at 3:30 p.m. (ET) when other proceedings are scheduled in this case.)**

The above-captioned debtor and debtor-in-possession (the "**Debtor**"), by and through its undersigned counsel, files this motion (the "**Motion**"), and in support hereof respectfully states as follows:

**Background**

1.      On January 22, 2026 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the Chapter 11 Case before the Bankruptcy Court.

2.      On March 2, 2026, the Debtor submitted that certain *Expedited Motion for Entry of an Order (I) Conditionally Approving Debtor's Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Proposed Chapter 11 Plan, and (III) Granting Related Relief* [Docket No. 106] (the "**Scheduling Motion**").  On March

---

[1]     The last four digits of Pat McGrath Cosmetics LLC's tax identification number are 3615 and its mailing address is 29 East 19th Street, 8th Floor, New York, NY 10003.

11, 2026, after a March 5, 2026 hearing, the Court entered an order [Docket No. 132] (the "**Scheduling Order**"), granting the Scheduling Motion and scheduling a combined hearing (the "**Combined Hearing**") to consider final approval of the Disclosure Statement and confirmation of the Plan.[2] On April 13, 2026, the Court continued the Combined Hearing to April 15, 2026 at 3:30 p.m. ET.

3.      The Debtor, consistent with the Scheduling Order, solicited votes to accept or reject the Plan and provided parties in interest with notice of the Combined Hearing and the deadline to object to final approval of the Disclosure Statement and confirmation of the Plan as April 7, 2026 at 4:00 p.m. (ET) (the "**Objection Deadline**").

4.      The parties have worked to reach consensual resolutions in line with the previously filed versions of the Restructuring Term Sheet, and have agreed to certain changes in connection therewith, including the provision of a revised Restructuring Term Sheet.  The Debtor has made adjustments to the Plan to amend various provisions to incorporate the agreements of the parties and to request confirmation of the Plan, as modified.

## Relief Requested

5.      By this Motion, the Debtor respectfully requests the Court approve certain modifications to the Plan (collectively, the "**Modifications**" and each a "**Modification**"), as set forth herein, and determine that (i) the Modifications comply with section 1127 of the Bankruptcy Code, (ii) the Modifications do not adversely affect the treatment of the Holders of any Claim or

---

[2]    As used herein, "**Disclosure Statement**" means the *First Amended Disclosure Statement for Plan of Reorganization of Pat McGrath Cosmetics LLC Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time) [Dkt. No. 126].  As used herein, "**Plan**" means the *First Amended Plan of Reorganization of Pat McGrath Cosmetics LLC Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time) [Dkt. No. 128].  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms, as applicable, in the Plan and/or the Disclosure Statement.

Interest entitled to vote under the Plan, (iii) the Debtor is not required to re-solicit ballots on the Plan, as modified, and (iv) the prior acceptances of the Plan by Holders of Claims and Interests may be applied to, and used in connection with, confirmation of the Plan as modified by the Modifications.

## The Modifications

6.    The definition of "Released Party" as defined in Article I.A.83 shall be amended as follows, ~~deletions in strikethrough and red~~:

> "*Released Party*" means, collectively, each of the following in their respective capacities as such: (a) ~~Pat McGrath and~~ any persons or Entities retained pursuant to sections 327 and 363 of the Bankruptcy Code~~; and (b) with respect to each of the foregoing Persons and Entities in clause (a), such Person's or Entity's predecessors, successors and assigns, subsidiaries, Affiliates, and all of their respective current and former officers, managers, directors, principals, direct and indirect shareholders, direct and indirect members, advisors, consultants, and employees~~.  Notwithstanding anything contained herein or in Plan documents, the Released Parties shall not include any person or entity listed in the Schedule of Retained Causes of Action to be included in the Plan Supplement or any affiliate thereof.

7.    The "Restructuring Term Sheet" as defined in Article I.A.86 shall refer to the Restructuring Term Sheet attached as **Exhibit A** to this Motion instead of Exhibit A to the DIP Term Sheet and Exhibit C to the Disclosure Statement.[3]

8.    The treatment of Class 8 Existing Equity Interests in Article III.B.8.b shall be amended as follows, with ~~deletions in strikethrough and red~~:

> *Treatment*: All Class 8 Existing Equity Interests will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each Holder of a Class 8 Existing Equity Interest will not receive any distribution on account of such Class 8 Existing Equity Interest.  ~~Notwithstanding the foregoing,~~

---

[3]    A redlined version showing the changes made to the Restructuring Term Sheet is attached as **Exhibit B** to this Motion.

~~GDA has agreed in its sole and exclusive discretion to provide from its New Common Equity, in the aggregate, a gift of 5% of the New Common Equity to the Holders of Class 8 Existing Equity, which New Common Equity shall be distributed as determined by the Reorganized Debtor in consultation with GDA.~~

9.  Each of Article II.C of the Plan, entitled "GDA DIP Claims," and Article III.B.3.b of the Plan, governing the treatment of Class 3 GDA Prepetition Claims, shall be amended to strike "65%" and replace it with "100% subject to dilution by the MIP."

10.  Article VIII.B of the Plan, entitled "Releases by the Debtor," and Article VIII.C of the Plan, entitled "Releases by Holders of Claims and Interests," shall each be amended to strike the words "Dame Pat McGrath" in their entirety wherever they appear therein.

11.  Article IV.K, entitled "Restructuring Transactions," shall be amended to remove the words "the entry into an amended or new employment agreement between the Reorganized Debtor and Pat McGrath" and replace them with "[reserved]".

**Basis for Relief**

12.  Section 1127(a) of the Bankruptcy Code allows a plan proponent to modify a plan "at any time before confirmation," but further provides that such proponent "may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of [the Bankruptcy Code]." Section 1127(c) provides that "[t]he proponent of the modification shall comply with the disclosure requirements of section 1125 of [the Bankruptcy Code] with respect to the plan as modified." Generally, courts do not require notice of a modification if the modification does not adversely change a claimant's treatment. *In re Dow Corning Corporation*, 237 B.R. 374, 379 (Bankr. E.D. Mich. 1999).

13.  Further, Federal Rule of Bankruptcy Procedure ("**Bankruptcy Rule**") 3019 provides, in relevant part:

4

[A]fter a plan has been accepted and before confirmation, the plan proponent may file a modification. The modification is considered accepted by any creditor or equity security holder who has accepted it in writing. For others who have not accepted it in writing but have accepted the plan, the modification is considered accepted if, after notice and a hearing, the court finds that it does not adversely change the treatment of their claims or interests.

14.     Reasonably, courts have determined that where a modification does not materially impact a claimant's treatment, the change is not adverse and the court may deem that prior acceptances apply to the amended plan as well.  *In re American Solar King Corp.*, 90 B.R. 808, 826 (Bankr. W.D. Tex. 1988).  While the prior version of Bankruptcy Rule 3019 required that the modification not affect the claim of *any* creditor or the interest of *any* equity security holder who has not accepted the modification in writing, *see In re America-CV Station Group, Inc. et al.*, 56 F.4th 1302, 1311 (11th Cir. 2023), the 2024 amendments seem to indicate that the court must only determine the modification does not adversely affect the holder of a claim or interest "who have not accepted [the modification] in writing *but have accepted the plan*."  (Emphasis added).

15.     This distinction, should one exist at all, is immaterial to the instant Motion because the Modifications proposed herein do not adversely impact any Holder of a Claim or Interest entitled to vote under the Plan, irrespective of whether or how such Holder voted.  Each and every one of the Modifications does not impact the treatment of Holders entitled to vote under the Plan. Indeed, the vast majority of the Modifications are intended to remove certain consideration to Dame Patricia McGrath under the previously filed draft of the Restructuring Term Sheet.

**Reservation of Rights**

16.     The failure to expressly identify any particular modification attributable to the prior contemplated agreement with Dame Patricia McGrath shall not be construed as an intentional omission or as a waiver of the right to seek approval of such modification, and the Debtor hereby reserves all rights to supplement this Motion to address any such matters that may be identified prior to the Effective Date with the consent of GDA.

**WHEREFORE**, the Debtor respectfully requests this Court enter an order, or otherwise include a provision in the order confirming the Plan to the extent the Court confirms the same at the Combined Hearing, (i) authorizing the Modifications to the Plan, (ii) determining the Modifications do not adversely affect the treatment of the Holder of any Claim or Interest entitled to vote under the Plan, (iii) determining the Debtor is not required to re-solicit ballots on the Plan, as modified, and (iv) ordering the prior acceptances of the Plan by Holders of Claims and Interests be applied to, and used in connection with, confirmation of the Plan as modified by the Modifications.

Dated:     April 15, 2026

<div style="margin-left:45%">

Respectfully submitted,
 **PACK LAW**
 4649 Ponce de Leon Blvd., Suite 405
 Coral Gables, Florida 33146
 Telephone: (305) 916-4500

By:   _/s/ Joseph A. Pack_
     Joseph A. Pack
     Email:  joe@packlaw.com
     Florida Bar No. 117882
     Jessey J. Krehl
     Email:  jessey@packlaw.com
     Florida Bar No. 1025848

*Counsel to the Debtor and Debtor-in-Possession*

</div>

**Exhibit A**

Restructuring Term Sheet (Clean)

# PAT MCGRATH COSMETICS LLC

## RESTRUCTURING TERM SHEET

This term sheet (together with all schedules, annexes and exhibits hereto, the "*Restructuring Term Sheet*") sets forth the principal terms of a proposed comprehensive restructuring (the "*Restructuring*" or "*Restructuring Transaction*") of the existing capital structure of Pat McGrath Cosmetics LLC (collectively, the "*Company*" or the "*Debtor*" and, upon emergence from chapter 11, the "*Reorganized Debtor*"), which will be consummate in the Company's case under chapter 11 pursuant to title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "*Bankruptcy Code*") filed on January 22, 2026  (the "*Petition Date*") in the United States Bankruptcy Court for the Southern District of Florida (the "*Chapter 11 Cases*" and such court, the "*Bankruptcy Court*") pursuant to a chapter 11 plan containing terms set forth herein.[1]

THIS RESTRUCTURING TERM SHEET DOES NOT CONSTITUTE (NOR WILL IT BE CONSTRUED AS) AN OFFER OR ACCEPTANCE WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE.  ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.  NOTHING CONTAINED IN THIS RESTRUCTURING TERM SHEET SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL THE OCCURRENCE OF THE AGREEMENT EFFECTIVE DATE ON THE TERMS DESCRIBED HEREIN, DEEMED BINDING ON ANY OF THE PARTIES TO THE RESTRUCTURING SUPPORT AGREEMENT.

THIS RESTRUCTURING TERM SHEET IS THE PRODUCT OF SETTLEMENT DISCUSSIONS AMONG THE COMPANY, PAT MCGRATH, GDA (AS DEFINED BELOW) AND THE DIP LENDER (AS DEFINED BELOW). ACCORDINGLY, THIS RESTRUCTURING TERM SHEET IS PROTECTED BY RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY OTHER APPLICABLE STATUTES OR DOCTRINES PROTECTING THE USE OR DISCLOSURE OF CONFIDENTIAL SETTLEMENT DISCUSSIONS.

THIS RESTRUCTURING TERM SHEET DOES NOT PURPORT TO SUMMARIZE ALL OF THE TERMS, CONDITIONS, REPRESENTATIONS, WARRANTIES, AND OTHER PROVISIONS WITH RESPECT TO THE TRANSACTIONS DESCRIBED HEREIN, WHICH TRANSACTIONS WILL BE SUBJECT TO THE COMPLETION OF DEFINITIVE DOCUMENTS INCORPORATING THE TERMS SET FORTH HEREIN AND THE CLOSING OF ANY TRANSACTION SHALL BE SUBJECT TO THE TERMS AND CONDITIONS SET FORTH IN SUCH DEFINITIVE DOCUMENTS AND THE APPROVAL RIGHTS OF THE PARTIES SET FORTH HEREIN AND IN SUCH DEFINITIVE DOCUMENTS, IN EACH CASE, SUBJECT TO THE TERMS HEREOF.

---

[1] Capitalized terms used but not defined herein or in **Annex 1** hereto have the meanings given to such terms in the DIP Term Sheet.

| Material Terms of the Restructuring Transaction | |
|---|---|
| **Term** | **Description** |
| **Company:** | Pat McGrath Cosmetics LLC, a New York limited liability company |
| **Claims and Interests to be Restructured:** | The Debtor's prepetition capital structure consists of:<br><br>**GDA Prepetition Claims.** Consisting of any and all claims held by GDA PMG Funding LLC ("*GDA*") as of the petition date including, but not limited to, all claims acquired from TVT Capital Source and TVTCap, all claims acquired from Settle Funding LLC and all additional amounts funded directly by GDA, in each case inclusive of all principal, interest, costs and fees accrued thereon as of and after the Petition Date, but excluding the amount rolled-up as part of the DIP Financing;<br><br>**Keyhaven Claims.** Consisting of any and all claims held by Keyhaven Blocker Inc ("*Keyhaven*") inclusive of all principal, interest, costs and fees accrued thereon as of the Petition Date;<br><br>**E Advance Services Claims.** Consisting of any and all claims held by E Advance Services LLC ("*E Advance Services*") inclusive of all principal, interest, costs and fees accrued thereon as of the Petition Date;<br><br>**Parkview Claims.** Consisting of any and all claims held by Parkview Advance LLC ("*Parkview*") inclusive of all principal, interest, costs and fees accrued thereon as of the Petition Date;<br><br>**800 Funding Claims.** Consisting of any and all claims held by 800 Funding LLC ("***800 Funding***") inclusive of all principal, interest, costs and fees accrued thereon as of the Petition Date;<br><br>**Amerifi Claims.** Consisting of any and all claims held by Amerifi Capital LLC ("*Amerifi*") inclusive of principal, interest, costs and fees accrued thereon as of the Petition Date;<br><br>**General Unsecured Claims.** Consisting of any unsecured prepetition Claim against the Debtor that is not an administrative claim, an unsecured priority claim, a GDA Prepetition Claim, a Keyhaven Claim, an E Advance Claim, a Parkview Claim, an 800 Funding Claim, an Amerifi Claim, a Critical Vendor Claim (as defined below) or an unsecured Claim otherwise subordinated or entitled to priority under the Bankruptcy Code (the "*General Unsecured Claims*"); and<br><br>**Existing Equity Interests.** Consisting of all Class 8 existing equity interests in the Company. ("*Existing Equity Interests*"). |
| **DIP Financing:** | Prior to or following the Petition Date, the Debtor will enter into a credit agreement with funds managed by GDA to fund term loans (in such capacity, the "*DIP Lender*") to the Company, which will come in the form of debtor-in-possession financing (the "*DIP Facility*") consistent with the term sheet attached hereto as **Annex 2** (the "*DIP Term Sheet*") and otherwise acceptable to the DIP Lenders. The Debtor shall use the proceeds of the DIP Facility in accordance with the Approved Budget. The DIP Facility shall consist of up to $10 million in new money loans plus the roll-up of $1.00 of Prepetition GDA Secured Claims for each $1.00 of new money financing authorized under the DIP Facility. The obligations of the Company under the DIP Facility shall be referred to herein as the "*DIP Obligations*". |
| **Overview of Plan:** | The Restructuring Transactions shall be effectuated pursuant to plan of reorganization (the "*Plan*"), which shall be in form and substance acceptable to: (i) the Company; (ii) the DIP Lender; and (iii) GDA, and shall otherwise be subject to a plan of reorganization, disclosure |

2

| | |
|---|---|
| | statement and other definitive documents (collectively, the "*Definitive Documents*") acceptable to the Company and GDA.<br><br>Pursuant to the Plan, in exchange for agreeing to equitize the full outstanding amount of the DIP Facility and the Prepetition GDA Secured Claim, GDA will receive, on the Plan Effective Date (to be defined therein), preferred equity and common equity of the Reorganized Debtor as further described in this Restructuring Term Sheet.<br><br>On the Plan Effective Date, each holder of an allowed claim or allowed interest, as applicable, shall receive under the Plan the treatment described in this Restructuring Term Sheet in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's allowed claim or allowed interest, except to the extent different treatment is agreed to among the Reorganized Debtor, the GDA, and the holder of such allowed claim or allowed interest. For the avoidance of doubt, any action required to be taken by the Debtor on the Plan Effective Date pursuant to this Restructuring Term Sheet may be taken on the Plan Effective Date or as soon as is reasonably practicable thereafter in consultation with the GDA. |

| Treatment of Claims and Interests under Chapter 11 Plan | |
|---|---|
| **Claim** | **Proposed Treatment** |
| **Administrative Expense Claims and Priority Claims:** | Except to the extent that a holder of an allowed administrative expense claim or an allowed priority claim agrees to a less favorable treatment, each holder of an allowed administrative expense claim or an allowed priority claim will receive, in full and final satisfaction of such allowed claim, cash in an amount equal to such allowed claim on the Plan Effective Date or as soon as practicable thereafter or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. |
| **GDA DIP Obligations; GDA Prepetition Claims:** | On the Plan Effective Date or as soon as practicable thereafter, in full and final satisfaction of all DIP Obligations (as defined under the DIP Term Sheet) and the GDA Prepetition Claim, GDA shall receive:<br><br>• New Preferred (as defined below) in an amount equal to the unpaid principal, interest, fees and expenses of the DIP Obligations and the GDA Prepetition Claims (including, for the avoidance of doubt, prepetition and postpetition interest, fees and expenses accrued thereon); and<br><br>• New Common (as defined below) equal to 100% of all issued New Common on a fully diluted basis (i.e., subject to dilution by the MIP as contemplated by this Restructuring Term Sheet). |
| **McGrath DIP Obligations:** | On the Plan Effective Date or as soon as practicable thereafter, in full and final satisfaction of all obligations owned to McGrath under the $1,000,000 debtor-in-possession loan made by Patricia A. McGrath as approved on an interim basis by the Bankruptcy Court on or about February 2, 2026, under the *Interim Order Granting Debtor's Emergency Motion For Entry Of An Order (I) Authorizing The Debtor To Obtain Post-Petition Financing Pursuant To Sections 105(a), 362, 364(c) Of The Bankruptcy Code, And (II) Granting Super Priority Claims To The DIP Lender Pursuant To Section 364(c)(1) Of The Bankruptcy Code* (ECF No. 62) (the "*McGrath DIP*"), McGrath shall receive New Preferred in an amount equal to the unpaid principal and interest under the McGrath DIP. |
| **Keyhaven Claims:** | On the Plan Effective Date or as soon as practicable thereafter, the Keyhaven Claim shall be deemed cancelled and shall receive New Preferred in an amount equal to $500,000. |
| **E Advance Services Claims; Parkview Claims, Amerifi** | On the Plan Effective Date or as soon as practicable thereafter, E Advance Services, Parkview, Amerifi and 800 Funding shall each receive a cash payment equal to 1% of its applicable allowed claims in full and final satisfaction of any debt owed to E Advance, Parkview, Amerifi and 800 |

| | |
|---|---|
| **Claims; 800 Funding Claims:** | Funding, as applicable; provided that to the extent the aggregate of the allowed claims of E Advance, Parkview, Amerifi and 800 Funding exceeds $3,700,000, the payments shall be reduced pro rata. |
| **Critical Vendor Claims:** | On the Plan Effective Date, certain holders of general unsecured claims will be designated by the Debtor, with the consent of the DIP Lender in its sole discretion, as critical vendors (the "*Critical Vendors*" and the claims held by them, the "*Critical Vendor Claims*"). On the Plan Effective Date or as soon as practical thereafter, each holder of a Critical Vendor Claim shall receive such treatment as shall be determined by the Debtor and the DIP Lender in their sole discretion. |
| **General Unsecured Claims:** | On the Plan Effective Date or as soon as practicable thereafter, each holder of a General Unsecured Claim shall receive, except to the extent such holder agrees to less favorable treatment, its *pro rata* share of $250,000. |
| **Existing Equity Interests:** | All Class 8 Existing Equity Interests will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each Holder of a Class 8 Existing Equity Interest will not receive any distribution on account of such Class 8 Existing Equity Interest. |
| **Other Terms Relevant to Chapter 11 Plan Implementation** | |
| **Definitive Documents:** | This Restructuring Term Sheet shall be subject to definitive documentations (the "*Definitive Documents*"). The Definitive Documents shall contain terms, conditions, representations, warranties, and covenants, each customary for the transactions described herein and consistent with the terms of this Restructuring Term Sheet in all respects. Any documents related to the Restructuring Transactions, including any Definitive Documents, shall be subject to the consent rights and obligations set forth in Restructuring Support Agreement and the DIP Loan Documents. Failure to reference such consent rights and obligations as it relates to any document referenced in this Restructuring Term Sheet shall not impair such rights and obligations. |
| **Capital Structure of Reorganized Debtor:** | GDA will form a holding company ("*Holding Company*") to own 100% of the membership interests of Reorganized Debtor.<br><br>At closing, Holding Company equity shall consist of two classes, as follows:<br><br>**Preferred Equity.** Perpetual, non-participating, non-convertible preferred equity issued to. Preferred equity shall have a 3x return ("*New Preferred*"). New Preferred will be issued to GDA, McGrath and Keyhaven as described above.<br><br>**Common Equity.** Common equity ("*New Common*") will be issued to GDA as described above, and to MIP participants as described below. |
| **Exit Loan:** | Senior secured working capital financing facility from GDA or a third-party lender offering more favorable terms of up to $20 million, structured on market terms, including, but not limited to, a first lien security interest. |
| **Tax Matters:** | The Parties shall use commercially reasonable efforts to structure and implement the Restructuring Transactions in a tax efficient and cost-effective manner for the benefit of the Reorganized Debtor, GDA and the DIP Lenders, including with respect to NOLs. The tax structure of the Restructuring Transactions shall be subject to the consent of GDA and the DIP Lenders. The Debtor shall promptly take all actions as are reasonably necessary to implement such tax structure. |

4

| | |
|---|---|
| **Restructuring Expenses:** | Except as otherwise provided in, and subject to the notice requirements of, the DIP Orders, the Company shall pay the reasonable and documented prepetition and post-petition fees and expenses of any advisors to GDA and the DIP Lenders pursuant to the DIP Term Sheet. |
| **Amendments:** | This Restructuring Term Sheet may be amended only by a written agreement executed and delivered by the Company, GDA and the DIP Lender and to the extent required under the Bankruptcy Code, the approval of the Bankruptcy Court after notice and a hearing. |
| **Conditions Precedent:** | The occurrence of the Plan Effective Date shall be subject to the following conditions precedent, unless otherwise waived in accordance with the terms of the Plan: |
| | i. The Debtor shall have neither proposed nor signified its support for an alternative plan of reorganization that is not supported by GDA and the DIP Lender and no event or condition shall have occurred which with the passage of time or the giving of notice or both would constitute a default or event of default under the DIP Facility; |
| | ii. The Bankruptcy Court shall have entered the DIP Orders, which shall be in full force and effect and no Event of Default or condition which, with the passage of time or giving of notice, would become an Event of Default shall have occurred and continue to exist under the DIP Loan Documents including, but not limited to, a failure to comply with the milestones set forth in the DIP Term Sheet; |
| | iii. The Definitive Documents shall (a) be consistent with the consent rights, terms and conditions set forth in this Restructuring Term Sheet and DIP Loan Documents, and otherwise approved by the applicable parties thereto consistent with their respective consent and approval rights set forth therein, and (b) have been executed or deemed executed and delivered by each party thereto, and any conditions precedent related thereto shall have been satisfied or waived by the applicable party or parties; |
| | iv. The Debtor shall have paid, in full and in cash, all reasonable and documented fees and expenses, including professional fees and expenses, GDA and the DIP Lenders, including, for the avoidance of doubt, the Restructuring Expenses; |
| | v. The Bankruptcy Court shall have entered the Confirmation Order and the Confirmation Order shall not have been reversed, stayed, modified, or vacated on appeal; |
| | vi. All actions, documents, and agreements constituting the applicable Definitive Documents, including any exhibits, schedules, amendments, modifications or supplements thereto, shall have been executed and/or effectuated, and shall be in form and substance materially consistent with and subject to the consent rights set forth in the Restructuring Support Agreement and the DIP Loan Documents; |
| | vii. (a) Any and all requisite governmental, regulatory, and third-party approvals and consents shall have been obtained or waived, not be subject to unfulfilled conditions, and be in full force and effect, and (b) all applicable waiting periods shall have expired or terminated, in each case under each foregoing clause of (a) and (b), without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on the Restructuring Transactions, or the financial benefits of such Restructuring Transactions to the GDA; and |
| | viii. No court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, preventing or prohibiting the consummation of the Restructuring Transactions, the Restructuring Term Sheet or any of the Definitive Documents contemplated thereby. |
| **Milestones:** | The Debtor shall comply with the Milestones set forth in the DIP Term Sheet. |

5

| | |
|---|---|
| **Break-Up Fee** | In the event that a transaction contemplated hereby does not close on the Plan Effective Date as set forth in this Restructuring Term Sheet (except as otherwise agreed by the DIP Lender), DIP Lender shall be entitled to be paid a break-up fee of $2,500,000 (the "***Break-Up Fee***"). |
| **Unexpired Leases and Executory Contracts:** | As of and subject to the occurrence of the Plan Effective Date, and the payment of any applicable cure amount, and subject to the express written consent of GDA, all executory contracts and unexpired leases to which any of the Debtor are parties shall be deemed rejected, unless such contract or lease (i) was previously assumed or rejected by the Debtor, pursuant to a Final Order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to reject filed by the Debtor on or before the Confirmation Date, or (iv) is specifically designated by the GDA as a contract or lease to be assumed.  The treatment of any subsidiaries of the Debtor shall be in the discretion of the DIP Lender. |
| **Governance and New Organizational Documents:** | Prior to the start of the Confirmation hearing, the Debtor and Holding Company shall adopt new or revised charters, limited liability company operating agreements, or other organization documents, as applicable, acceptable to GDA and the DIP Lender, each in their sole discretion, which documents will become effective as of the Plan Effective Date. <br><br> On the Plan Effective Date, a New Board shall be appointed in accordance with the terms of the New Organizational Documents, and the identity of the New Board shall be set forth in the Plan Supplement to the extent known at the time of filing. <br><br> Certain terms concerning the corporate structure and governance of the Reorganized Debtor are described on **Annex 3** attached to this Restructuring Term Sheet. |
| **Management Incentive Plan; KERP:** | The Plan will provide for the establishment of a post-emergence management incentive plan on the Plan Effective Date (the "***MIP***").  Up to 10% of the New Common of Holding Company, on a fully diluted basis, will be reserved for issuance in connection with the MIP, with the terms of the MIP, including the vesting schedule and participants to be determined by the New Board. <br><br> The New Board shall be authorized to allocate, in its discretion, aggregate bonuses of up to $1,000,000 in connection with the closing to key Company employees. <br><br> The New Board shall establish a post-emergence pool ("***Phantom Preferred Pool***") reserved for payment of bonuses to key employees (subject to continued employment) pari passu with the New Preferred, including in respect of liquidation preference, which Phantom Preferred Pool shall equal 2.5% of the amounts paid to GDA and McGrath as holders of New Preferred. Payments under the Phantom Preferred Pool shall be made at the same time as the holders of New Preferred receive payments pursuant to the New Preferred. |
| **Vesting of Assets in the Reorganized Debtor:** | On the Plan Effective Date, except as otherwise set forth in the Plan, pursuant to sections 1141(b)–(c) of the Bankruptcy Code, all assets of the Debtor, including all Retained Claims and Causes of Action, shall vest in the Reorganized Debtor, as applicable, free and clear of all liens, Claims, and encumbrances.  The Reorganized Debtor shall retain all rights to commence and pursue the Retained Claims and Causes of Action. |
| **Discharge; Releases; Debtor Releases; Consensual Releases; Exculpation; and Injunction:** | The Plan shall: (i) provide for the discharge of all Claims and liabilities that are subject to discharge to the fullest extent permitted under the Bankruptcy Code; (ii) contain customary release and exculpation provisions, including releases by the Debtor and consensual third-party releases, in form and substance reasonably acceptable to the Debtor and the released party, GDA and the DIP Lender (who shall grant reciprocal releases to the Debtor, and the other parties listed below who are receiving releases from the Debtor) to the extent such parties vote in favor of the Plan described herein and agree to provide releases to the Debtor, GDA and the DIP Lenders, Keyhaven, Amerifi, Parkview, 800 Funding, and E Advance Services; and (iii) contain customary injunction provisions. |

6

**<u>Annex 1</u>**

| Certain Defined Terms | |
|---|---|
| **Term** | **Definition** |
| "*Bankruptcy Code*" | Means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (as amended, modified, or supplement from time to time). |
| "*Claim*" | Has the meaning ascribed to it in section 101(5) of the Bankruptcy Code. |
| "*Plan Effective Date*" | Means the date on which all conditions precedent to the occurrence of the effective date of the Plan shall have been satisfied or waived in accordance with the Plan. |
| "*Retained Claims and Causes of Action*" | Means all Claims and causes of action of the Debtor and its estate, other than any Claims or causes of action that are released under the Plan. |

7

**Annex 2**
**DIP Term Sheet**

8

**Annex 3**
**Governance Term Sheet**

| | |
|---|---|
| *Governance Documents*: | The Fifth Amended and Restated Limited Liability Company Agreement of Pat McGrath Cosmetics LLC dated June 29, 2021 (as amended, the "***LLC Agreement***") and any other relevant and/or existing corporate governance agreements or documents shall be amended and restated to reflect additional provisions set forth in the Restructuring Term Sheet, the Plan or other Definitive Documents.  The Company shall be wholly owned and managed by the Holding Company. |
| | The Holding Company shall be formed and corporate governance agreements or documents filed and entered into to reflect the provisions set forth in the Restructuring Term Sheet, the Plan or other Definitive Documents. |
| *Management; Voting*: | The Holding Company shall be managed by a board of managers ("***New Board***").  The New Board will be comprised of up to five (5) directors, as follows: |

- Up to four (4) directors appointed by GDA, including a Chairperson; and
- Company CEO.

The New Board shall appoint officers of the Company.

| | |
|---|---|
| *Transfers*: | <u>Permitted Transfers</u>.  Customary permitted transfers only to certain permitted transferees (affiliates). |
| | <u>Drag-Along</u>.  Holders of more than 50% of the New Common shall have pro rata drag-along rights with respect to a change of control or sale of all or substantially all assets on the same terms and subject to the same conditions as the dragging equityholders. |
| | <u>Tag-Along</u>.  If an equityholder proposes to sell 25% or more of the New Common or New Preferred of the Holding Company, each other equityholder shall have tag-along rights on a pro rata basis. |
| *Right to Participate in Future Rounds:* | Common equityholders shall have pre-emptive rights with respect to future equity issuances on a pro rata basis subject to customary carve-outs. |
| *Reports*: | Significant equityholders shall receive annual audited financials and K-1s. The Holding Company shall hold an annual meeting for common equityholders. |

**Exhibit B**

Restructuring Term Sheet (Redline)

CONFIDENTIAL
FOR DISCUSSION PURPOSES ONLY
BR DRAFT ~~2/11/2026~~4/14/2026

## PAT MCGRATH COSMETICS LLC
## RESTRUCTURING TERM SHEET

This term sheet (together with all schedules, annexes and exhibits hereto, the "***Restructuring Term Sheet***") sets forth the principal terms of a proposed comprehensive restructuring (the "***Restructuring***" or "***Restructuring Transaction***") of the existing capital structure of Pat McGrath Cosmetics LLC (collectively, the "***Company***" or the "***Debtor***" and, upon emergence from chapter 11, the "***Reorganized Debtor***"), which will be consummate in the Company's case under chapter 11 pursuant to title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*. (the "***Bankruptcy Code***") filed on January 22, 2026  (the "***Petition Date***") in the United States Bankruptcy Court for the Southern District of Florida (the "***Chapter 11 Cases***" and such court, the "***Bankruptcy Court***") pursuant to a chapter 11 plan containing terms set forth herein.[1]

THIS RESTRUCTURING TERM SHEET DOES NOT CONSTITUTE (NOR WILL IT BE CONSTRUED AS) AN OFFER OR ACCEPTANCE WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE.  ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.  NOTHING CONTAINED IN THIS RESTRUCTURING TERM SHEET SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL THE OCCURRENCE OF THE AGREEMENT EFFECTIVE DATE ON THE TERMS DESCRIBED HEREIN, DEEMED BINDING ON ANY OF THE PARTIES TO THE RESTRUCTURING SUPPORT AGREEMENT.

THIS RESTRUCTURING TERM SHEET IS THE PRODUCT OF SETTLEMENT DISCUSSIONS AMONG THE COMPANY, PAT MCGRATH, GDA (AS DEFINED BELOW) AND THE DIP LENDER (AS DEFINED BELOW). ACCORDINGLY, THIS RESTRUCTURING TERM SHEET IS PROTECTED BY RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY OTHER APPLICABLE STATUTES OR DOCTRINES PROTECTING THE USE OR DISCLOSURE OF CONFIDENTIAL SETTLEMENT DISCUSSIONS.

THIS RESTRUCTURING TERM SHEET DOES NOT PURPORT TO SUMMARIZE ALL OF THE TERMS, CONDITIONS, REPRESENTATIONS, WARRANTIES, AND OTHER PROVISIONS WITH RESPECT TO THE TRANSACTIONS DESCRIBED HEREIN, WHICH TRANSACTIONS WILL BE SUBJECT TO THE COMPLETION OF DEFINITIVE DOCUMENTS INCORPORATING THE TERMS SET FORTH HEREIN AND THE CLOSING OF ANY TRANSACTION SHALL BE SUBJECT TO THE TERMS AND CONDITIONS SET FORTH IN SUCH DEFINITIVE DOCUMENTS AND THE APPROVAL RIGHTS OF THE PARTIES SET FORTH HEREIN AND IN SUCH DEFINITIVE DOCUMENTS, IN EACH CASE, SUBJECT TO THE TERMS HEREOF.

| Material Terms of the Restructuring Transaction | |
| --- | --- |
| **Term** | **Description** |
| **Company:** | Pat McGrath Cosmetics LLC, a New York limited liability company |

---

[1] Capitalized terms used but not defined herein or in **Annex 1** hereto have the meanings given to such terms in the DIP Term Sheet.

| | |
|---|---|
| **Claims and Interests to be Restructured:** | The Debtor's prepetition capital structure consists of:<br><br>**GDA Prepetition Claims.** Consisting of any and all claims held by GDA PMG Funding LLC ("*GDA*") as of the petition date including, but not limited to, all claims acquired from TVT Capital Source and TVTCap, all claims acquired from Settle Funding LLC and all additional amounts funded directly by GDA, in each case inclusive of all principal, interest, costs and fees accrued thereon as of and after the Petition Date, but excluding the amount rolled-up as part of the DIP Financing;<br><br>**Keyhaven Claims.** Consisting of any and all claims held by Keyhaven Blocker Inc ("*Keyhaven*") inclusive of all principal, interest, costs and fees accrued thereon as of the Petition Date;<br><br>**E Advance Services Claims.** Consisting of any and all claims held by E Advance Services LLC ("*E Advance Services*") inclusive of all principal, interest, costs and fees accrued thereon as of the Petition Date;<br><br>**Parkview Claims.** Consisting of any and all claims held by Parkview Advance LLC ("*Parkview*") inclusive of all principal, interest, costs and fees accrued thereon as of the Petition Date;<br><br>**800 Funding Claims.** Consisting of any and all claims held by 800 Funding LLC ("*800 Funding*") inclusive of all principal, interest, costs and fees accrued thereon as of the Petition Date;<br><br>**Amerifi Claims.** Consisting of any and all claims held by Amerifi Capital LLC ("*Amerifi*") inclusive of principal, interest, costs and fees accrued thereon as of the Petition Date;<br><br>**General Unsecured Claims.** Consisting of any unsecured prepetition Claim against the Debtor that is not an administrative claim, an unsecured priority claim, a GDA Prepetition Claim, a Keyhaven Claim, an E Advance Claim, a Parkview Claim, an 800 Funding Claim, an Amerifi Claim, a Critical Vendor Claim (as defined below) or an unsecured Claim otherwise subordinated or entitled to priority under the Bankruptcy Code (the "*General Unsecured Claims*"); and<br><br>**Existing Equity Interests.** Consisting of all Class 8 existing equity interests in the Company. ("*Existing Equity Interests*"). |
| **DIP Financing:** | Prior to or following the Petition Date, the Debtor will enter into a credit agreement with funds managed by GDA to fund term loans (in such capacity, the "*DIP Lender*") to the Company, which will come in the form of debtor-in-possession financing (the "*DIP Facility*") consistent with the term sheet attached hereto as **Annex 2** (the "*DIP Term Sheet*") and otherwise acceptable to the DIP Lenders. The Debtor shall use the proceeds of the DIP Facility in accordance with the Approved Budget. The DIP Facility shall consist of up to $10 million in new money loans plus the roll-up of $1.00 of Prepetition GDA Secured Claims for each $1.00 of new money financing authorized under the DIP Facility. The obligations of the Company under the DIP Facility shall be referred to herein as the "*DIP Obligations*". |
| **Overview of Plan:** | The Restructuring Transactions shall be effectuated pursuant to plan of reorganization (the "*Plan*"), which shall be in form and substance acceptable to: (i) the Company; (ii) the DIP Lender; and (iii) GDA, and shall otherwise be subject to a plan of reorganization, disclosure statement and other definitive documents (collectively, the "*Definitive Documents*") acceptable to the Company and GDA.<br><br>Pursuant to the Plan, in exchange for agreeing to equitize the full outstanding amount of the DIP Facility and the Prepetition GDA Secured Claim, GDA will receive, on the Plan Effective Date (to be defined therein), preferred equity and common equity of the Reorganized Debtor as further described in this Restructuring Term Sheet.<br><br>On the Plan Effective Date, each holder of an allowed claim or allowed interest, as applicable, shall receive under the Plan the treatment described in this Restructuring Term Sheet in full |

2

| | and final satisfaction, settlement, release, and discharge of and in exchange for such holder's allowed claim or allowed interest, except to the extent different treatment is agreed to among the Reorganized Debtor, the GDA, and the holder of such allowed claim or allowed interest. For the avoidance of doubt, any action required to be taken by the Debtor on the Plan Effective Date pursuant to this Restructuring Term Sheet may be taken on the Plan Effective Date or as soon as is reasonably practicable thereafter in consultation with the GDA. |
|---|---|
| **Treatment of Claims and Interests under Chapter 11 Plan** | |
| **Claim** | **Proposed Treatment** |
| **Administrative Expense Claims and Priority Claims:** | Except to the extent that a holder of an allowed administrative expense claim or an allowed priority claim agrees to a less favorable treatment, each holder of an allowed administrative expense claim or an allowed priority claim will receive, in full and final satisfaction of such allowed claim, cash in an amount equal to such allowed claim on the Plan Effective Date or as soon as practicable thereafter or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. |
| **GDA DIP Obligations; GDA Prepetition Claims:** | On the Plan Effective Date or as soon as practicable thereafter, in full and final satisfaction of all DIP Obligations (as defined under the DIP Term Sheet) and the GDA Prepetition Claim, GDA shall receive:<br><br>• New Preferred (as defined below) in an amount equal to the unpaid principal, interest, fees and expenses of the DIP Obligations and the GDA Prepetition Claims (including, for the avoidance of doubt, prepetition and postpetition interest, fees and expenses accrued thereon); and<br><br>• New Common (as defined below) equal to ~~65~~100% of all issued New Common on a fully diluted basis (i.e., ~~assuming full issuance of the MIP and the other issuances of New Common~~<u>subject to dilution by the MIP as</u> contemplated by this Restructuring Term Sheet). |
| **McGrath DIP Obligations:** | On the Plan Effective Date or as soon as practicable thereafter, in full and final satisfaction of all obligations owned to McGrath under the $1,000,000 debtor-in-possession loan made by Patricia A. McGrath as approved on an interim basis by the Bankruptcy Court on or about February 2, 2026, under the *Interim Order Granting Debtor's Emergency Motion For Entry Of An Order (I) Authorizing The Debtor To Obtain Post-Petition Financing Pursuant To Sections 105(a), 362, 364(c) Of The Bankruptcy Code, And (II) Granting Super Priority Claims To The DIP Lender Pursuant To Section 364(c)(1) Of The Bankruptcy Code* (ECF No. 62) (the "***McGrath DIP***"), McGrath shall receive New Preferred in an amount equal to the unpaid principal and interest under the McGrath DIP. |
| **Keyhaven Claims:** | On the Plan Effective Date or as soon as practicable thereafter, the Keyhaven Claim shall be deemed cancelled and shall receive New Preferred in an amount equal to $500,000. |
| **E Advance Services Claims; Parkview Claims, Amerifi Claims; 800 Funding Claims:** | On the Plan Effective Date or as soon as practicable thereafter, E Advance Services, Parkview, Amerifi and 800 Funding shall each receive a cash payment equal to 1% of its applicable allowed claims  in full and final satisfaction of any debt owed to E Advance, Parkview, Amerifi and 800 Funding, as applicable; provided that to the extent the aggregate of the allowed claims of E Advance, Parkview, Amerifi and 800 Funding exceeds $3,700,000, the payments shall be reduced pro rata. |
| **Critical Vendor Claims:** | On the Plan Effective Date, certain holders of general unsecured claims will be designated by the Debtor, with the consent of the DIP Lender in its sole discretion, as critical vendors (the "***Critical Vendors***" and the claims held by them, the "***Critical Vendor Claims***").  On the Plan Effective Date or as soon as practical thereafter, each holder of a Critical Vendor Claim shall receive such treatment as shall be determined by the Debtor and the DIP Lender in their sole discretion. |

3

| | |
|---|---|
| **General Unsecured Claims:** | On the Plan Effective Date or as soon as practicable thereafter, each holder of a General Unsecured Claim shall receive, except to the extent such holder agrees to less favorable treatment, its *pro rata* share of $250,000. |
| **Existing Equity Interests:** | ~~On the Plan~~All Class 8 Existing Equity Interests will be canceled, released, and extinguished as of the Effective Date, ~~all~~and will be of no further force or effect, and each Holder of a Class 8 Existing Equity Interest ~~shall be cancelled, and holders of Existing Equity Interests shall receive, in the aggregate, 5% of the New Common, which New Common shall be distributed as determined by the Company in consultation with the DIP Lender~~will not receive any distribution on account of such Class 8 Existing Equity Interest. |
| **Other Terms Relevant to Chapter 11 Plan Implementation** ||
| **Definitive Documents:** | This Restructuring Term Sheet shall be subject to definitive documentations (the "***Definitive Documents***").  The Definitive Documents shall contain terms, conditions, representations, warranties, and covenants, each customary for the transactions described herein and consistent with the terms of this Restructuring Term Sheet in all respects.  Any documents related to the Restructuring Transactions, including any Definitive Documents, shall be subject to the consent rights and obligations set forth in Restructuring Support Agreement and the DIP Loan Documents.  Failure to reference such consent rights and obligations as it relates to any document referenced in this Restructuring Term Sheet shall not impair such rights and obligations. |
| **Capital Structure of Reorganized Debtor:** | GDA will form a holding company ("***Holding Company***") to own 100% of the membership interests of Reorganized Debtor. <br><br> At closing, Holding Company equity shall consist of two classes, as follows: <br><br> **Preferred Equity.**  Perpetual, non-participating, non-convertible preferred equity issued to.  Preferred equity shall have a 3x return ("***New Preferred***").  New Preferred will be issued to GDA~~and~~, McGrath and Keyhaven as described above. <br><br> **Common Equity.**  Common equity ("***New Common***") will be issued to GDA as described above, and to ~~McGrath and~~ MIP participants as described below. |
| **Exit Loan:** | Senior secured working capital financing facility from GDA or a third-party lender offering more favorable terms of up to $20 million, structured on market terms, including, but not limited to, a first lien security interest. |
| **Tax Matters:** | The Parties shall use commercially reasonable efforts to structure and implement the Restructuring Transactions in a tax efficient and cost-effective manner for the benefit of the Reorganized Debtor, GDA and the DIP Lenders, including with respect to NOLs.  The tax structure of the Restructuring Transactions shall be subject to the consent of  GDA and the DIP Lenders.  The Debtor shall promptly take all actions as are reasonably necessary to implement such tax structure. |
| **Restructuring Expenses:** | Except as otherwise provided in, and subject to the notice requirements of, the DIP Orders, the Company shall pay the reasonable and documented prepetition and post-petition fees and expenses of any advisors to GDA and the DIP Lenders pursuant to the DIP Term Sheet. |
| **Amendments:** | This Restructuring Term Sheet may be amended only by a written agreement executed and delivered by the Company, GDA and the DIP Lender and to the extent required under the Bankruptcy Code, the approval of the Bankruptcy Court after notice and a hearing. |
| **Conditions Precedent:** | The occurrence of the Plan Effective Date shall be subject to the following conditions precedent, unless otherwise waived in accordance with the terms of the Plan: <br><br> i.    The Debtor shall have neither proposed nor signified its support for an alternative plan of reorganization that is not supported by GDA and the DIP Lender and no event or condition shall have occurred which with the passage of time or the giving of notice or |

4

|  | |
|---|---|
|  | both would constitute a default or event of default under the DIP Facility; |
|  | ii. The Bankruptcy Court shall have entered the DIP Orders, which shall be in full force and effect and no Event of Default or condition which, with the passage of time or giving of notice, would become an Event of Default shall have occurred and continue to exist under the DIP Loan Documents including, but not limited to, a failure to comply with the milestones set forth in the DIP Term Sheet; |
|  | iii. The Definitive Documents shall (a) be consistent with the consent rights, terms and conditions set forth in this Restructuring Term Sheet and DIP Loan Documents, and otherwise approved by the applicable parties thereto consistent with their respective consent and approval rights set forth therein, and (b) have been executed or deemed executed and delivered by each party thereto, and any conditions precedent related thereto shall have been satisfied or waived by the applicable party or parties; |
|  | iv. The Debtor shall have paid, in full and in cash, all reasonable and documented fees and expenses, including professional fees and expenses, GDA and the DIP Lenders, including, for the avoidance of doubt, the Restructuring Expenses; |
|  | v. The Bankruptcy Court shall have entered the Confirmation Order and the Confirmation Order shall not have been reversed, stayed, modified, or vacated on appeal; |
|  | vi. All actions, documents, and agreements constituting the applicable Definitive Documents, including any exhibits, schedules, amendments, modifications or supplements thereto, shall have been executed and/or effectuated, and shall be in form and substance materially consistent with and subject to the consent rights set forth in the Restructuring Support Agreement and the DIP Loan Documents; |
|  | vii. (a) Any and all requisite governmental, regulatory, and third-party approvals and consents shall have been obtained or waived, not be subject to unfulfilled conditions, and be in full force and effect, and (b) all applicable waiting periods shall have expired or terminated, in each case under each foregoing clause of (a) and (b), without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on the Restructuring Transactions, or the financial benefits of such Restructuring Transactions to the GDA; and |
|  | viii. No court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, preventing or prohibiting the consummation of the Restructuring Transactions, the Restructuring Term Sheet or any of the Definitive Documents contemplated thereby. |
| **Milestones:** | The Debtor shall comply with the Milestones set forth in the DIP Term Sheet. |
| **Break-Up Fee** | In the event that a transaction contemplated hereby does not close on the Plan Effective Date as set forth in this Restructuring Term Sheet (except as otherwise agreed by the DIP Lender), DIP Lender shall be entitled to be paid a break-up fee of $2,500,000 (the "***Break-Up Fee***"). |
| **Unexpired Leases and Executory Contracts:** | As of and subject to the occurrence of the Plan Effective Date, and the payment of any applicable cure amount, and subject to the express written consent of GDA, all executory contracts and unexpired leases to which any of the Debtor are parties shall be deemed ~~assumed~~rejected, unless such contract or lease (i) was previously assumed or rejected by the Debtor, pursuant to a Final Order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to reject filed by the Debtor on or before the Confirmation Date, or (iv) is specifically designated by the ~~GDAas~~GDA as a contract or lease to be ~~rejected~~assumed. The treatment of any subsidiaries of the Debtor shall be in the discretion of the DIP Lender. |

5

| Governance and New Organizational Documents: | Prior to the start of the Confirmation hearing, the Debtor and Holding Company shall adopt new or revised charters, limited liability company operating agreements, or other organization documents, as applicable, acceptable to GDA and the DIP Lender, each in their sole discretion, which documents will become effective as of the Plan Effective Date.

On the Plan Effective Date, a New Board shall be appointed in accordance with the terms of the New Organizational Documents, and the identity of the New Board shall be set forth in the Plan Supplement to the extent known at the time of filing.

Certain terms concerning the corporate structure and governance of the Reorganized Debtor are described on **Annex 3** attached to this Restructuring Term Sheet. |
| --- | --- |
| **Management Incentive Plan; KERP:** | The Plan will provide for the establishment of a post-emergence management incentive plan on the Plan Effective Date (the "***MIP***").  Up to 10% of the New Common of Holding Company, on a fully diluted basis, will be reserved for issuance in connection with the MIP, with the terms of the MIP, including the vesting schedule and participants to be determined by the New Board.  ~~Pat McGrath shall not participate in the MIP.~~

The New Board shall be authorized to allocate, in its discretion, aggregate bonuses of up to $1,000,000 in connection with the closing to key Company employees ~~(other than McGrath)~~.

The New Board shall establish a post-emergence pool ("***Phantom Preferred Pool***") reserved for payment of bonuses to ~~McGrath (as set out below) and other~~ key employees (subject to continued employment) pari passu with the New Preferred, including in respect of liquidation preference, which Phantom Preferred Pool shall equal ~~5~~2.5% of the amounts paid to GDA and McGrath as holders of New Preferred.  Payments under the Phantom Preferred Pool shall be made at the same time as the holders of New Preferred receive payments pursuant to the New Preferred. |
| ~~**Pat McGrath Common Equity and Employment Agreement:**~~ | ~~On the Plan Effective Date, the Company shall issue 20% of the New Common to McGrath, of which 17% shall be fully vested.  The remaining 3% shall vest annually over three (3) years assuming McGrath remains employed by the Company.~~

~~On the Plan Effective Date, the Company shall enter into a new or amended Employment Agreement with Pat McGrath as its Founder and Chief Creative Officer.  The terms of such Employment Agreement shall be as follows:~~

~~**Salary.**  US $1,500,000 per annum.   Annual bonus eligibility shall be in the sole discretion of the New Board.~~

~~**Term.**  The Plan Effective Date until December 31, 2029.  Severance (subject to release of claims) equal to salary for the lesser of (i) the remainder of the term and (ii) three (3) years upon termination by the Company without cause or by McGrath for good reason (each as defined in the employment agreement).~~

~~**Phantom Preferred Pool.**  Issuance of interest in the Phantom Preferred Pool equal to 50% of the pool (i.e., 2.5% of the amounts paid to GDA and McGrath under the New Preferred).~~

~~The responsibilities and obligations for Pat McGrath shall be specifically set out in the employment agreement (and/or ancillary documentation), including obligations for additional signatories and written pre-approval by the New Board for actions by Pat McGrath, certain restrictive covenants (e.g. nondisclosure, noncompete, nonsolicitation of customers/employees, post-employment cooperation and intellectual property assignment).  Pat McGrath shall assign and contribute to the Company the agreements related to the arrangements with Streeters and all other similar existing arrangements and collaborations other than the agreement with LVMH. All future arrangements and collaborations shall be in the name of and for the benefit of the Company.  All such arrangements shall be managed by the Company, including approval of expenses.  All expenses with respect to such arrangements shall be the responsibility of the Company and all rights and consideration with respect to such arrangements shall be for the benefit of the Company.   All expenses with respect to the LVMH arrangement shall be the~~ |

6

| | |
|---|---|
| | ~~sole responsibility of Pat McGrath.~~ |
| **Vesting of Assets in the Reorganized Debtor:** | On the Plan Effective Date, except as otherwise set forth in the Plan, pursuant to sections 1141(b)–(c) of the Bankruptcy Code, all assets of the Debtor, including all Retained Claims and Causes of Action, shall vest in the Reorganized Debtor, as applicable, free and clear of all liens, Claims, and encumbrances.  The Reorganized Debtor shall retain all rights to commence and pursue the Retained Claims and Causes of Action. |
| **Discharge; Releases; Debtor Releases; Consensual Releases; Exculpation; and Injunction:** | The Plan shall: (i) provide for the discharge of all Claims and liabilities that are subject to discharge to the fullest extent permitted under the Bankruptcy Code; (ii) contain customary release and exculpation provisions, including releases by the Debtor and consensual third-party releases, in form and substance reasonably acceptable to the Debtor and the released party, GDA and the DIP Lender (who shall grant reciprocal releases to the Debtor, ~~Pat McGrath,~~ and the other parties listed below who are receiving releases from the Debtor) to the extent such parties vote in favor of the Plan described herein and agree to provide releases to the Debtor, ~~Pat McGrath,~~ GDA and the DIP Lenders, ~~[~~ Keyhaven~~]~~, Amerifi, Parkview, 800 Funding, and E Advance Services; and (iii) contain customary injunction provisions. |

8

**ACKNOWLEDGED AND AGREED**:

**DEBTOR**:

**PAT MCGRATH COSMETICS LLC**


By:_____
Name:  Dame Patricia McGrath
Title:   Founder

By:_____
Dame Patricia McGrath

**DIP LENDER**:

**GDA PMG FUNDING LLC**

By:_____

Name:

Title:

## Annex 1

| Certain Defined Terms | |
|---|---|
| **Term** | **Definition** |
| "***Bankruptcy Code***" | Means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, modified, or supplement from time to time). |
| "***Claim***" | Has the meaning ascribed to it in section 101(5) of the Bankruptcy Code. |
| "***Plan Effective Date***" | Means the date on which all conditions precedent to the occurrence of the effective date of the Plan shall have been satisfied or waived in accordance with the Plan. |
| "***Retained Claims and Causes of Action***" | Means all Claims and causes of action of the Debtor and its estate, other than any Claims or causes of action that are released under the Plan. |

**<u>Annex 2</u>**
**DIP Term Sheet**

10

**Annex 3**
**Governance Term Sheet**

| | |
|---|---|
| *Governance Documents*: | The Fifth Amended and Restated Limited Liability Company Agreement of Pat McGrath Cosmetics LLC dated June 29, 2021 (as amended, the "**LLC Agreement**") and any other relevant and/or existing corporate governance agreements or documents shall be amended and restated to reflect additional provisions set forth in the Restructuring Term Sheet, the Plan or other Definitive Documents.  The Company shall be wholly owned and managed by the Holding Company. |
| | The Holding Company shall be formed and corporate governance agreements or documents filed and entered into to reflect the provisions set forth in the Restructuring Term Sheet, the Plan or other Definitive Documents. |
| *Management; Voting*: | The Holding Company shall be managed by a board of managers ("**New Board**").  The New Board will be comprised of up to five (5) directors, as follows: |

- ~~Three (3~~Up to four (4) directors appointed by GDA, including a Chairperson; and

- ~~Pat McGrath for so long as she holds at least 50% of the New Common issued to her at closing; and~~

- Company CEO.

~~To the extent Pat McGrath determines not to accept the position on the New Board, but has the right to such position, at any time, Pat McGrath shall have the right to be an observer to the New Board.~~

The New Board shall appoint officers of the Company~~, including a CEO, CFO, CMO and CTO~~.

| | |
|---|---|
| *Transfers*: | Permitted Transfers.  Customary permitted transfers only to certain permitted transferees (affiliates). |
| | Drag-Along.  Holders of more than 50% of the New Common shall have pro rata drag-along rights with respect to a change of control or sale of all or substantially all assets on the same terms and subject to the same conditions as the dragging equityholders. |
| | Tag-Along.  If an equityholder proposes to sell 25% or more of the New Common or New Preferred of the Holding Company, each other equityholder shall have tag-along rights on a pro rata basis. |
| *Right to Participate in Future Rounds:* | ~~Equityholders~~Common equityholders shall have pre-emptive rights with respect to ~~(i)~~ future equity issuances on a pro rata basis subject to customary carve-outs~~, (ii) future debt issuance in which GDA is a lender~~. |
| *Reports*: | ~~Equityholders~~Significant equityholders shall receive annual audited financials and K-1s. The Holding Company shall hold an annual meeting for common equityholders. |
| *~~Registration Rights~~*: | ~~Non-majority equityholders to have customary piggy-back registration rights.~~ |

11