**ORDERED in the Southern District of Florida on April 21, 2026.**

Laurel M. Isicoff, Judge
United States Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br><br>PAT MCGRATH COSMETICS LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-10772-LMI |

**ORDER (I) APPROVING THE DEBTOR'S DISCLOSURE STATEMENT, (II) CONFIRMING PLAN OF REORGANIZATION OF PAT MCGRATH COSMETICS LLC PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE, AND (III) GRANTING *EXPEDITED* MOTIONS TO MODIFY PLAN OF REORGANIZATION**

THIS MATTER came before the Bankruptcy Court for hearing on April 13, 15, and 17, 2026 (together, the "**Combined Hearing**" or "**Confirmation Hearing**") to consider the *First Amended Disclosure Statement for Plan of Reorganization of Pat McGrath Cosmetics LLC Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise

[1] The last four digits of Pat McGrath Cosmetics LLC's tax identification number are 3615 and its mailing address is 29 East 19th Street, 8th Floor, New York, NY 10003.

modified from time to time) [Dkt. No. 126] (the "**Disclosure Statement**"), the *First Amended Plan of Reorganization of Pat McGrath Cosmetics LLC Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time) [Dkt. No. 128] (as modified by the Modify Motions, the "**Plan**"), the *Debtor's Memorandum of Law in Support of an Order Approving the Debtor's Disclosure Statement for, and Confirming, First Amended Plan of Reorganization of Pat McGrath Cosmetics LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 205] (the "**Confirmation Brief**"), and the *Debtor's Expedited Motion(s) to Modify Plan of Reorganization* [Dkt. Nos. 216 and 231] (together, the "**Modify Motions**"); and the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and confirmation of the Plan and other evidence presented at the Confirmation Hearing and the record of the Chapter 11 Case establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor; the Bankruptcy Court makes and issues the following findings of fact and conclusions of law, and orders (generally, this "**Confirmation Order**"):

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

A. Findings of Fact and Conclusions of Law. The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made

applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

B. Jurisdiction. The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the District Court's general order of reference. Confirmation of the Plan and approval of the Disclosure Statement is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

C. Judicial Notice. The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Case maintained by the clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Case. The evidentiary record at the Combined Hearing, the declarations filed in connection therewith, the contents of the Plan and the Disclosure Statement, the brief filed in support of the Plan, and the Bankruptcy Court's judicial notice of the complete record of the Chapter 11 Case supports the findings of fact and conclusions of law set forth herein.

D. Resolution of Objections. Three objections to confirmation were filed - by Keyhaven PMG Blocker, Inc. ("**Keyhaven**") at Docket No. 182, the United States Trustee at Docket No. 204, and by TLogistics B.V. ("**TLogistics**") at Docket No. 158[2]. Any objections to confirmation of the Plan or approval of the Disclosure Statement that were resolved on the record at the Combined Hearing are hereby resolved and the grounds for such resolutions are hereby incorporated by reference. All unresolved objections, statements, informal objections, and

[2] Although the TLogistics objection was filed late, the Court addressed, and overruled, the objection at the Combined Hearing.

reservations of rights, if any, related to the Plan, the Disclosure Statement, or confirmation of the Plan are hereby overruled on the merits.

E. Burden of Proof. As the proponent of the Plan, the Debtor has the burden of proving that the applicable elements of section 1129(a) of the Bankruptcy Code are satisfied by a preponderance of the evidence, the applicable evidentiary standard for confirmation of a Chapter 11 plan. The Debtor has met its burden and the Plan may be confirmed.

F. Adequacy of Notice. As evidenced by the Combined Hearing Notice and the certificate of service therefor, proper, timely, adequate, and sufficient notice of, and a reasonable opportunity to object or otherwise be heard regarding the Disclosure Statement, the Plan, and the Combined Hearing, including, without limitation, the vesting of Assets free and clear of all Liens, Claims, charges, encumbrances, or other interests, together with the deadline and procedures to object to approval of the Disclosure Statement and confirmation of the Plan, have been provided to all parties in interest in the Chapter 11 Case in accordance with sections 102(1), 363(b) and (f), and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3020, 6004(a), and 9006, the Local Rules of the Bankruptcy Court, the procedural due process requirements of the United States Constitution, all other applicable laws and rules, and in accordance with the Debtor's fiduciary duties. No other or further notice of, opportunity to object to, or other opportunity to be heard regarding the Disclosure Statement, the Plan (including the transactions contemplated therein), or of the entry if this Order is necessary or shall be required.

G. Adequacy of the Disclosure Statement. For the reasons stated on the record, the Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy laws, rules, and regulations, and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and

used in section 1126(b) of the Bankruptcy Code) with respect to the Debtor, the Plan, and the transactions contemplated therein. The filing of the Disclosure Statement with the clerk of the Bankruptcy Court satisfied Bankruptcy Rule 3016(b). The Disclosure Statement provides Holders of Claims and other entities with sufficient notice of the injunction, exculpation, and release provisions contained in Article VIII of the Plan, satisfaction of the requirements of Bankruptcy Rule 3016(c).

H. Adequacy of the Solicitation Procedures. The procedures used by the Debtor to solicit and tabulate votes to accept or reject the Plan, as approved in the Scheduling Order as defined and described in the Confirmation Brief and Proponent's Reports, were appropriate and complied with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and guidelines, including any and all relevant exemptions from and exceptions to the registration requirements of the Securities Act.

I. Approval of the Modifications. The Modifications (as defined in the Modify Motions) set forth in the Modify Motions complied with section 1127 of the Bankruptcy Code and do not adversely affect the treatment of the Holder of any Claim or Interest entitled to vote under the Plan. The Modifications only affect Dame Patricia McGrath, GDA, and the Holders of Existing Equity Interests. The treatment of all other classes who were deemed to reject the Debtor's Plan also is unchanged. Dame Patricia McGrath and GDA are on notice of the Plan, as modified and Class 8 (Existing Equity Interests) was already deemed to reject the Plan and was receiving the 5% of New Common Equity as a "gift." Removal of that "gift" and removal of Dame Patricia McGrath from the Released Party definition also resolves two confirmation objections raised by Keyhaven and the United States Trustee, namely, respectively, the propriety of gifting in the context of a cramdown and whether the opt-out mechanism as applied to Dame Patricia McGrath

and her affiliates is a proper form of consensual third-party release. Moreover, the Debtor, GDA, and other key stakeholders in the Chapter 11 Case spent thousands of hours working out how to best structure a feasible plan that satisfies the requirements of section 1129. While not a factor in determining whether re-solicitation is required, the Court notes that it is undisputed that the Debtor does not have the liquidity to continue its operations for the weeks needed for additional solicitation, if such additional solicitation were required. Accordingly, the Debtor is not required to re-solicit the Plan as modified, and the prior acceptance of the Plan by Holders of Claims and Interests may be applied to, and used in connection with, confirmation of the Plan as modified by the Modifications. Good cause exists to grant the Modify Motions.

J. As shown in the Proponent's Reports, the voting tallies were as follows:

| Class No. | Class Name | Total Number Accepting | Total Number Rejecting | Total Amount Accepting | Total Amount Rejecting | Voting Result |
|---|---|---|---|---|---|---|
| 3 | GDA Prepetition Claims | 1 | 0 | $27,425,180.94 | $0.00 | Accept |
| | | 100% | 0% | 100% | 0% | |
| 4 | Keyhaven Claims | 0 | 1 | $0.00 | $10,000,000.00 | Reject |
| | | 0% | 100% | 0% | 100% | |
| 5 | Merchant Cash Advance Claims | 0 | 0 | $0.00 | $0.00 | N/A |
| | | N/A | N/A | N/A | N/A | |
| 6 | General Unsecured Claims | 16 | 5 | $4,396,373.97 | $1,285,059.34 | Accept |
| | | 76.19% | 23.81% | 77.38% | 22.62% | |

K. <u>Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10))</u>. As set forth in Article III of the Plan, Classes 3 through 6 are Impaired Classes of Claims entitled to vote pursuant to the Plan, and Class 3 (GDA Prepetition Claims) has voted to accept the Plan. Therefore, at least one Class of Claims that is Impaired under the Plan has accepted the Plan, as determined without including any acceptance of the Plan by any insider. Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

L. <u>Originally Class 6 voted to reject the Plan, but the Court granted the Debtor's Motion for Entry of an Order Approving the Debtor's Tabulation of Untimely Ballot Cast in</u>

Support of the Plan [Dkt. No. 226] to allow a late-filed ballot accepting plan filed by Creditor S. Axelrod Co. [Dkt. No. 225]. By virtue of the S. Axelrod Co. ballot, Class 6 then had the sufficient votes in number and amount to satisfy acceptance in accordance with 11 U.S.C. §1126(c).

M. Feasibility (11 U.S.C. § 1129(a)(11)). The information contained in the Disclosure Statement, and the other evidence presented, proffered, or adduced at the Combined Hearing, including the Confirmation Declaration and Herman Declaration, as supplemented (i) is persuasive and credible, (ii) has not been controverted by any evidence, and (iii) establishes Confirmation is not likely to be followed by need for further reorganization. The Reorganized Debtor has sufficient assets and property (including all interests, rights, and privileges related thereto) (collectively, the "**Assets**") to accomplish its tasks under the Plan and has made adequate provisions to ensure the consummation of the Plan, including the distributions to be made to creditors and the establishment and funding of the Liquidating Trust. The Plan, therefore, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

N. Plan Supplement Documents. The Plan Supplement (including as subsequently modified, supplemented, or otherwise amended), complies and is consistent with the terms of the Plan and the Bankruptcy Code, and the Debtor provided good and proper notice of the filing in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order, and all other applicable laws, rules, and regulations. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. All Holders of Claims who voted to accept the Plan and who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified and supplemented by the Plan Supplement. The transmittal and notice of the Plan Supplement (and all documents identified therein) were appropriate and satisfactory based upon the circumstances of the Chapter 11 Case and were

conducted in good faith. The Court notes that the Debtor has reserved its rights to alter, amend, update, or modify the Plan Supplement before and up to the Effective Date; provided that such alteration, amendment, update, or modification shall not be inconsistent with the terms of this Confirmation Order or the terms of the Plan. No order or further notice with respect to the Plan Supplement (and all documents identified therein) is necessary or shall be required, including any amendment, modification, or supplement thereto, so long as consistent with, or not contradicted by, the terms of the Plan. For the avoidance of doubt, the Plan Transaction Documents shall not include an employment agreement between the Reorganized Debtor and Dame Pat McGrath, an Equity Subscription Agreement or an Intellectual Property Assignment Agreement.

O. Compliance with Bankruptcy Code Requirements (11 U.S.C. §§ 1129(a)(1) and 1129(a)(2)). The Debtor has complied with and the Plan, the Disclosure Statement, and Solicitation Procedures comply with the applicable provisions of the Bankruptcy Code, including but not limited to sections 1122, 1123, 1125, 1127, and 1129 of the Bankruptcy Code, and accordingly, the Plan should be confirmed. The Modifications set forth in the Modify Motions are consistent with section 1127 of the Bankruptcy Code and do not adversely affect the treatment of the Holder of any Claim or Interest under the Plan (including, but not limited, to those Classes who were permitted to vote on the Plan), other than Dame Patricia McGrath and GDA.

P. Settlement, Releases, Exculpation, Injunction, and Cancellation of Liens. The Plan describes certain releases granted by the Debtor (the "**Debtor Release**") and certain releases by Holders of Claims and Interests treated under the Plan (the "**Holder Release**"), each as more specifically described in the Plan, and the Plan describes certain exculpation for the Exculpated Parties (the "**Exculpation Provision**"), a release of liens (the "**Release of Liens**"), and an injunction (the "**Injunction Provision**").

Q. The United States Trustee has objected to the Holder Release which provides for the release of certain third parties, including GDA, because the Plan provides that any Holder of a Claim or Interest is deemed to consent to the Holder Release unless such Holder of a Claim or Interest opts out of the Holder Release. The Court has considered the objection of the United States Trustee, as well as the case law that has developed since the Supreme Court decided *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), which cases debate whether and to what extent any consensual third-party release is permissible under the Bankruptcy Code, and whether the "opt out" approach can be viewed as actual consent. The Court will address in more detail in a separate memorandum opinion (the "Memorandum Opinion") why the Court has determined that opt out is an appropriate way to determine consent for a third-party release, with certain limitations noted herein and in the Memorandum Opinion.

R. The Bankruptcy Court has jurisdiction under sections 1334(a) and 1334(b) of title 28 of the United States Code and authority under section 105 of the Bankruptcy Code to approve each of the Debtor Release, the Holder Release, the Exculpation Provision, the Release of Liens, and the Injunction Provision, in each case as set forth or modified herein. As has been established based upon the evidence presented at the Combined Hearing and supported by the record in this case, such provisions (a) were given in exchange for good, valuable, and adequate consideration after due notice and opportunity for hearing, (b) are appropriately tailored under the facts and circumstances of the Chapter 11 Case, (c) were integral to the agreements among the various parties in interest and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (d) confer substantial benefits on the Estate, (e) are fair, equitable, and reasonable, and (f) are in the best interests of the Debtor, its Estate, and parties in interest. Further, the failure to implement the Debtor Release, Holder Release, Exculpation

Provision, the Release of Liens, and Injunction Provision would impair the Debtor's ability to confirm and implement the Plan, as GDA has stated that, but for these provisions, it is not willing to proceed with its commitments to reorganization, without which commitments there is no possible avenue to reorganization. In accordance with the foregoing, the Debtor Release, Holder Release, Exculpation Provision, the Release of Liens, and Injunction Provision are appropriate under the circumstances of this Chapter 11 Case and consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable laws, rules, and regulations. Without limitation of the generality of the foregoing, and as further detailed in the Memorandum Opinion, the mechanism by which Holders of Claims were allowed to opt out of the Holder Release constituted a consensual release under Federal bankruptcy law because such releases and the opportunity to opt out were conspicuously disclosed in the Confirmation Hearing Notice, the Ballots and the Disclosure Statement, and Holders of Claims were given due and adequate notice of their opportunity to opt out of such releases. Thus, such releases are appropriate and consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable laws, rules, and regulations and not prohibited by *Harrington v. Purdue Pharma L.P.* However, as set forth on the record at the Combined Hearing, and as further addressed in the Memorandum Opinion, any party who (i) affirmatively voted to reject the Plan, (ii) was in a class that was conclusively deemed to reject the Plan, or (iii) voted to accept the Plan but nevertheless checked the box to opt out, shall not grant the Holder Release.

S. Plan Implementation Restrictions. The Plan Implementation Restrictions (as defined below), based on the record in this Chapter 11 Case, including the first day declaration filed under Dkt No. 8, and based on the evidence presented, proffered, or adduced at the Combined Hearing, are found to be reasonable in scope and duration, supported by adequate consideration,

necessary to preserve the value of the Debtor's Estate and carryout the terms of the Plan, enforceable to the extent authorized under applicable bankruptcy and non-bankruptcy law, and an essential and integral part of implementation of the Plan in accordance with sections 105(a), 1123, and 1142 of the Bankruptcy Code.

T. Good Faith (11 U.S.C. § 1129(a)(3)). The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtor proposed the Plan in good faith and not by any means forbidden by law. Each of the Debtor and GDA have conducted themselves during the Chapter 11 Case and negotiated the Plan and related transactions in good faith as such term is used in the Bankruptcy Code including, for the avoidance of doubt, sections 363(m) and 1129(a)(3) of the Bankruptcy Code. In so determining, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Case, the contents of and circumstances leading to the creation of the Plan itself, the process leading to the Confirmation of the Plan, and the transactions contemplated thereunder and to be implemented pursuant thereto. The Plan was the product of arm's-length negotiations between GDA, the Debtor, and other parties in interest and reflects a fair allocation of the value of the Debtor's Assets amongst the various classes of creditors which reflects the relative priority of their respective claims and interests including, but not limited to, GDA's status as the DIP Lender and the Debtor's first priority, senior secured prepetition creditor as acknowledged by the Debtor and Keyhaven[3] in the DIP Orders. The Chapter 11 Case was filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtor to orderly effectuate the reorganization set forth in the Plan and to maximize the value of the

[3] Prepetition and postpetition Keyhaven agreed to subordinate its originally senior secured lien to GDA's prepetition liens and postpetition liens on account of a prepetition loan extended by GDA and to the DIP Loan, up to a certain dollar amount. The total amount of GDA's claims as DIP Lender and prepetition lender does not exceed the amount to which Keyhaven agreed to subordinate, and therefore GDA is the senior secured first priority lender.

Debtor's Estate to achieve the best interests of the Debtor's creditors and not by any means forbidden by applicable law. Keyhaven argued that the Plan was not filed in good faith because neither the Debtor nor GDA reached out to Keyhaven to negotiate its treatment under the Plan, and because the Plan provides almost all the benefits of reorganization to GDA, and without consideration of Keyhaven's secured claim. As the Court held at the Combined Hearing, and as further addressed herein, GDA's postpetition financial contributions both as the DIP Lender, and the financial commitments set forth in the Plan, provide the possibility of some, rather than no distribution to unsecured creditors, as well as saving the jobs of over 70 employees. Moreover, the evidence shows that Keyhaven does not have a secured claim. Thus Keyhaven has failed to show that the Plan fails to satisfy 11 U.S.C. § 1129(a)(3).

U. Only One Plan (11 U.S.C. § 1129(c)). There is only one Plan being filed. Accordingly, the Plan satisfies section 1129(c) of the Bankruptcy Code.

V. Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). In the Chapter 11 Case, the Bankruptcy Court authorized the Debtor to retain and employ certain professionals pursuant to section 327 of the Bankruptcy Code. Article II.B of the Plan requires that all payments of professional fees and reimbursement of expenses for services rendered prior to the Effective Date be subject to approval by the Bankruptcy Court as reasonable pursuant to sections 330 and 503(b)(4) of the Bankruptcy Code. Accordingly, because the allowed amounts for payment of professional fees and expenses are subject to approval under the Plan to the extent that the Bankruptcy Court has not entered an order otherwise, the Plan satisfies section 1129(a)(4) of the Bankruptcy Code.

W. Retiree Benefits (11 U.S.C. § 1129(a)(13)). As applicable, to the extent required under section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, the

Reorganized Debtor shall continue to pay retiree benefits, as such term is defined in and at the level required pursuant to section 1114 of the Bankruptcy Code. Accordingly, section 1129(a)(13) of the Bankruptcy Code is hereby satisfied.

X. No Rate Changes (11 U.S.C. § 1129(a)(6)). The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. As a result, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

Y. Non-Applicability of Certain other Sections (11 U.S.C. §§ 1129(a)(14), 1129(a)(15), and 1129(a)(16)). Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Case. The Debtor does not owe any domestic support obligations, is not an individual, and is a moneyed, business, or commercial corporation or trust. As a result, sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Plan.

Z. Treatment of Keyhaven Claims, Merchant Cash Advance Claims, and General Unsecured Claims (11 U.S.C. §§ 1123, 1129(a), and 1129(b)). The treatment of the Keyhaven Claims, Merchant Cash Advance Claims, and General Unsecured Claims under the Plan is fair, equitable, and otherwise appropriate under the Bankruptcy Code. The evidence presented, including in and through the Confirmation Brief, the Confirmation Declaration and projections attached thereto, the Herman Declaration, the Proponent Report, the Liquidation Analysis, and the Debtor's amended Schedules filed at Docket No. 194, as well as the testimony of David Herman and Gary Lembo at the Combined Hearing, as supplemented by their respective Supplemental Declarations, reflect the proper collateral value of Keyhaven's secured claim is $0, and establish that each such Claim shall receive, under the Plan, at least as much as the Holder of such Claim

would receive in a hypothetical liquidation of the Debtor under Chapter 7 of the Bankruptcy Code. For the avoidance of doubt, based on the record of this Chapter 11 Case and at the Combined Hearing, the value of the collateral securing the GDA's claims as DIP Lender and prepetition senior secured lender, comprised of all Assets of the Debtor's Estate, is no more than the amount of GDA's senior secured claims[4]. Accordingly, the Bankruptcy Court further finds and concludes that the Plan provides each such Claim with treatment that is at least as favorable as, and no less than, the recovery that would be received in a Chapter 7 liquidation, and therefore satisfies the applicable requirements of sections 1123, 1129(a), and 1129(b) of the Bankruptcy Code. Additionally, the Modifications contained in the Modify Motions do not negatively affect the treatment of any of the Classes with Holders of Claims entitled to vote.

AA. Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)). Article III of the Plan designates nine separate Classes of Claims and Interests, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, Professional Claims, and Priority Tax Claims, which are addressed in Article III of the Plan and, pursuant to section 1123(a)(1) of the Bankruptcy Code, need not be designated). As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims and Interests within the applicable Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan. Such classifications were not implemented for improper purposes, and such Classes do not unfairly discriminate between or among Holders of Claims or Interests. The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

[4] Avoidance actions under 11 U.S.C. §§501, et. seq, are not subject to GDA's liens, but if such causes of action exist, they will be part of the Liquidating Trust, and available for pro rata distribution to unsecured creditors together with the proceeds of other Retained Causes of Action, which are subject of GDA's liens.

BB. Treatment of Potential Priority Tax Claims (11 U.S.C. § 1129(a)(9)(C)). As of the date hereof, the Debtor has advised the Court that it is not aware of any Allowed Priority Tax Claims that are presently due and payable. Notwithstanding the foregoing, the Bankruptcy Court further finds and concludes that the Plan, including the establishment and administration of the Liquidating Trust, provides for the treatment of Priority Tax Claims of the kind specified in section 507(a)(8) of the Bankruptcy Code, to the extent any such claims arise and become Allowed, by providing for, on account of such claim, regular installment payments in cash (i) of the total value, as of the Effective Date, equal to the Allowed amount of such claim, (ii) over a period ending no later than five years after the Petition Date, and (iii) in a manner not less favorable than the manner attributed to the General Unsecured Claims, in accordance with, and in full satisfaction of, the requirements of section 1129(a)(9)(C)(i)–(iii) of the Bankruptcy Code. The Debtor represented to the Bankruptcy Court that, as of the date of the Confirmation Hearing, priority claims of taxing authorities had been filed in an amount not exceeding $10,251.52.

CC. "Cram Down" Requirements (11 U.S.C. § 1129(b)). Because Keyhaven and Holders of Merchant Cash Advance Claims are receiving their distributions under the Plan as a gift from GDA out of GDA's collateral, cram down of those rejecting classes is not required or is otherwise satisfied. In addition, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that certain Impaired Classes were deemed to reject the Plan or voted to reject the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code[5]. First, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. Second, the Plan is fair and equitable with respect

5 Keyhaven argued that the treatment of its claim required satisfaction of the cramdown requirements of section 1129(b)(2)(A). However, as the Court stated at the Combined Hearing, and as set forth herein, by virtue of the unrebutted evidence, Keyhaven's claim is completely unsecured, and therefore the cramdown requirements of section 1129(b)(2)(A) are not triggered.

to each Impaired Class that did not vote to accept the Plan. The Plan has been proposed in good faith, is reasonable, and meets the requirements that no Holder of a Claim or Interest that is junior to each such Class that did not vote to accept the Plan will receive or retain any property under the Plan on account of such junior Claim or Interest and no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest. The Holders of Existing Equity Interests will have each of their Interests canceled, released, and extinguished as of the Effective Date and will be of no further force or effect, and will not receive any distribution on account of such Class 8 Existing Equity Interests. Nor will such Holders receive a gift of New Common Equity as proposed under the Plan pursuant to the Modifications. Accordingly, the Plan is fair and equitable towards all Holders of Claims and Interests in Impaired Classes that did not vote to accept the Plan. Third, the Plan is consistent with the absolute priority rule and does not discriminate unfairly with respect to Impaired Classes that did not vote to accept the Plan because similarly situated Holders will receive substantially similar treatment on account of their Claims or Interests in such Class. The Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

DD. Directors and Officers; Liquidating Trustee (11 U.S.C. §§ 1123(a)(7) and 1129(a)(5)). The Debtor disclosed the identity of, and the materials terms of engagement for, the members of the Reorganized Debtor's New Board and the Liquidating Trustee pursuant to the Plan and Plan Supplement. Accordingly, the Plan satisfies the requirements of sections 1123(a)(7) and 1129(a)(5) of the Bankruptcy Code. The existing board of directors and managers and any other governing bodies of the Debtor will be deemed to have resigned on and as of the Effective Date, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or Entity.

EE. “Best Interest Test” (11 U.S.C. § 1129(a)(7)). Each Holder of an Impaired Claim or Impaired Interest has either accepted the Plan or will receive or retain on account of such Claim or Interest, property of a value on the Effective Date of the Plan that is not less than the amount that such Holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

FF. Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)). Consistent with section 1123(b)(2) of the Bankruptcy Code, Article V of the Plan provides for the rejection of each of the Debtor’s Executory Contracts or Unexpired Leases unless such Executory Contract or Unexpired Lease: (i) has previously been assumed or rejected by the Debtor, pursuant to a Final Order of the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (iii) is the subject of a motion to assume filed by the Debtor on or before the Effective Date, or (iv) is specifically designated by the Debtor as a contract or lease to be assumed on the Schedule of Assumed Executory Contracts and Unexpired Leases. For the avoidance of doubt, pursuant to any such modification, the Debtor may designate Executory Contracts or Unexpired Leases to be assumed or rejected including, but not limited to, by modifying or supplementing the Schedule of Executory Contracts or Unexpired Leases to be assumed and included in the Plan Supplement up to and including the Effective Date.

GG. The Debtor’s Curing of Defaults for Assumed and Assigned Contracts (11 U.S.C. §§ 363, 365, and 1123(d)). The Debtor has exercised reasonable business judgment in determining to assume each of the executory contracts and unexpired leases set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases. Each assumption of an executory contract or unexpired lease in accordance with Article V of the Plan, the Plan Supplement, this

Confirmation Order or otherwise shall be legal, valid, and binding upon the Debtor and all non-Debtor counterparties to such executory contract and unexpired lease, all to the same extent as if such assumption and assignment had been authorized and effectuated pursuant to a separate order of the Bankruptcy Court that was entered pursuant to section 365 of the Bankruptcy Code prior to the Confirmation date. The Debtor has, to the extent necessary, met all of the requirements of sections 363, 365 and 1123(d) of the Bankruptcy Code in connection with the assumption and assignment of the executory contracts and unexpired leases included in the Schedule of Assumed Executory Contracts and Unexpired Leases and Cure Amounts. The Bankruptcy Court finds that the payment of the cure costs under each assumed executory contract and unexpired lease, as provided in the Plan Supplement, is reasonable and appropriate and is deemed to fully satisfy the Debtor's obligations under sections 365(b)(1) and 365(f) of the Bankruptcy Code. The cure costs for each assumed and assigned executory contracts and unexpired leases will be paid in accordance with the terms of the Plan. The Debtor has demonstrated adequate assurance of future performance of each assumed executory contracts and unexpired leases within the meaning of section 365 of the Bankruptcy Code by promising to perform the Debtor's obligations under such executory contract and unexpired lease after the Effective Date, and providing evidence of the financial wherewithal to do so.

HH. Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)). The Plan provides for the payment of all fees payable by the Debtor pursuant to 28 U.S.C. § 1930(a) on and after the Effective Date until the entry of a final decree in the Debtor's Chapter 11 Case or until the Chapter 11 Case is converted or dismissed. The Plan, therefore, satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

II. Proper Purpose (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, and there has been no filing by any Governmental Unit asserting any such attempted avoidance. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

JJ. New Equity. The issuance of the New Common Equity Interests and New Preferred Equity Interests are an essential element of the Plan and are in the best interests of the Debtor, the Estate, and Holders of Claims and Interests.

KK. Exit Facility Documents. The Exit Facility Documents are an essential element of the Plan, are necessary for confirmation and consummation of the Plan, and are critical to the overall success and feasibility of the Plan. Entry into the Exit Facility Documents on the same or better terms as set forth in the Plan Supplement is in the best interest of the Debtor, its Estate, and all Holders of Claims or Interests. The Debtor has exercised reasonable business judgment in determining to enter into the Exit Facility Documents and has provided sufficient and adequate notice of the material terms of each such exit facility, which material terms were filed as part of the Plan, Plan Supplement, and related pleadings. The terms and conditions are fair and reasonable and were negotiated in good faith and at arm's-length, and any credit extended, letters of credit issued, and loans made pursuant to the Exit Facility Documents shall be deemed to have been extended, assumed and assigned, issued, or made in good faith. All fees due and payable under the Exit Facility Documents are hereby approved and the Debtor is authorized and directed to pay such fees in accordance with, and to the extent they become payable, under the terms of the Exit Facility Documents. The Debtor is authorized and directed, without further approval of the Bankruptcy Court or any other party, to execute and deliver all agreements, guarantees,

instruments, mortgages, control agreements, certificates, and other documents and to perform their obligations thereunder, including, without limitation, the payment or reimbursement of any fees, expenses, losses, damages, or indemnities. The Exit Facility Documents shall be secured by senior, perfected liens and security interests on substantially all of the Reorganized Debtor's Assets in accordance with the terms thereof.

LL. Liquidating Trust Agreement. The Liquidating Trust Agreement is an essential element of the Plan, is necessary for confirmation and consummation of the Plan, and is critical to the overall success and feasibility of the Plan. Entry into the Liquidating Trust Agreement on the same or better terms as set forth in the Plan Supplement is in the best interest of the Debtor, its Estate, and all Holders of Claims or Interests. The terms and conditions of the Liquidating Trust Agreement are fair and reasonable and were negotiated in good faith and at arm's length. Nonetheless, the Court does not approve the "Waiver of Trial by Jury" in section 7.15 of the form of Liquidation Trust Agreement filed as part of the Plan Supplement, and such provision shall be stricken from the final form of such agreement which is executed by the parties thereto.

**BASED ON THE FOREGOING, IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1. Findings of Fact and Conclusions of Law. The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

2. Notice of the Combined Hearing, Solicitation, and Tabulation. Notice of the Combined Hearing, the Solicitation Procedures (as defined in the Confirmation Brief), and the

tabulation of submitted Ballots complied with the Scheduling Order and Solicitation Procedures, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, uncontroverted, and were in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

3. Disclosure Statement. The Disclosure Statement: (a) complies in all respects with any disclosure requirements of any applicable non-bankruptcy law, rule or regulation; (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor, the Plan, and the transactions contemplated therein and complies with any additional requirements of the Bankruptcy Code and the Bankruptcy Rules; and (c) is approved in all respects. The Disclosure Statement is **APPROVED** on a final basis.

4. Modify Motions. The Modify Motions are **GRANTED** with one clarification in Article V.C indicated below in italics. Specifically, the following Modifications, as set forth in the Modify Motions, are approved:

A. The Table of Contents on page iv shall be edited to strike the section referencing "Offer of Judgment" in Article VII and the subsequent references shall be appropriately re-lettered.

B. The definition of "Plan Supplement" in Article I.A.73 shall be amended as follows, with **insertions in blue and bold** and ~~deletions in strikethrough and red~~:

> "*Plan Supplement*" means the Plan Transaction Documents and any other documents to be filed, if at all, in a supplement to the Plan in advance of the ~~Confirmation Hearing~~ **Effective Date** ~~no later than~~ **or** such **later** date as may be approved by the Bankruptcy Court on notice to parties in interest that includes the necessary documentation to effectuate the Plan. All Plan Supplement documents shall be subject to the approval of GDA.

C. The "Restructuring Term Sheet" as defined in Article I.A.86 shall refer to the Restructuring Term Sheet attached as **Exhibit A** to the Modify Motion

[Dkt. No. 231] instead of Exhibit A to the DIP Term Sheet and Exhibit C to the Disclosure Statement.[6]

D. The definition of "Released Party" in Article I.A.83 shall be amended as follows, ~~deletions in strikethrough and red~~:

> "*Released Party*" means, collectively, each of the following in their respective capacities as such: ~~(a) Pat McGrath and~~ any persons or Entities retained pursuant to sections 327 and 363 of the Bankruptcy Code~~; and (b) with respect to each of the foregoing Persons and Entities in clause (a), such Person's or Entity's predecessors, successors and assigns, subsidiaries, Affiliates, and all of their respective current and former officers, managers, directors, principals, direct and indirect shareholders, direct and indirect members, advisors, consultants, and employees~~. Notwithstanding anything contained herein or in Plan documents, the Released Parties shall not include any person or entity listed in the Schedule of Retained Causes of Action to be included in the Plan Supplement or any affiliate thereof.

E. Article II.A of the Plan, entitled "Administrative Expense Claims" shall be amended to insert at the end of the section the following sentence: "The Debtor or the Reorganized Debtor, as applicable, shall have until the date that is 90 days after the Effective Date to object to any Administrative Expense Claim asserted on or before the deadline to assert such Administrative Expense Claims."

F. The treatment of Class 8 Existing Equity Interests in Article III.B.8.b shall be amended as follows ~~deletions in strikethrough and red~~:

> *Treatment*: All Class 8 Existing Equity Interests will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and each Holder of a Class 8 Existing Equity Interest will not receive any distribution on account of such Class 8 Existing Equity Interest. ~~Notwithstanding the foregoing, GDA has agreed in its sole and exclusive discretion to provide from its New Common Equity, in the aggregate, a gift of 5% of the New Common~~

[6] A redlined version showing the changes made to the Restructuring Term Sheet is attached as **Exhibit B** to the Modify Motion [Dkt. No. 231].

> ~~Equity to the Holders of Class 8 Existing Equity, which New Common Equity shall be distributed as determined by the Reorganized Debtor in consultation with GDA.~~

G. Each of Article II.C of the Debtor Plan, entitled "GDA DIP Claims," and Article III.B.3.b of the Debtor Plan, governing the treatment of Class 3 GDA Prepetition Claims, shall be amended to strike "65%" and replace it with "100% subject to dilution by the MIP."

H. Article III.B.8.c shall be stricken in its entirety and amended to read as follows:

> *Voting*: Class 8 is Impaired. Each Holder of a Class 8 Existing Equity Interest is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan.

I. Article VIII.B of the Debtor Plan, entitled "Releases by the Debtor," and Article VIII.C of the Debtor Plan, entitled "Releases by Holders of Claims and Interests," shall each be amended to strike the words "Dame Pat McGrath" in their entirety wherever they appear therein.

J. Article IV.K, entitled "Restructuring Transactions," shall be amended to remove the words "the entry into an amended or new employment agreement between the Reorganized Debtor and Pat McGrath" and replace them with "[reserved]".

K. Article V.A of the Plan entitled "Assumption of Executory Contracts and Unexpired Leases" shall be retitled "Rejection of Executory Contracts and Unexpired Leases". It shall further be edited at the end of the first paragraph to insert the following sentence:

> **"Any and all counterparties to a rejected Executory Contract or Unexpired Lease shall have until the date that is 30 days after the Effective Date to assert and file a Proof of Claim for damages arising from such rejection; any such counterparty that fails to timely file a Proof of Claim shall be barred from pursuing such claim."**

L. Article V.B of the Plan entitled "Indemnification" shall be amended to add "From and after the Effective Date" immediately prior to "The New Organizational Documents and the New Equity Documents will provide for the indemnification . . . ."

M. The beginning of Article V.C of the Plan, entitled "Cure of Defaults and Objections to Cure and Assumption" shall be amended as follows, with **insertions in blue and bold** and ~~deletions in strikethrough and red~~:

> The Debtor or the Reorganized Debtor, as applicable, shall pay Cures, if any, on the Effective Date or as soon as reasonably practicable thereafter. **Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the amounts paid or proposed to be paid by the Debtor or the Reorganized Debtor to a counterparty must be filed and served on the Reorganized Debtor on or before 30 days after the Effective Date.** If ~~such~~ **a** Cure dispute **arises and** is not resolved within 7 days of the Reorganized Debtor's receipt of such **request for payment** ~~Cure dispute~~, the counterparty to the applicable assumed Executory Contract or Unexpired Lease shall timely file an objection with the Bankruptcy Court within *an additional 7 days, meaning within* ~~7~~ **14** days **of the initial service of such request for payment on the Reorganized Debtor**. . . . .

N. Article VII.B of the Plan, entitled "Claims Administration Responsibilities" shall be amended as follows:

a. The words "and the Liquidating Trust" shall be inserted between the words "the Reorganized Debtor" and "shall have the sole authority."

b. The following sentence shall be added after the last sentence of Article VII.B: "The deadline for the Reorganized Debtor and/or the Liquidating Trust to take any of the actions set forth in this Article VII.B shall be the date that is 1 year after the Effective Date (the "**Claims Objection Deadline**"), as set forth in the Confirmation Order, or such later date approved by order of the Bankruptcy Court upon a motion filed by the Reorganized Debtor or the Liquidating Trust prior to the expiration of such deadline."

5. Confirmation of the Plan. The Plan is approved in its entirety and **CONFIRMED** under section 1129 of the Bankruptcy Code. The terms of the Plan, including the Modifications thereto, and the Plan Supplement are incorporated by reference into and are an integral part of this

Confirmation Order, and are hereby authorized. The Debtor, Reorganized Debtor, or Liquidating Trustee (as applicable) are authorized and directed to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, and other agreements or documents created in connection with the Plan.

6. Objections to Confirmation of the Plan or Approval of the Disclosure Statement. All objections and all reservations of rights pertaining to Confirmation of the Plan or approval of the Disclosure Statement that have not been withdrawn, waived, or settled are **OVERRULED** in their entirety on the merits.

7. Deemed Acceptance of the Plan as Modified. The Debtor has modified or may modify the Plan from time to time, including, but not limited to, through the Modify Motions, with the consultation and consent in writing by GDA if such modifications impact GDA, to address concerns raised by parties in interest, to make certain nonmaterial clarifications, or to bring about the Effective Date. Such modifications of the Plan were immaterial and comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. Accordingly, no additional solicitation or disclosure was, or, so long as any additional modifications solely impact GDA and do not adversely impact any other Holder of a Claim who voted to accept the Plan, shall, be required on account of any such modifications and all Holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan as modified, revised, supplemented, or otherwise amended. No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of any such modifications of the Plan so long as such additional modifications solely impact GDA and do not adversely impact any other Holder of a Claim that voted in favor of the Plan.

8. Omission of Reference to Particular Plan Provisions. The failure specifically to include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provisions, it being the intent of the Bankruptcy Court that the Plan and any related documents be confirmed and approved in their entirety.

9. Binding Effect. Upon the occurrence of the Effective Date, the terms of the Plan are immediately effective and enforceable and deemed binding on the Debtor, the Reorganized Debtor, any and all Holders of Claims or Interests (regardless of whether such Holders of Claims or Interests have, or are deemed to have, accepted the Plan), the United States Trustee, the bank or banks at which the Debtor maintains bank accounts or debtor in possession bank accounts, all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, and each Entity acquiring property under the Plan.

10. Plan Supplement Documents. The Debtor may alter, amend, update, or modify the Plan Supplement before and up to the Effective Date; provided that such alteration, amendment, update, or modification shall be consistent with the terms of this Confirmation Order or the terms of the Plan. No order or further notice with respect to the Plan Supplement (and all documents identified therein) is necessary or shall be required, including any amendment, modification, or supplement thereto.

11. Plan Transaction Documents. The Debtor, the Reorganized Debtor, and the Liquidating Trust, as applicable, are hereby authorized to enter into the transactions contemplated in and consummate the Plan Transaction Documents, including but not limited to, entry into the Liquidating Trust Agreement and Exit Facility Documents, without further order of this Bankruptcy Court. The Debtor is authorized and directed, without further approval of the

Bankruptcy Court or any other party, to execute and deliver all agreements, guarantees, instruments, mortgages, control agreements, certificates, and other documents and to perform their obligations thereunder, including, without limitation, the payment or reimbursement of any fees, expenses, losses, damages, or indemnities. The Plan Transaction Documents are all approved by the Bankruptcy Court and the Debtor is hereby authorized and directed to execute and deliver all of the Plan Transaction Documents without the need to obtain further approval or order of the Bankruptcy Court. On and after the Effective Date, by virtue of entry of this Confirmation Order, all actions contemplated by the Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtor, or any other Entity or Person. All matters provided for in the Plan involving any corporate action required by the Debtor in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtor or the Debtor's Estate or further order of this Court.

12. Approval of Restructuring Transactions. The Restructuring Transactions contemplated by the Plan and set forth in detail in the Plan Supplement and the Restructuring Term Sheet are hereby approved and authorized as of the date of entry of this Confirmation Order.

13. Establishment of the Liquidating Trust. The Liquidating Trust shall be (a) established as of the Effective Date as a trust under applicable law for the purposes described in the Plan and the Liquidating Trust Agreement. The Liquidating Trust Agreement, substantially in the form of which is filed in the Plan Supplement, is hereby approved, effective as of the Effective Date as is the appointment of the Liquidating Trustee. The Liquidating Trust Assets shall be automatically vested in the Liquidating Trust pursuant to the Plan on the Effective Date. Except as provided in the Plan or otherwise specified in the Liquidating Trust Agreement, the

Liquidating Trustee need not obtain the order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred, or account to the Bankruptcy Court. Except as otherwise provided in the Liquidating Trust Agreement, the Liquidating Trustee shall exercise its business judgment for the benefit of the Liquidating Trust Beneficiaries in order to maximize the value of the Liquidating Trust Assets and distributions, giving due regard to the cost, risk, and delay of any course of action. Notwithstanding the foregoing, the Liquidating Trustee shall have the right to submit to the Bankruptcy Court any question or questions regarding which the Liquidating Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Liquidating Trust with respect to any of the Liquidating Trust Assets, the Liquidating Trust Agreement, or the Plan, including the administration, or distribution of any of the Liquidating Trust Assets. The Bankruptcy Court shall retain jurisdiction and power for such purposes and shall approve or disapprove any such proposed action upon motion by the Liquidating Trust.

14. The Exit Facility. The Exit Facility Documents are all approved by the Bankruptcy Court and the Debtor is hereby authorized and directed to execute and deliver all of the Exit Facility Documents without the need to obtain further approval or order of the Bankruptcy Court. On the Effective Date, all of the Liens and security interests to be granted by the Reorganized Debtor in accordance with the Exit Facility Documents shall (a) be deemed to be granted; (b) be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder; (c) be deemed perfected on the Effective Date without the need for any further action; and (d) not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any

applicable non-bankruptcy law. The Reorganized Debtor and the Persons and Entities granted such Liens and security interests are authorized and directed to make all filings and recordings, and to obtain all governmental approvals and consents, and to take any other actions necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and the Reorganized Debtor shall thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

15. Approval of New Equity Documents. The terms of any New Equity Documents as set forth in the Plan Supplement are approved in all respects. To the extent any New Equity Document is not attached to the Plan Supplement as of the entry of this Confirmation Order, such New Equity Document shall be filed with the Bankruptcy Court prior to the Effective Date, and such New Equity Document is approved to the extent it is consistent with this Confirmation Order, the Plan and the Plan Supplement. The obligations of the Debtor or the Reorganized Debtor related thereto, will, upon execution, constitute legal, valid, binding, and authorized obligations of each of the Debtor or Reorganized Debtor, as applicable, and are enforceable in accordance with their terms and are not in contravention of any state or federal law. On the Effective Date, without any further action by the Bankruptcy Court or the directors, officers, or equity holders of the Reorganized Debtor, the Reorganized Debtor will be and is authorized and directed to enter into the New Equity Documents to which such Reorganized Debtor is contemplated to be a party.

16. Vesting of Assets in the Reorganized Debtor. On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Assets (including all interests, rights, and privileges related thereto) in the Debtor's Estate, all Retained Causes of Action, and any property acquired by the Debtor pursuant to the Plan, including Interests held by the Debtor in any non-Debtor Affiliates, shall vest in the Reorganized Debtor or the Liquidating Trust as provided under the Plan, free and clear of all Liens, Claims, charges, encumbrances, or other interests, unless expressly provided otherwise by the Plan or the Confirmation Order, subject to and in accordance with the Plan.

17. Vesting Free and Clear, and Limitations on Liability. In order to effectuate the vesting of all of Assets in the Debtor's Estate in the Reorganized Debtor and the Liquidating Trust free and clear of all Liens, Claims, charges, encumbrances, or other interests, the Plan shall be deemed to constitute a sale and transfer of such Assets to the Reorganized Debtor or the Liquidating Trust as provided hereunder pursuant to Bankruptcy Code section 363(b) and (f) in exchange for GDA's and the other creditors' and Holders of Equity Interests' agreement to compromise and exchange their Claims and Interests for the consideration they will receive under the Plan. Without limitation of the generality of the immediately preceding sentence, except as provided in the Plan in respect to Claims expressly assumed or required to be paid, treated, or assumed by the Reorganized Debtor pursuant to an order of this Bankruptcy Court, to the fullest extent allowed under applicable bankruptcy and non-bankruptcy law, the Reorganized Debtor shall not be (a) deemed to be a successor to the Debtor (including, but not limited to, for purposes of successor liability), or (b) deemed to have assumed, or be in any way liable for any and all debts, obligations, liabilities or Claims of the Debtor, of any nature whatsoever, whether known or unknown, liquidated or unliquidated, fixed or contingent, mature or unmatured, or asserted or not

asserted. On and after the Effective Date, no Holder of any Liens, Claims, charges, encumbrances, or other Interests in the Assets shall interfere with the Reorganized Debtor's enjoyment of the Assets based on or related to such Liens, Claims, charges, encumbrances, or other Interests or any actions or omissions that the Debtor may take or have taken in the Debtor's Chapter 11 Case and no person shall take any action to prevent, interfere with or otherwise enjoin consummation of the Plan contemplated herein and any such action is hereby forever barred, estopped and permanently enjoined by this Order. All persons or entities that are currently in possession of some or all of the Assets are hereby directed to surrender possession of such Assets to the Reorganized Debtor upon the Effective Date or at such later time that the Reorganized Debtor may request, so long as, in connection with any creditor who qualifies as a Class 1 secured creditor, that creditor is treated in accordance with the Plan. On and after the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restriction of the Bankruptcy Code or the Bankruptcy Rules.

18. Treatment of Executory Contracts and Unexpired Leases. Except as otherwise provided for in this Confirmation Order or other orders of this Bankruptcy Court, entry of the Confirmation Order shall constitute a Bankruptcy Court order (i) approving the assumption of all of the Debtor's Executory Contracts and Unexpired Leases designated as assumed Executory Contracts and Unexpired Leases in the Plan Supplement (which may be altered, amended, modified, or otherwise supplemented by such date as set forth in this Confirmation Order), and (ii) approving the rejection of all of the Debtor's other Executory Contracts and Unexpired Leases.

19. Debtor's Existing Organizational Documents and Termination of Existing Indemnity Obligations. On the Effective Date, the Debtor's existing charters, bylaws, limited liability agreements and similar organizational documents shall be deemed to have been terminated and rejected and the Reorganized Debtor shall not be deemed to have assumed or be otherwise liable for any obligation which the Debtor may have or have had thereunder or otherwise to indemnify any of the Debtor's current or former officers, directors, employees or independent contractors (including any provisions to advance or to pay any costs of defense or any liability on a claim which the Debtor may have had under such organizational documents or otherwise, which has not been asserted prior to Confirmation). The Reorganized Debtor shall neither have, nor assume, any liability which the Debtor may have or have had to provide indemnification for any act, condition, or omission which occurred prior to the Effective Date or for any claim that may be asserted against any of the Debtor's current or former officers, directors, employees or independent contractors based on an act or omission which occurred prior to the Effective Date. For the avoidance of doubt, nothing in the preceding provisions of this paragraph shall impact any insurance coverage that may be in place, if any, for the benefit of, or with respect to, such persons. For the avoidance of doubt, the preceding provisions of this paragraph shall not affect the obligations of the Reorganized Debtor to indemnify the Reorganized Debtor's own directors, officers, employees, and agents to the fullest extent permitted by law pursuant to the New Equity Documents as provided in Article V.B of the Plan and the New Equity Documents.

20. Release, Exculpation, Discharge, and Injunction Provisions. The release, exculpation, discharge, injunction, and related provisions set forth in Article VIII of the Plan shall be, and hereby are, approved and authorized in their entirety, subject in all respects to the Modifications set forth in the Modify Motions, and shall be immediately effective and binding

upon the Effective Date without further action or notice by this Bankruptcy Court, any of the Parties subject to such provisions, or any other party. Except as otherwise expressly provided in the Plan or this Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or this Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Exculpated Parties, or the parties subject to the Debtor Release and the Holder Release: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Upon entry of this Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors,

principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan. Except as otherwise set forth in this Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the Injunction Provisions set forth in Article VIII.D of the Plan. For the avoidance of doubt, unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

21. Comprehensive Settlement of Claims and Controversies. Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good-faith compromise and settlement of all Claims or controversies relating to the rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest. The entry of this Confirmation Order constitutes the Bankruptcy Court’s approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court’s finding that all such compromises or settlements (i) are in the best interests of the Debtor, the Reorganized Debtor, the Estate, and Holders of Claims and Interests; and (ii) are fair, equitable, and reasonable.

22. Reporting Requirements. Until the Effective Date, the Debtor shall continue to file the UST Form 11-MOR, Monthly Operating Report. Within three business days of the Effective Date, the Reorganized Debtor and any other authorized parties who have been charged with administering the Confirmed Plan shall file a Notice of Occurrence of the Effective Date, identifying the Effective Date and indicating that it has occurred. Following the Effective Date of the Confirmed Plan, the Reorganized Debtor and any other authorized parties who have been charged with administering the Confirmed Plan shall file, for the Reorganized Debtor entity, the UST Form 11-PCR, Post Confirmation Report, every calendar quarter and shall timely pay the U.S. Trustee Quarterly Fees until the earlier of: (i) the entry of a Final Decree; (ii) the conversion of the Chapter 11 Case to a case under another chapter; or (iii) the dismissal of the Chapter 11 Case.

23. Exemption from Certain Transfer Taxes and Recording Fees. To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers of property under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales or use tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or

governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

24. Cooperation with the Reorganized Debtor. Pursuant to sections 105(a), 1123, and 1142 of the Bankruptcy Code, and as an essential and integral part of the Plan, from and after the Effective Date, the Debtor, and its Affiliates, agents, successors, assigns, subsidiaries, and all of their respective current and former officers, managers, directors, principals, employees, and independent contractors (including, but not limited to, Dame Patricia McGrath), shall cooperate in good faith with the Reorganized Debtor and GDA, as its principal shareholder, and shall take all reasonable actions requested by the Reorganized Debtor and GDA that are necessary or appropriate to consummate, implement, and administer the Plan in accordance with the terms of this Confirmation Order. Without limiting the foregoing, the Debtor and its affiliates, agents, successors, and assigns, shall provide GDA with such information, documents, certifications, and assistance as may be reasonably requested from time to time in connection with the consummation, implementation, or enforcement of the Plan, subject to any applicable privileges or confidentiality obligations. In the event that any of the Debtor's leases, including, but not limited to, the office space lease at 29 East 19th Street, New York, New York 10003, and the warehouse leases at Elite Packaging (40 Cotters Ln Ste E, East Brunswick, NJ 08816), Absolute Storage LLC (275 W. 96th Street #12E, New York, NY 10025 and 1212 Central Ave. Bridgeport, CT 06607), Scanio Moving and Storage (222 W 37th St, New York, NY 10018), and Mango Storage Limited (Units 14 & 15, Rotherhithe New Rd London SE16 3EH, United Kingdom), are rejected, terminated, or otherwise conclude, each of the Debtor's landlords for such premises shall cooperate and not interfere with the Reorganized Debtor's removal of its personal property from each such premises. However,

nothing in this paragraph is intended to, or shall, impact the rights of any such landlord who qualifies as a Class 1 secured creditor.

25. Plan Implementation Restrictions. Pursuant to sections 105(a), 1123, and 1142 of the Bankruptcy Code, and as an essential and integral part of the Plan, from and after the Effective Date, GDA, on the one hand, and on the other hand, the Debtor, and its Affiliates, agents, successors, assigns, subsidiaries, and all of their respective current and former officers, managers, directors, principals, employees, and independent contractors (including, but not limited to, Dame Patricia McGrath), unless otherwise agreed to in writing, shall not directly or indirectly (a) disparage each other, or (b) defame each other (collectively, the "**Plan Implementation Restrictions**").

26. Retention of Jurisdiction. The provisions governing the retention of jurisdiction set forth in Article XI of the Plan shall be, and hereby are, approved in their entirety. The Bankruptcy Court shall retain exclusive jurisdiction over the matters arising in, and under, and related to, the Chapter 11 Case, as set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code.

27. Objections to Claims and Interests. Pursuant to the Plan, following the Effective Date, the Reorganized Debtor and the Liquidating Trust, as applicable, shall have sole authority to administrate and adjudicate Claims and Interests, and shall have the ability to object to any Claims or Interests listed in any of the Debtor's Schedules and Statements (as defined in the Confirmation Brief), by the Claims Objection Deadline (defined below) and pursuant to Article V.II.B of the Plan. Notwithstanding the filing of any Proof of Claim, or Claim or Interest filed in the Debtor's Schedules and Statements, the Reorganized Debtor and the Liquidating Trust, as applicable, shall be authorized and hold the requisite standing to object to any such Claims or Interests, regardless of designation as contingent, unliquidated, or disputed.

28. Claims Objection Deadline. Notwithstanding anything to the contrary in the Plan, the initial "**Claims Objection Deadline**" shall be the day that is 1 year after the Effective Date.

29. Objections to Administrative Claims. Notwithstanding any order entered or notice given previously in this Chapter 11 Case, the Reorganized Debtor or the Liquidating Trust shall retain the right to object to any administrative or priority claim which has been or may be filed in this Chapter 11 Case provided that any such objection is filed within 90 days of the Effective Date.

30. New Common and New Preferred Exemption. To the maximum extent provided by section 1145(a) of the Bankruptcy Code and applicable non-bankruptcy law, the offering, issuance and distribution of the New Common Equity Interests and the New Preferred Equity Interests under the Plan shall be exempt from registration under section 5 of the Securities Act and to the extent applicable, any other applicable U.S., state or local law and may be resold by Holders thereof without registration, unless the Holder is an "underwriter" (as defined in section 1145(b)(l) of the Bankruptcy Code) with respect to such securities, in each case, subject to the terms of any applicable securities laws. To the extent that section 1145 of the Bankruptcy Code is not available to exempt the securities issued under, or in connection with, the Plan, including, without limitation, the New Common Equity Interests and New Preferred Equity Interests, from registration under section 5 of the Securities Act, other provisions of the Securities Act, including without limitation, section 3(a)(9), section 4(a)(2) or Regulation S of the Securities Act, and state securities laws, to the extent applicable, shall apply to exempt such issuance from the registration requirements of the Securities Act and to the extent applicable, any other applicable U.S. state or local law.

31. New Equity Issuance. On the Effective Date, the Reorganized Debtor shall issue or reserve for issuance the New Common Equity Interests and New Preferred Equity Interests in accordance with the terms of the Plan and the New Equity Documents. The issuance of the New

Common Equity Interests and New Preferred Equity Interests is authorized without the need for further corporate or other action or any consent or approval. All of the New Common Equity Interests and New Preferred Equity Interests issuable under the Plan and this Confirmation Order shall, when so issued, be duly authorized, validly issued, fully paid, and non-assessable. The New Equity Documents shall be binding on all holders of New Common Equity Interests and New Preferred Equity Interests regardless of whether such holder delivers a signature page to the applicable New Equity Documents. The Reorganized Debtor shall not be required to provide further evidence other than the Plan or a Final Order with respect to the treatment of the New Equity Interests under applicable securities laws.

32. Claims Based on Rejection of Executory Contracts or Unexpired Leases. As provided in Article V.C of the Plan, any Proofs of Claim with respect to Claims arising from the rejection of the Debtor's Executory Contracts and Unexpired Leases pursuant to the Plan must be filed no later than **5:00 p.m. (prevailing Eastern Time) on the date that is on or before 30 days after the Effective Date**. Any Proofs of Claim arising from the rejection of the Debtor's Executory Contracts and Unexpired Leases that are not timely filed shall be Disallowed automatically, forever barred from assertion, and shall not be enforceable against the Debtor, without the need for any objection by the Debtor or further notice to or action, order, or approval of the Bankruptcy Court. All Allowed Claims arising from the rejection of the Debtor's Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with the particular provisions of the Plan for such Claims, except to the extent that any rejection claim associated with an Unexpired Lease would qualify as a claim under Class 1 of the Plan.

33. Cure of Defaults and Objections to Cure and Assumption. The Debtor or the Reorganized Debtor, as applicable, shall pay Cures, if any, on the Effective Date or as soon as reasonably practicable thereafter. **Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the amounts paid or proposed to be paid by the Debtor or the Reorganized Debtor to a counterparty must be filed and served on the Reorganized Debtor on or before 30 days after the Effective Date.** If such Cure dispute arises and is not resolved within 7 days of the Reorganized Debtor's receipt of such request for payment, the counterparty to the applicable assumed Executory Contract or Unexpired Lease shall timely file an objection with the Bankruptcy Court within 7 days thereafter, that is, within14 days of the initial service of such request for payment on the Reorganized Debtor.

34. Plan Releases. The releases contained in Article VIII of the Plan are approved and incorporated herein in all respects and shall be immediately effective on the Effective Date without further order or action on the part of this Bankruptcy Court or any other party.

35. Continued Use of Intellectual Property. The Debtor uses and has used in the ordinary course of its business on or prior to the Effective Date in respect of cosmetics, make-up, skin care and accessories for cosmetics and make-up (including the marketing and retailing of the same) (the "**Field**") certain tradenames, trademarks, patents, copyrights, domain names, social media handles, and other intellectual property (the "**PMC Intellectual Property**"), some of which PMC Intellectual Property may be recorded in the name of Dame Patricia McGrath individually or through a non-Debtor affiliate of hers. In the event that the Debtor is not the record holder of any such PMC Intellectual Property and to the extent such PMC Intellectual Property is owned or controlled, directly or indirectly, by Dame Patricia McGrath, the Debtor and the Reorganized

Debtor, as applicable, shall retain an irrevocable and perpetual, exclusive (including as to Dame Patricia McGrath), royalty-free right to continue to use the PMC Intellectual Property in its business in the Field in all countries of the world (including, but not limited to, rights under the Berne Convention or any other treaty or convention). Additionally, pursuant to the Schedule of Assumed Executory Contracts and Unexpired Leases and Cure Amounts, the "**IP Transfer Agreement**" dated June 29, 2018, by and between Dame Patricia McGrath (as assignor) and the Debtor (as assignee) is hereby assumed under the Plan and such assumption is approved and deemed effective in accordance with the Plan. To the extent not addressed in the IP Transfer Agreement or otherwise herein, all other intellectual property or other proprietary rights held by Dame Patricia McGrath and/or her non-Debtor affiliates are and shall be reserved to and retained by Dame Patricia McGrath. Notwithstanding anything to the contrary herein, but subject to the terms of the IP Transfer Agreement, all name, image or likeness rights of Dame Patricia McGrath, including other elements of her persona and identity and all rights of privacy and publicity, shall be retained by and shall remain with Dame Patricia McGrath (collectively, "**DPM NIL Rights**"), provided however that, the Reorganized Debtor shall retain an irrevocable and perpetual, royalty-free non-exclusive right to use such DPM NIL Rights which have been utilized by the Company during Dame Patricia McGrath's employment or other service to the Debtor or the Reorganized Debtor (i) in a manner consistent with the Debtor's or the Reorganized Debtor's use of such DPM NIL Rights while Dame Patricia McGrath was employed or otherwise engaged by the Debtor or the Reorganized Debtor and (ii) subject to the terms of Section 4 of the IP Transfer Agreement, and further provided that the Reorganized Debtor shall not use artificial intelligence, machine learning or similar technology to generate, reproduce, modify, or render any image encompassed

by such DPM NIL Rights, regardless of whether the generated image is realistic, altered or fictionalized.

36. Immediate Binding Effect. Subject to Article XII of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the Plan shall be immediately effective and enforceable to the fullest extent permitted under the Bankruptcy Code and applicable non-bankruptcy law.

37. Conflicts Between the Plan and Other Documents and Orders. Except as set forth in the Plan to the extent that any provision of the Disclosure Statement or any other documents referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided*, *however*, that with respect to any conflict or inconsistency between the Plan and this Confirmation Order, this Confirmation Order shall govern and control.

38. Nonseverability of Plan Provisions upon Confirmation. Each provision of the Plan is (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtor and GDA, except as otherwise provided herein; and (c) nonseverable and mutually dependent. Each provision of this Confirmation Order is nonseverable and mutually dependent on each other term of this Confirmation Order and the Plan.

39. Approval of Conditions Precedent to Effective Date. The conditions precedent to the Effective Date set forth in Article IX.A of the Plan are hereby approved. The Effective Date shall occur upon the satisfaction or waiver of such conditions precedent, as set forth in the Plan and subject to the terms and conditions therein.

40. Effect of Non-Consummation. If the Effective Date does not occur and the Debtor files a notice withdrawing the Plan, then (a) the Plan and this Confirmation Order will be null and

void in all respects; (b) any settlement or compromise embodied in the Plan or this Confirmation Order, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan will be null and void in all respects; and (c) nothing contained in the Plan or this Confirmation Order shall (i) constitute a waiver or release of any Claims, Interests, or Causes of Action, (ii) prejudice in any manner the rights of such Debtor or any other Entity with respect to the Debtor, or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity with respect to the Debtor, and all parties shall revert to the status quo as if this Confirmation Order had not been entered.

41. Substantial Consummation and Acknowledgment of Reservation of Rights. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code. The Debtor's and Reorganized Debtor's, as applicable, rights to argue equitable mootness, statutory mootness, reliance, finality, and lack of prejudice, and any similar arguments, are hereby acknowledged and preserved.

42. Waiver of Stay. For good cause shown, this Confirmation Order shall be effective and enforceable immediately upon its entry by the Bankruptcy Court.

43. Final Order. This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

44. Notice of Entry of Confirmation Order Effective Date. The Debtor shall serve a notice of entry of this Confirmation Order and a notice of the Effective Date (where such notices may constitute a combined notice in the Debtor's discretion) via email, where possible, in accordance with Bankruptcy Rules 2002 and 3020(c) on all creditors, equity holders, and parties having requested notice in the Chapter 11 Case.

45. Reversal. If any of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to receipt of written notice of such order by the Debtor, the Reorganized Debtor, or the Liquidating Trustee. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligations incurred undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, all documents relating to the Plan, and any amendments or modifications to any of the foregoing.

46. Termination of Exclusivity for an Alternative Plan. In the event that it is subsequently determined by a court of competent jurisdiction that the Debtor did not, or does not, have the requisite authority to enter into, propose, or consummate the Plan, or any of the Restructuring Transactions contemplated herein, then, upon such determination and without the need for any further motion or order of the Court: (a) the Debtor's exclusive periods under section 1121 of the Bankruptcy Code shall be deemed immediately terminated (which is automatically set to terminate May 22, 2026); (b) GDA shall be authorized, pursuant to sections 1121(c) and 1109(b) of the Bankruptcy Code, to propose a chapter 11 plan of reorganization (generally, an "**Alternative Plan**"); and (c) any such Alternative Plan proposed by GDA shall not require further solicitation of votes or the approval of an additional disclosure statement and shall be deemed to satisfy the applicable solicitation and disclosure requirements of sections 1125, 1129(a)(1), and 1129(a)(2) of the Bankruptcy Code and the applicable Bankruptcy Rules, *provided that*: (i) such Alternative Plan adopts the Plan confirmed hereby, as GDA may modify or supplement it as necessary to

achieve its purpose; and (ii) no Class entitled to vote under the Plan, as confirmed, is adversely affected by such modified Alternative Plan. Nothing herein shall be construed to permit any modification that would materially and adversely affect the treatment of any impaired Class without compliance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

###

**Copy furnished to :**
Joseph A. Pack, Esq.
*Attorney for the Debtor and Debtor-in-Possession*
Pack Law
4649 Ponce de Leon Boulevard, Suite 405
Coral Gables, Florida 33146
Tel: 305-916-4500
Email: joe@packlaw.com

*Attorney Joseph A. Pack, Esq. is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF pursuant to applicable rules.*