*Tagged opinion*



**ORDERED in the Southern District of Florida on April 21, 2026.**

**Laurel M. Isicoff, Judge**
**United States Bankruptcy Court**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

PAT MCGRATH COSMETICS LLC,

    Debtor.

_____ /

Case No.: 26-10772-BKC-LMI

Chapter 11

## MEMORANDUM OPINION ON OPT-OUT THIRD-PARTY RELEASES INCLUDED IN THE DEBTOR'S FIRST AMENDED PLAN OF <u>REORGANIZATION</u>

This matter came before the Court to consider confirmation of the *First Amended Plan of Reorganization of Pat McGrath Cosmetics LLC Pursuant to Chapter 11 of the Bankruptcy Code* (ECF #128) filed on March 10, 2026 by the Debtor, Pat McGrath Cosmetics LLC (the "Debtor"), as modified by *Debtor's Expedited Motion(s) to Modify Plan of Reorganization* (ECF ##216, 231) (collectively, as modified, the "Plan"), and final approval of the *First Amended Disclosure Statement for Plan of Reorganization of Pat McGrath Cosmetics LLC Pursuant to Chapter 11 of the Bankruptcy Code* (ECF #126) (the "Disclosure

Statement"). After a contested confirmation hearing held on April 13, 2026, and continued to April 15 and April 17, 2026 (collectively, the "Confirmation Hearing"), the Court confirmed the Plan.  The Court has separately entered an order confirming the Plan (ECF #244) (the "Confirmation Order").[1]  This memorandum opinion is entered separately to explain in more detail the Court's ruling with respect to why the opt-out provisions of the Plan (with some exceptions) were approved, thereby finding consent for the third-party releases in the Plan.[2]

Article VIII.C of the Plan, Releases by Holders of Claims and Interests (the "Holder Release"), contains "opt-out third-party releases".  This section provides that a Holder of a Claim or Interest who does not want to be bound by the Holder Release must indicate that such Holder "opts out" of such release. Under the Plan, any Holder that votes for the Plan, that votes to reject the Plan but does not check an "opt-out" box on the ballot, or that does not submit a ballot or an "opt-out" form (provided to all non-voting Holders of Claims and Interests) is deemed to have consented to the Holder Release. This memorandum opinion addresses why and to what extent requiring affirmative opt out of a third-party release constitutes consent.

As the Court ruled  in the Confirmation Order, "the Holder Release is appropriate under the circumstances of this Chapter 11 Case and consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in the Confirmation Order.

[2] This memorandum opinion only addresses the Holder Release.  No party objected to the Exculpation Provision of the Plan, the Debtor Release or the Injunction Provision; the basis for approval of those provisions is set forth in the Confirmation Order.

applicable laws, rules, and regulations.  The mechanism by which Holders of Claims and Existing Equity Interests were allowed to opt out of the Holder Release constituted a consensual release under Federal bankruptcy law because such releases and the opportunity to opt out were conspicuously disclosed in the Confirmation Hearing Notice, the Ballots and the Disclosure Statement, and Holders of Claims and Existing Equity Interests were given due and adequate notice of their opportunity to opt out of such releases.  Thus, such releases are appropriate and consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable laws, rules, and regulations and not prohibited by *Harrington v. Purdue Pharma L.P.,* 603 U.S. 204 (2024). However, as set forth on the record at the Confirmation Hearing, any party who (i) affirmatively voted to reject the Plan, (ii) was in a class that was conclusively deemed to reject the Plan, or (iii) voted to accept the Plan but nevertheless checked the box to opt out, shall not grant the Holder Release."

## FACTUAL BACKGROUND

The Holder Release provision in Article VIII.C of the Plan provides:

**C. Releases by Holders of Claims and Interests**
**Notwithstanding anything contained in this Plan to the contrary, and in all respects subject to the DIP Orders and the Restructuring Term Sheet, as of the Effective Date, for good and valuable consideration, each Releasing Party is deemed to have released and discharged each Released Party, Dame Pat McGrath, GDA, in its capacities both as the Prepetition Lender and the DIP Lender, and Keyhaven from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtor, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including management, ownership, or operation thereof), the Debtor's in- or out-of-court restructuring efforts, the Chapter 11 Case the Disclosure**

3

**Statement, the Plan, or the Restructuring Transaction, contract, instrument, release, or other Plan Transaction Document, agreement, or document created or entered into in connection with the Disclosure Statement, or the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party to the extent such act or omission constituted actual fraud or gross negligence. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any Person or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) Reinstated with respect to, or executed to implement the Plan. For the avoidance of doubt, nothing in this Plan shall release, waive or otherwise limit the rights of all Persons and Entities who have held, hold, or may hold direct, independent Claims against any non-Debtor party without such Person or Entity's consent or deemed consent as provided for in the Plan, Disclosure Statement, any Ballot to vote on the Plan, or order of the Bankruptcy Court.**

On March 11, 2026, the Court entered its *Order (I) Conditionally Approving Debtor's Disclosure Statement, (II) Approving the Solicitation and Voting Procedures With Respect To Confirmation of the Proposed Chapter 11 Plan, and (III) Granting Related Relief* (ECF #132) (the "Conditional Approval Order").

Attached to the Conditional Approval Order as Exhibit 1-B is the Form of Ballots which contain certain instructions through which a claim or interest holder could elect to opt out of the Holder Release:

**IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT,
IT WILL BE BINDING ON YOU WHETHER OR NOT YOU VOTE.**

**THE VOTING DEADLINE IS APRIL 7, 2026.**

<u>Item 1</u>.  The [Class 3, 4, 5, or 6 Claim or Interest].

| Claimant: _____ | Claim Amount: $ _____ |
|---|---|

<u>Item 2</u>.  **Vote on Plan.**

The Holder of the Claim set forth in Item 1 votes to (please check only one; check neither to abstain):

☐ **ACCEPT** (vote FOR) the Plan           ☐    **REJECT** (vote AGAINST) the Plan

---

**IMPORTANT INFORMATION REGARDING
<u>CERTAIN RELEASES BY HOLDERS OF CLAIMS:</u>**

**IF YOU VOTE TO ACCEPT THE PLAN, YOU WILL BE DEEMED TO GRANT THE RELEASES FOUND IN <u>ARTICLE VIII.C</u> OF THE PLAN (REPRODUCED BELOW) REGARDLESS OF WHETHER YOU CHECK THE BOX IN ITEM 3 BELOW.**

**IF YOU ABSTAIN FROM VOTING OR VOTE TO REJECT AND SUBMIT A BALLOT WITHOUT CHECKING THE BOX IN ITEM 3 BELOW, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES SET FORTH IN <u>ARTICLE VIII.C</u> OF THE PLAN.**

**IF YOU FAIL TO SUBMIT A BALLOT, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE RELEASES FOUND IN <u>ARTICLE VIII.C</u> OF THE PLAN.**

**IF YOU ABSTAIN FROM VOTING OR VOTE TO REJECT, YOU MUST OPT OUT OF THE RELEASES PROVIDED IN <u>ARTICLE VIII.C</u> OF THE PLAN BY CHECKING THE BOX IN ITEM 3 BELOW IN ORDER TO NOT BE BOUND BY SUCH RELEASES.**

***<u>IF YOU WISH NOT TO BE BOUND BY THE RELEASES IN ARTICLE VIII.C OF THE PLAN YOU MUST "OPT OUT" BY CHECKING THE BOX IN ITEM 3.</u>***

---

<u>Item 3</u>.  **Important Information Regarding the Proposed Releases.**

Important Information Regarding the Proposed Releases (including the Proposed Releases by Holders of Claims and Interests) are excerpted from the Plan below; please review the Plan and the Disclosure Statement in full.  Moreover, please be advised that the language of the proposed releases included herein may be materially modified at such time that the Plan is confirmed.

5

COMPLETE THIS ITEM 3 ONLY IF YOU ARE ABSTAINING FROM VOTING ON THE PLAN IN ITEM 2 ABOVE.

The Holder of the General Unsecured Claim identified in Item 1 above elects to:

☐ **OPT OUT of the Release in Article VIII.C of the Plan**
**(Releases by Holders of Claims and Interests)**

The United States Trustee objected to the Holder Release on several grounds, including that consent to a third-party release is governed by state law, and that the Plan's opt-out procedure does not comply with either New York or Florida law. The United States Trustee also objected to the location of the opt-out language on the ballot at page 4, arguing that the opt-out language was not in an obvious enough location on the ballot. For the reasons stated on the record at the Confirmation Hearing and as further detailed below, the Court overrules the objection.

## ANALYSIS[3]

### The Third-Party Release

In *Harrington v. Purdue Pharma L.P.,* the Supreme Court held that, outside the asbestos context addressed by 11 U.S.C. §524(g), the Bankruptcy Code "does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants." 603 U.S. at 227. At the same time,

---

[3] The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P."). To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, as conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

the Court emphasized that "[n]othing in what we have said should be construed to call into question *consensual* third-party releases offered in connection with a bankruptcy reorganization plan." *Id.* at 226 (emphasis in original). Thus, after *Purdue*, if consensual third-party releases remain possible[4]; the issue left open is what procedures are sufficient to establish the requisite consent. *Purdue* itself did not answer that question. The Supreme Court expressly declined to "express a view on what qualifies as a consensual release or pass upon a plan that provides for the full satisfaction of claims against a third-party nondebtor." *Id.* In light of that reservation, lower courts have divided over whether silence or failure to act after notice can constitute consent to a third-party release, whether a creditor must affirmatively opt in to consent to a third-party release, or whether some intermediate mechanism may suffice.

**A. Current State of the Law**

The post-*Purdue* decisions that recognize that consent to a third-party release is possible reflect three general approaches.

**Opt-Out**

Some courts have approved opt-out mechanisms as sufficient to establish consent. In *In re Robertshaw US Holding Corp.,* the Bankruptcy Court for the Southern District of Texas approved consensual third-party releases with opt-out provisions, finding them appropriate where parties-in-interest received detailed notice, deadlines to object, voting deadlines, and all ballots provided claimants opportunity to opt out. 662 B.R. 300, 323 (Bankr. S.D. Tex. 2024); *see*

---

[4] There are some courts who have held that, based on the reasoning of *Purdue,* no third-party releases, even those which the court has found consensual, may be included in a chapter 11 bankruptcy plan.

7

*also Epstein v. Container Store Group, Inc. (In re Container Store Group, Inc.)*, 2026 WL 395898 (S.D. Tex. 2026) (With an exception for two classes, upholding confirmation of an "opt-out" plan, finding that the opportunity to opt out of releases in favor of non-debtors made the releases consensual and therefore permissible under *Purdue*.).

The Bankruptcy Court for the Southern District of New York reached a similar result in *In re Spirit Airlines, Inc.,* holding that *Purdue* did not foreclose opt-out releases where creditors received clear notice and a meaningful opportunity to decline the release. 668 B.R. 689 (Bankr. S.D.N.Y. 2025). And in *In re LaVie Care Centers, LLC,* the Bankruptcy Court for the Northern District of Georgia approved an opt-out release structure after examining the sufficiency of the notice and solicitation procedures in that case. 2024 WL 4988600, at *17 (Bankr. N.D. Ga. 2024).

**Opt-In**

Other courts have held that silence alone is insufficient and that some form of affirmative assent is required. In *In re GOL Linhas Aéreas Inteligentes S.A.,* the district court reversed the bankruptcy court and held that opt-out mechanisms were insufficient under both federal and New York law to establish creditor consent. 675 B.R. 125 (S.D. N.Y. 2025). The district court found that creditors had no duty to respond to opt-out opportunities and that silence did not imply consent to enter into a contract. *See id.*

Likewise, in *In re Diocese of Buffalo, N.Y.,* the Bankruptcy Court for the Western District of New York held that the extension of release protection to nondebtors is permissible only with actual consent and required solicitation

procedures that would obtain express opt-in consent. 2026 WL 585099 (Bankr. W.D.N.Y. 2026).

**Hybrid Approach**

Some courts have adopted an intermediate or hybrid approach. Those decisions do not require a standalone opt-in election in every circumstance, but they do require some affirmative participation before failure to opt out may be deemed consent. In *In re Smallhold, Inc.,* the Bankruptcy Court for the District of Delaware concluded that a pure default opt-out mechanism could not bind truly silent creditors after *Purdue*, though it permitted releases as to creditors who returned ballots and failed to opt out. 665 B.R. 704 (Bankr. D. Del. 2024).

Another example is *In re Azul S.A.,* where the Bankruptcy Court for the Southern District of New York approved a revised structure under which only creditors who returned ballots and then failed to opt out would be treated as consenting releasors. *In re Azul S.A.,* 2026 WL 40912, at *9 (Bankr. S.D.N.Y. 2026) ("the use of the opt-out here is permissible because the Debtors amended the Plan to provide that the releases are provided only by creditors that both returned a ballot and did not elect to opt-out. This conclusion is the same regardless of whether one applies federal or state law because the only releases granted here are for those creditors who took the affirmative step of returning a ballot but did not check the box for an opt out.").

To date, there is no precedent that binds this Court on the issue of whether, post-*Purdue*, a consensual third-party release may be implemented through an opt-out mechanism rather than an opt-in mechanism. The existing authorities are persuasive, and they reveal a genuine division in approach.

9

**B. The Competing Rationales**

The courts requiring opt-in or other affirmative assent by creditors to be bound by consent generally reason that because the Bankruptcy Code does not itself authorize nonconsensual third-party releases outside §524(g), a release of direct claims against non-debtors is governed by state law.  In each of the cases to address this issue to date, the applicable state law does not recognize silence or failure to act as consent.[5]

The courts permitting opt-out releases begin from a different premise. They view the question as arising not in ordinary bilateral contract formation, but in the context of a court-supervised chapter 11 process governed by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, fiduciary obligations, disclosure requirements, and due process. Under that approach, the controlling inquiry is not whether the creditor affirmatively checked an opt-in box, but whether the creditor received clear and conspicuous notice of the release, understood the consequences of inaction, and had a meaningful opportunity to decline the release by opting out.

**C. This Court's View: Opt-Out Is Permissible**

This Court agrees with those courts that recognize opt-out procedures as an acceptable form of consent. *Purdue* did not define consent and an opt-out mechanism may, in an appropriate case, furnish the consent necessary for a consensual third-party release. The Bankruptcy Code and Federal Rules of Bankruptcy Procedure frequently give legal effect to inaction after

---

[5] For a robust analysis of these cases the Court directs the reader to the objection filed by the United States Trustee at ECF #204.

10

constitutionally adequate notice. And opt-out procedures have long been recognized in other representative contexts, most notably class actions.

First, because resolution of this issue is governed solely by federal law, neither Florida nor New York law has relevance to the resolution of this issue.[6] The Court finds that it has the authority, subject to the requirements of due process and certain limitations, to approve consensual third-party releases. 11 U.S.C. §105(a) provides "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The question is not whether equity can be used to override the Bankruptcy Code; it cannot. *See Law v. Siegel,* 571 U.S. 415, 421 (2014); *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206 (1988). But it is equally incorrect to say that a bankruptcy court may approve only those procedures expressly spelled out in the Bankruptcy Code. Section 105(a) permits a bankruptcy court to issue orders necessary or appropriate to carry out the provisions of title 11, so long as those orders do not contravene the Bankruptcy Code.[7]

Nothing in the Bankruptcy Code prohibits a court from treating failure to opt out, after clear notice and an opportunity to decline, as consent to a consensual release. Indeed, the entire structure of voting on bankruptcy plans

---

[6] The United States Trustee takes the position that the release provisions are governed by New York law because the Debtor is a New York corporation.  The Debtor argues that Florida law applies and that under Florida law, under circumstances where the consequence of silence can be deemed consent, the Plan's opt-out procedure is authorized.  Because the Court holds that state law does not apply to resolve this issue, the Court does not need to decide which state law applies or whether the Debtor's interpretation of Florida law is correct.

[7] 11 U.S.C. §524(g) is not a barrier to holding that an opt-out requirement is a satisfactory reflection of consent.  Indeed, enforceability of the injunctions of section 524(g) start first with the results of plan voting, which, as further discussed below, bind non-voting holders of claims.  Moreover, there is nothing either in section 524(g) or its legislative history to suggest that section 524(g)  is the only avenue for any kind of third-party releases in bankruptcy plans.  Were that the case, the Supreme Court would have stated so in *Purdue.*

is based on binding creditors or interest holders who do not choose to "opt out". A failure to participate will bind a creditor or interest holder to the vote of the class in which the claim or interest of that creditor or interest holder is placed. The numerosity and percentage requirements of determining class acceptance are based *only* on voting creditors or interest holders. Yet, no matter what the percentage of voting creditors or interest holders to all creditors or interest holders in a particular class is– if the numerosity requirements are met by the voters, all creditors or interest holders in the class are bound. Likewise, other bankruptcy procedures attach consequences to inaction after notice. That does not mean every silence-based consequence is valid in every circumstance, but it does show that the reorganization process can, consistent with due process, give binding effect to a non-response when the notice is adequate and the consequences are clearly disclosed.

Moreover, *Purdue* is not a barrier. *Purdue* itself did not prescribe any particular form of consent. When Justice Gorsuch wrote at the conclusion of the opinion: "[n]othing in what we have said should be construed to call into question *consensual* third-party releases offered in connection with a bankruptcy reorganization plan; those sorts of releases pose different questions and may rest on different legal grounds than the nonconsensual release at issue here", *Purdue*, 603 U.S. at 226, he cited to *Matter of Specialty Equip. Companies, Inc.,* 3 F.3d 1043, 1047 (7th Cir. 1993). *Specialty Equipment* is a 1993 Seventh Circuit case, which states, in rejecting a challenge based on section 524(e), "we note that a bankruptcy court does have the power to determine the legality of provisions, including releases, incorporated into a reorganization plan." *Matter of Specialty*

12

*Equip. Companies, Inc.,* 3 F.3d 1043 at 1045. Had the Supreme Court intended to require opt-in consent in every case, or imply that even consensual third-party releases are not appropriate, it is not likely the Supreme Court would have cited to *Speciality Equipment*, a case that predates the enactment of section 524(g).

Second, due process is the critical safeguard. There are many instances in law where the failure to act will bind a party so long as that party has received constitutionally satisfactory notice of the relief being sought against that party. The most familiar and obvious example is the ability to get a judgment against a party who has never appeared, so long as the person seeking the relief has satisfied the notice requirements imposed by due process.  That determination is made under federal law, not state law.  This same principle underlies the concept of class action.  As the Supreme Court wrote in 1940 in *Hansberry v. Lee*, the class action "was  an invention of equity" created "to enable [a suit] to proceed to a decree. . . where the number of those interested in the subject of the litigation is so great that their joinder as parties in conformity to the usual rules of procedures is impracticable." 311 U.S. 32, 41 (1940). The Supreme Court noted that equity can dictate a procedure by which plaintiffs will be bound by actions that they have not themselves participated in so long as "such an adjudication satisfies the requirements of due process and of full faith and credit." *See id.* at 42-43. The Supreme Court concluded that "there has been a failure of due process only in those cases where it cannot be said that the procedure adopted fairly insures the protection of the interests of absent parties who are to be bound by it." *Id.*

13

Rule 23 of the Federal Rules of Civil Procedure was substantially rewritten in 1966 primarily to lay out clearly the procedural management of class actions, including a much debated opt-out provision. The Reporter for the 1966 amendments wrote "we see that requiring the individuals affirmatively to request inclusion in the lawsuit would result in freezing out the claims of people – especially small claims held by small people – who for one reason or another, ignorance, timidity, unfamiliarity with business or legal matters, will simply not take the affirmative step. The moral justification for treating such people as null quantities is questionable." Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I),* 81 Harv. L. Rev. 356, 397–98 (1967).

In *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) the Supreme Court rejected a due process challenge to the opt-out procedures provided for in a Kansas class action statute. The Supreme Court found that the exercise of personal jurisdiction over the putative class plaintiffs not located in Kansas did not violate the minimum contacts requirements of due process because the requirements for personal jurisdiction over putative plaintiffs is a lower standard of due process than for defendants. The Supreme Court also specifically rejected the argument that due process required an affirmative request for inclusion. The Supreme Court held that, so long as all potential class members were properly notified of the action to satisfy constitutional notice, their failure to opt out would bind them. In the *Phillips* case the Court held that a fully descriptive notice sent by first class mail explaining the opt-out right was sufficient.

14

This Court finds that class action procedures, which recognize that absent parties may be bound through an opt-out mechanism where notice and procedural protections are sufficient, provide this Court with guidance in considering the adequacy of an opt-out release in a plan of reorganization. Although the class-action context is not identical to a chapter 11 confirmation process, those authorities are instructive insofar as they demonstrate that due process does not invariably require affirmative opt-in participation. What due process requires is a fair procedure reasonably calculated to inform affected parties of their rights and to afford them a meaningful opportunity to act.

## D. Governing Standard

The bankruptcy court's equitable powers authorize the court to approve plan provisions relating to third- party releases providing that the failure to opt out is consent – this is consistent with the provisions of the Bankruptcy Code, consistent with the bankruptcy court's jurisdiction over those parties, and constitutional so long as notice satisfies due process.

Accordingly, the Court holds that an opt-out mechanism for purposes of satisfying consent to a third-party release as part of a plan of reorganization is permissible under the following circumstances:

1. First the bankruptcy court must find that the inclusion of consensual third-party releases is "necessary or appropriate" to confirmation.

2. Second, the bankruptcy court must determine whether the circumstances are appropriate to use opt-out. Considerations include –
   a. How large is the creditor class?[8] Can affirmative consent be reasonably obtained;

---

[8] For example, a prerequisite to maintaining a class action under Rule 23 is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

b. Is the relief that is being sought related to the creditors' status as a potential plaintiff/claimant against the party being released;[9]

c. Is there a benefit to the creditors for the release that is being included;

d. Is the release consistent with the good faith requirements for confirmation?

3. Due process must be satisfied. Has adequate notice been provided to meet the constitutional prerequisites of notice?

**E. Application**

Applying those principles here, the Court finds that the Plan's use of opt-out to determine consent to the Holder Release is permissible and that the Holder Release can be approved, with certain limitations. The Court will address those limitations first. The Plan proposed that all parties who failed to opt out of the Holder Release are bound by the Holder Release, including those creditors who rejected the Plan but failed to check the "opt-out box". The Court finds that this is not reasonable. A party in interest who rejects a plan, or has a claim or an interest in a class that is deemed to reject the plan, cannot be bound to a release provision in the absence of expressly opting out.[10] Thus, approval of the opt-out provisions only applies to creditors in class 6 who either voted in favor of the plan and did not opt-out of the Holder Release, or creditors in class 6 who did not vote.

As set forth in the Confirmation Order, the Court finds that the Holder Release is necessary and appropriate for confirmation. The Court finds that it

---

[9] So, for example, the hypothetical proposed in the *Smallhold* case would not pass muster. *See In re Smallhold, Inc.*, 665 B.R. at 709–10 (subjecting a creditor who failed to return a ballot to be "required to make a $100 contribution to the college education fund for the children of the CEO of the debtor." ).

[10] *But see In re Smallhold, Inc.*, 665 B.R. at 724 ("creditors in class 2 who voted against the plan and elected not to opt out . . . were provided clear instruction that a vote against the Plan would suffice to manifest agreement to a third-party release if they did not affirmatively opt-out by marking the box on the ballot.").

was appropriate to use "opt-out" rather than another method to determine consent due to the number of creditors in the case.  The only argument presented to the Court regarding the numerosity of the amount of creditors was the Debtor's citation to a Southern District of Florida case stating "[a]s a general rule, a group of more than 40 satisfies numerosity, a group of fewer than 21 does not, and the numbers in between are subject to judgment based on additional factors." *Kelecseny v. Chevron, U.S.A., Inc.,* 262 F.R.D. 660, 668 (S.D. Fla. 2009). In this case, the size of the creditor class is approximately 350.

While there was no evidence that any of the creditors have any claims against GDA and others included in the Holder Release, the Holder Release relates to any possible claims those releasing parties might have as plaintiffs. There is no question that the creditors in class 6 are receiving a benefit on account of the Holder Release; without the Holder Release GDA will not provide the initial funding for the Liquidating Trust or cover the expenses of the Liquidating Trust for the first three years.   Without that funding there are no resources to pursue Retained Causes of Action, which may include Chapter 5 claims[11], if any, the only unencumbered Debtor assets, for which currently there is no estimated value.

The Court finds that the solicitation materials clearly disclose the Holder Release, identify the released parties, explain the opt-out right in understandable terms, and provide a meaningful opportunity to exercise that right. The mechanism is not hidden, confusing, or coercive. While the actual opt-out "box"

---

[11] 11 U.S.C. §§501-562.

appeared on page 4 of the ballot, the second page of the ballot clearly advises of the Holder Release.

The certificates of service submitted in support of confirmation indicate that all creditors received the Plan, the Disclosure Statement, and all proper notice relating to the Holder Release.

On this record, the Court is satisfied that affected parties were afforded adequate notice that satisfies due process. Because class 6 voted in favor of the Plan, those creditors in class 6 who did not opt out of the Holder Release, as well as those creditors in class 6 who did not vote, may properly be treated as having consented to the Holder Release.[12]

## CONCLUSION

The debate regarding the inclusion of third-party releases in chapter 11 plans, and whether and when such releases are consensual, will continue to provide fodder in chapter 11 cases. While the Court recognizes, and respects, the various approaches to resolve this issue, for the reasons more fully addressed in this memorandum opinion, this Court holds that, subject to certain conditions, the use of an opt-out mechanism to obtain consent to the consensual third-party releases in a chapter 11 plan is permissible. And as set forth herein

---

[12] Initially class 6 did not accept the Plan, but the Court granted the Debtor's Motion for Entry of an Order Approving the Debtor's Tabulation of Untimely Ballot Cast in Support of the Plan (ECF #226) to allow a late filed ballot accepting plan filed by Creditor S. Axelrod Co. (ECF #225). By virtue of the S. Axelrod Co. ballot, class 6 then had the sufficient votes in number and amount to satisfy acceptance in accordance with 11 U.S.C. §1126(c). If the Debtor had had to resort to cramdown to confirm the Plan, the Court would have held that only creditors in class 6 who voted in favor of the Plan (and did not opt out) would be bound by Holder Release. Cramdown of a plan does not satisfy the requirements necessary to bind members of the class subject to cramdown to any third-party releases because cramdown necessarily presupposes a lack of consent.

and in the Confirmation Order, the Court approves the Holder Release, including

reliance on the opt-out process to bind creditors to its terms.


# # #


Copies furnished to:
Joseph Pack, Esq.

*Attorney Pack is directed to serve a copy of this memorandum opinion on interested parties who do not receive service by CM/ECF, and file a proof of such service within two (2) business days from entry.*